

1  James J. Pisanelli, Esq., Bar No. 4027
   jjp@pisanellibice.com
2  M. Magali Mercera, Esq., Bar No. 11742
   mmm@pisanellibice.com
3  PISANELLI BICE PLLC
   400 South 7th Street, Suite 300
4  Las Vegas, NV  89101
   Telephone:   702.214.2100
5  Facsimile:   702.214.2101

6  Craig C. Martin (*Pro hac vice* forthcoming)
   David Jimenez-Ekman (*Pro hac vice* forthcoming)
7  Timothy J. Barron (*Pro hac vice* forthcoming)
   Caroline A. Meneau (*Pro hac vice* forthcom͏ ͏ ͏)
8  JENNER & BLOCK LLP
   353 N. Clark Street
9  Chicago, IL  60654-3456
   Telephone:   312.222.9350
10 Facsimile:   312.527.0484
   *Attorneys for Petitioners*

11



**17-MS-14**

12          **UNITED STATES DISTRICT COURT**
                  **DISTRICT OF NEVADA**

13 SCIENTIFIC GAMES CORPORATION,        Action pending in the United States
   BALLY TECHNOLOGIES, INC., AND        District Court for the Northern District of Illinois
14 BALLY GAMING, INC.,                  (Case No. 1:15-cv-3702)
                                        Honorable Matthew F. Kennelly
15                       Petitioners,
                                        **CASE NO.**
16      v.                              **FILED UNDER SEAL**

17 AGS, LLC,                            **PETITIONERS' MOTION TO OPEN A**
                                        **MISCELLANEOUS CASE TO COMPEL**
18                                      **AGS, LLC TO COMPLY WITH RULE 45**
                         Respondent.    **SUBPOENA ISSUED IN A RELATED**
19                                      **PROCEEDING IN THE NORTHERN**
                                        **DISTRICT OF ILLINOIS**

20

21          Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, Petitioners Scientific

22 Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc. (collectively, "Petitioners")

23 file this motion requesting that the Court open a miscellaneous case to compel AGS, LLC

24 ("AGS") to comply with Petitioners' Rule 45 subpoena.  In support of this Motion, Petitioners

25 submit a Memorandum in Support and state as follows:

26          1.      Petitioners are defendants in a case pending in the United States District Court for

27 the Northern District of Illinois captioned, *Shuffle Tech International, LLC, et al. v. Scientific*

28 *Games Corp., et al.*, No. 15 CV 3702 (N.D. Ill. filed Apr. 28, 2015) (the "Illinois Action").

1

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

2.       AGS, a resident of this District and subject to this Court's jurisdiction, is not a party to the Illinois Action, but is integral to the action:

       a.       The Illinois Action concerns automatic card shufflers for use in casinos. Shuffle Tech Int'l, LLC ("Shuffle Tech"), the lead plaintiff in the Illinois Action, had a 2013 agreement with DigiDeal Corporation ("DigiDeal"), under which DigiDeal would manufacture and sell shufflers, using Shuffle Tech's intellectual property.  In return, DigiDeal would pay royalties to Shuffle Tech.  In the Illinois Action, Shuffle Tech contends that Petitioners interfered with that relationship by bringing sham patent litigation against DigiDeal in 2013, which allegedly resulted in DigiDeal being unable to make and sell shufflers, and pay any royalties to Shuffle Tech.  Shuffle Tech seeks damages for sales through 2027 and beyond on the theory that it lost a revenue stream running into the future, amounting to approximately $100,000,000 (before antitrust trebling).

       b.       But in September 2015, after the Shuffle Tech / DigiDeal agreement was terminated, Shuffle Tech entered into a new agreement with AGS under which AGS would essentially fulfill DigiDeal's prior role, making and selling shufflers using Shuffle Tech's technology, and in return, AGS would pay Shuffle Tech a royalty on those sales.  If they are successful, AGS's royalty payments to Shuffle Tech will offset, dollar for dollar, the future damages Shuffle Tech claims it suffered in the Illinois Action.

       c.       While Petitioners believe Shuffle Tech's liability claims in the Illinois Action are meritless, to rebut Shuffle Tech's damages claims in the Illinois Action, Petitioners must obtain discovery on AGS's manufacturing and sales plans and projections.

3.       The Illinois Action is currently in discovery.  Fact discovery closes on February 22, 2017.

4.       Because AGS has information that is central to Petitioners' defenses in the Illinois Action, Petitioners issued a narrowly drawn, seven request Rule 45 subpoena for documents, issued by the Northern District of Illinois, to AGS on November 29, 2016.  AGS's counsel accepted service of the document subpoena on December 2, 2016.

5. Since December 2, 2016, Petitioners and counsel for AGS have exchanged at least 6 letters, and conferred telephonically four times.

6. AGS, however, has refused to make a full production, and has refused to produce any documents relating to AGS's sales plans or projections.

7. As more fully discussed in the accompanying Memorandum in Support, the documents Petitioners seek are centrally relevant to rebutting Shuffle Tech's damages claims in the Illinois Action.

Accordingly, Petitioners respectfully move that the Court open a miscellaneous case for the purpose of compelling AGS to comply with Petitioners' Rule 45 subpoena, and for any other relief that the Court deems appropriate and necessary.

DATED this 1st day of February 2017.

PISANELLI BICE PLLC

By: _____
James J. Pisanelli, Esq., Bar No. 4027
M. Magali Mercera, Esq., Bar No. 11742
400 South 7th Street, Suite 300
Las Vegas, NV 89101

Craig C. Martin (*Pro hac vice* forthcoming)
David Jimenez-Ekman (*Pro hac vice* forthcoming)
Timothy J. Barron (*Pro hac vice* forthcoming)
Caroline A. Meneau (*Pro hac vice* forthcoming)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654-3456

*Attorneys for Petitioners*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Court should order Respondent AGS, LLC ("AGS") to comply with the valid subpoena served by Petitioners Scientific Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc. (collectively, "Petitioners").  The documents Petitioners seek are centrally relevant to (among other things) their defense that the plaintiffs in an antitrust action pending in federal court in Illinois (the "Illinois Action"), led by Shuffle Tech Int'l, LLC ("Shuffle Tech"), will not suffer the loss of future royalty revenue they claim; AGS will provide that revenue as an effective stand-in for a prior counterparty, DigiDeal Corporation ("DigiDeal").

The Illinois Action concerns automatic card shufflers for use in casinos.  Shuffle Tech had a 2013 agreement with DigiDeal under which DigiDeal would manufacture and sell shufflers, using Shuffle Tech's intellectual property, and in return, DigiDeal would pay royalties to Shuffle Tech.   In the Illinois Action, Shuffle Tech contends that Petitioners interfered with that relationship by bringing sham patent litigation against DigiDeal in 2013, which allegedly resulted in DigiDeal being unable to make and sell shufflers, or pay any royalties to Shuffle Tech.  Shuffle Tech seeks damages for sales through 2027 and beyond on the theory that it lost a revenue stream running into the future, to the tune of $100 million (before antitrust trebling).

But in September 2015, after the Shuffle Tech / DigiDeal agreement was terminated, Shuffle Tech entered into a new agreement with AGS under which AGS would essentially fulfill DigiDeal's prior role, to make and sell shufflers using Shuffle Tech's technology, and in return, AGS would pay Shuffle Tech a royalty on those sales.  If they are successful, AGS's royalty payments to Shuffle Tech will offset, dollar for dollar, the future damages Shuffle Tech claims it suffered in the Illinois Action.  While Petitioners believe Shuffle Tech's liability claims in the Illinois Action are meritless, to rebut Shuffle Tech's damages claims in the Illinois Action, Petitioners must obtain discovery on AGS's manufacturing and sales plans and projections.

To obtain that discovery, on December 2, 2016, Petitioners served a narrowly drawn, seven request Rule 45 subpoena for documents on AGS.  The requested documents relate directly to the issues of causation and damages, as well as monopoly power, pricing and market definition

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1  – issues at the heart of the case.  As more fully described below, AGS has refused to make a full

2  production, and has refused to produce any documents relating to AGS's sales plans or

3  projections.  These documents are centrally relevant, not overly burdensome, and will be subject

4  to an attorney's-eyes-only protective order in the Illinois Action (and any other reasonable

5  protective measure AGS suggests).  There is no excuse for declining to produce these documents,

6  and this Court should order AGS to produce in full.

7  **II.    PROCEDURAL AND FACTUAL HISTORY.**

8         **A.    The Illinois Action.**

9         Petitioners are defendants in an antitrust lawsuit pending in the U.S. District Court for the

10  Northern District of Illinois, *Shuffle Tech International, LLC, et al. v. Scientific Games Corp., et*

11  *al.*, No. 15 CV 3702 (N.D. Ill. filed Apr. 28, 2015) (the "Illinois Action").  The first named

12  defendant, Scientific Games, is a Nevada-based company that produces and markets casino

13  gaming equipment, including automatic card shufflers.  AGS is a developer of casino gaming

14  systems based in Nevada.

15         Although AGS is not a party to the Illinois Action, discovery has revealed that AGS – and,

16  specifically, the information Scientific Games seeks from AGS – is integral to the claims and

17  defenses in the suit.  The Illinois Action plaintiffs, led by Shuffle Tech Int'l LLC (collectively

18  "Shuffle Tech"), allege Petitioners violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by

19  fraudulently procuring patents from the U.S. Patent Office, and then asserting those patents

20  against their competitors in five separate "sham litigations," also known as Walker Process

21  claims. (*See* Ex. 1, Illinois Action Amended Complaint, ¶¶ 91-113.)

22         One focus of Shuffle Tech's antitrust allegations has been on one patent case filed in this

23  Court, *SHFL entertainment Inc. v. DigiDeal Corp.*, No. 2:12-cv-01782-GMN-VCF (D. Nev. filed

24  Oct. 10, 2012).  Petitioners sued DigiDeal Corporation ("DigiDeal") for infringement of two U.S.

25  patents (Nos. 6,651,982 ("the '982 patent") and 7,523,935 ("the '935 patent")), based on

26  DigiDeal's manufacture, use and sales of an automatic card shuffler that incorporated technology

27  it had licensed from Shuffle Tech.  The Court ultimately granted DigiDeal summary judgment

28  based mainly on DigiDeal's representation that it no longer made, used or sold the DigiShuffle.

However, the Court denied DigiDeal's motion for attorney's fees, determining that the case was not "exceptional" because Petitioners' claims had "substantive strength" and that Petitioners had performed a reasonable investigation before filing suit.  (*See* Ex. 2, June 29, 2016 Amended Report and Recommendation & Order at 2; *see also* Ex. 3, Sept. 19, 2016 Order Adopting Amended Report and Recommendation.)

Despite this Court's ruling, Shuffle Tech persists in its claim that the case constituted "sham" litigation.  Shuffle Tech further alleges that but for the Petitioners' filing the suit against DigiDeal, DigiDeal would have sold shufflers for more than 10 years and Shuffle Tech would have earned future royalties for sales of "DigiShuffle" shufflers, and those royalties would have exceeded $100,000,000,  the amount it seeks in damages, which it contends should also be trebled.  These purported damages are based mainly on profits Shuffle Tech alleges it would have earned in the future, through 2027.

For the past year, the parties in the Illinois Action have engaged in fact discovery, which concludes February 22, 2017.  (Ex. 4, Jan. 20, 2017 Order re extending discovery.)  Recent discovery revealed that after Shuffle Tech's relationship with DigiDeal ended, Shuffle Tech entered into a separate contract with AGS, under which AGS will assume the essential role of DigiDeal, and produce and sell shufflers that also embody the Shuffle Tech technology – shufflers for which Shuffle Tech will earn royalties and profits.  The discovery of this information caused Petitioners to subpoena documents from AGS because, most simply, Petitioners will assert in the Illinois Action that any royalties that Shuffle Tech receives under this new arrangement – where, in essence, AGS has taken the place of DigiDeal as the manufacturer and seller of the shufflers – mitigate Shuffle Tech's future damages dollar-for-dollar.

**B.    The Subpoena And AGS' Inadequate Response.**

Petitioners served a document subpoena on AGS, issued from the Illinois Court under Rules 34 and 45, dated November 29, 2016, and setting a return date of December 15, 2016. (Ex. 5, Nov. 29, 2016 Document Subpoena.) AGS's counsel agreed to, and did, accept service on December 2, 2016. (Ex. 6, Dec. 2, 2016 Email Exchange.)  Attachment A to the subpoena was Petitioners' Requests for Production of Documents ("Requests").  (Ex. 5, Nov. 29, 2016

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Document Subpoena at Attachment A.)   The subpoena included only seven short Requests, seeking documents on seven narrow topics highly relevant to Petitioners' defenses in the Illinois Action:

1.    All Documents referring to or reflecting any Communications between You [AGS] and Plaintiffs.

2.    All Documents referring to or reflecting any Communications between You and Derek Webb or Hannah O'Donnell [who are funding the Illinois litigation].

3.    All Documents referring or relating to Your acquisition of any assets of Plaintiffs or DigiDeal.

4.    All Documents referring or relating to the DigiShuffle.

5.    All Documents referring or relating to any shuffler that incorporates or uses technology developed by Shuffle Tech.

6.    All Documents referring or relating to Your marketing, display, or sale of any DigiShuffle or any other shuffler that incorporates or uses technology developed by Shuffle Tech.

7.    All Documents referring or relating to the '982 Patent or the '935 Patent [the key patents at issue in the antitrust case].

AGS's December 13, 2016 response to the Subpoena raised the same objections to each request: the requests were "overly broad, unduly burdensome, vague and ambiguous," seek privileged, confidential or trade secret information or seek information that may be protected from disclosure by privacy laws, or that Petitioners could obtain from other sources. (*See* generally Ex. 7, Dec. 13, 2016 AGS Response).   AGS refused to produce any documents in response to Request Nos. 1, 5, 6, and 7.   (*Id.* at 5, 10-13.)   AGS agreed to produce documents responsive to Request Nos. 2 and 3 located through an electronic search, and agreed to search for documents responsive to Request No. 4, and supplement its response after the search concluded. (*Id.* at 7-8.)   But AGS's December 15, 2016 production consisted of only two emails totaling 15 pages, neither of which was in any way related to the Illinois Action. (*See* Ex. 8, Dec. 15, 2016 AGS Production at 2-5 (job application by a Derek Webb, not the Derek Webb funding the Illinois Action), 6-16 (mass email from an AGS employee announcing his new contact information).)   Since then, Petitioners and counsel for AGS have exchanged 6 letters, collected in

1    Exhibit 9, and conferred telephonically four times between December 26, 2016 and January 27,

2    2017.

3         As a result of some of these early conferences, on December 30, 2016, AGS supplemented

4    its objections to Request Nos. 2, 3, 4, and 7, including a supplemental 162-page production

5    purporting to be documents responsive to Request Nos. 3, 4, and 7.  (Ex. 10, Dec. 30, 2016 Ltr.

6    From Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman.).  The production revealed,

7    however, that no adequate search for responsive documents had been performed.  For example,

8    although Request No. 7 sought "all documents" related to the two patents central to Shuffle Tech's

9    antitrust allegations, AGS produced only a copy of each of the patents.  Request No. 4 sought all

10   documents referring or relating to the DigiShuffle shuffler, the card shuffler Shuffle Tech asserts

11   would have led to future sales generating more than $100,000,000 in profits.  But more than half

12   of this production consisted of publicly filed documents from the Illinois Action.  AGS also stated

13   it was withholding documents on the basis of the attorney-client privilege and work product

14   doctrine, but failed to provide a privilege log.  AGS withheld other materials deemed to comprise

15   trade secrets, even though Petitioners had sent AGS the protective order, which protects such

16   materials. (*Id.* at 6-7.)  AGS did not provide a privilege log, nor explain why the protective order

17   would not sufficiently protect its confidential information.

18        At this point, after additional conferences, AGS has refused to produce any additional

19   documents, asserting (among other things) that Petitioners seek highly confidential competitive

20   information that AGS will not produce, despite the presence of an attorney's-eyes-only protective

21   order in the Illinois Action, and despite Petitioners' counsel's offer to take whatever reasonable

22   additional measures are necessary to keep the information confidential, including from Petitioners

23   themselves.  Counsel last conferred on Friday, January 27, 2017, and agreed that they were at an

24   impasse and that Petitioners should file this motion to seek Court resolution.

25   / / /

26

27

28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## III.    ARGUMENT

This Court[1] should compel AGS to produce all documents in its possession, custody, or control responsive to the subpoena. The documents are central to Petitioners' defenses in the Illinois Action.

### A.    Legal Standard.

The Federal Rules of Civil Procedure endorse broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A Rule 45 subpoena "is subject to the relevance requirements set forth in Rule 26(b). Thus, the subpoena may command the production of documents which are 'not privileged' and are 'relevant to any party's claim or defenses' or 'reasonably calculated to lead to the discovery of admissible evidence.'" *Vondersaar v. Starbucks Corp.*, No. 13 CV 80061, 2013 WL 1915746, at *1 (N.D. Cal. May 8, 2013) (quoting Fed. R. Civ. P. 26). "In the Ninth Circuit, broad discovery is favored because 'wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Vondersaar*, 2013 WL 1915746, at *4 (quoting *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995)). In general, "courts take a broad view of what is held discoverable[.] . . . [T]he scope of discovery is broad and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Perez v. Blue Mntn. Farms*, No. 13 CV 5081, 2015 WL 11112413, at *2 (E.D. Wash. Sept. 28, 2015) (citations omitted).

### B.    The Court Should Order Compliance Because AGS's Objections To The Subpoena Have No Merit And Its Production Is Insufficient.

Given the broad scope of allowable discovery, AGS's boilerplate objections, and its inadequate response, Petitioners respectfully ask the Court to enforce the Subpoena pursuant to Rules 37 and 45. In light of the information about Shuffle Tech's licensing of its technology to

---

[1] As a threshold matter, this Court has jurisdiction to enforce the subpoena. The subpoena was properly issued from the Court presiding over the Illinois Action under Rule 45(a)(2), and is properly enforced by this Court, "where compliance is required," under Rules 45(d)(2)(B)(i) and 45(d)(3)(A). The Court may take judicial notice that AGS is a Nevada company headquartered at 2470 St. Rose Parkway, Henderson, Nevada and the subpoena directed documents to be produced at Scientific Games Corporation at 6650 El Camino Road, Las Vegas, Nevada, 89118 – less than ten miles from AGS. (Ex. 11, Google Maps Print-Out.)

AGS and AGS's payments for that licensing and royalties for sales of the AGS shuffler, documents that relate to the AGS-Shuffle Tech transaction or to AGS's sales and use of Shuffle Tech's technology are highly relevant to the Illinois Action.  Most simply, if Shuffle Tech is realizing through its contract with AGS the future profits it seeks from Petitioners, then Petitioners' actions have not caused Shuffle Tech to lose future profits and Shuffle Tech would not be entitled to damages from Petitioners—let alone the more than $100,000,000 they seek in the Illinois Action.  Still further, the pricing of AGS's shufflers, their sales volume, and AGS's relationships with customers or potential customers are also relevant to determining the relevant market, Petitioners' market power, price elasticity and competition – all central issues in the Illinois Action antitrust case.  And, Shuffle Tech-AGS communications regarding these issues may contain important admissions.  The requested AGS documents are central to Petitioners' defenses in the Illinois Action.

       **1.**      **Documents Relating To AGS' Business Relationship With Shuffle Tech And DigiDeal (Request Nos. 1 and 3).**

Petitioners' first and third requests concern AGS's business relationship with Shuffle Tech or DigiDeal: "All Documents referring to or reflecting any Communications between You and Plaintiffs" and "All Documents referring or relating to Your acquisition of any assets of Plaintiffs or DigiDeal."  (Ex. 5, Nov. 29, 2016 Document Subpoena at 3.)  Petitioners requested this information because the details of the relationship between AGS and Plaintiffs and/or DigiDeal is essential to Shuffle Tech's claims for damages (if any) in the Illinois Action, as well as to other key antitrust issues.

       **a.**      **The Requested Documents Are Highly Relevant To Several Critical Issues.**

Shuffle Tech argues that its damages are comprised largely of profits it would have realized through royalties it would have received into the far future, the year 2027, from sales of DigiDeal's DigiShuffle device, which incorporated its technology.  (Ex. 1, Illinois Action Amended Complaint ¶ 23.)  But after Shuffle Tech's relationship with DigiDeal ended, it made an arrangement with AGS under which AGS agreed to play a role similar to that played by DigiDeal

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

in the prior arrangement:  AGS will make and sell shufflers and pay Shuffle Tech a royalty based on those sales.  If Shuffle Tech has now begun realizing profits from sales of a new AGS device that also embodies its technology, however, or has projected its future profits based on its on-going relationship with AGS, then those profits would mitigate the more than $100,000,000 in damages Shuffle Tech alleges it sustained as a result of Petitioners' anticompetitive conduct.  *See Bhan v. NME Hospitals, Inc.*, 669 F. Supp. 998, 1014 n.11 (E.D. Cal. 1987) (holding that the plaintiff's increased profits following the alleged anti-trust violation "does not challenge the existence of injury," but "the extent of damage."); *see also Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 436 (5th Cir. 1985) ("Of course, an antitrust plaintiff, like other injured parties, must mitigate damages.").  Moreover, the documents sought are also relevant to the quantification of damages.  For example, the prices AGS charges for its product incorporating Shuffle Tech's technology, and the profits obtained thereby, are relevant to determining the price that could have been charged for the DigiShuffle device, and thus, the amount of damages to which Shuffle Tech would be entitled.

Still further, documents produced in the Illinois Action appear to show DigiDeal attempted to sell itself to AGS.  Documents related to those negotiations are likely to cast light on the damages and competition issues at the heart of the antitrust case, including (1) the sales DigiDeal and Shuffle Tech were expecting of the DigiShuffle device; (2) the deficiencies of the DigiDeal device or Shuffle Tech's technology; (3) pricing and price elasticity in the market; and (4) the parties' assessment of the merits of Petitioners' patent infringement claims against DigiDeal and Shuffle Tech.  These documents may also reveal statements by DigiDeal or AGS about the merits of the patent case, which may well impact Shuffle Tech's assertions that the litigation was a "sham."

Finally, the requested documents are also relevant because discovery has revealed Shuffle Tech's principals discussed the Illinois Action with AGS, including the merits of the suit, in connection with the AGS-Shuffle Tech Deal.  Thus, Petitioners seek these documents, which may reveal important admissions.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**b.    AGS's Objections Have No Merit And Its Production Is Plainly Inadequate.**

AGS has objected that these requests (1) are overbroad and unduly burdensome, (2) seek information Defendants could obtain or had obtained from other sources, and (3) could contain privileged, private or proprietary information. (*See* Ex. 7, Dec. 13, 2016 AGS Response.) AGS refused to produce any documents in response to Request No. 1, and has made an insufficient production in response to Request No. 3, and then only on the portion of that request that concerned DigiDeal. The Court should overrule these objections and order production for five reasons.

First, Request Nos. 1 and 3 are not overbroad or unduly burdensome, but are narrowly tailored to obtain only those documents that concern AGS's acquisition of Shuffle Tech's or DigiDeal's assets, including its intellectual property, and AGS's on-going marketing and sales relationship with Shuffle Tech – topics relevant to the issues in the antitrust case of damages, market definition, pricing and monopoly. AGS has never explained why it believes these requests are burdensome. Petitioners voluntarily agreed to limit the time period of these requests to 2012 through 2016, and offered to narrow the requests further if AGS made specific proposals. (Ex. 12, Dec. 19, 2016 Ltr. From David Jimenez-Ekman to Tim O'Reilly at 1.) AGS may not refuse to produce documents by relying on an unsupported assertion that it would be overly burdensome to locate and produce them. *See LG Display Co., Ltd. v. Chi Mei Optroelectronics Corp.*, No. 08 CV 240, 2009 WL 223585, at *2 (S.D. Cal. Jan. 28, 2009). Instead, AGS must "meet its burden of showing that the requests are unduly burdensome." *Id.* AGS has made no attempt to meet its burden here. And it is important to note, when assessing any burden, that AGS is not a typical, unconnected third party that is being imposed upon unforeseeably. Rather, AGS entered into a transaction with Shuffle Tech with full knowledge of the Illinois Action and the way it would make its relationship with Shuffle Tech relevant to that action.

Second, whether Petitioners could seek or have sought the requested documents from other sources – which Petitioners do not concede – is immaterial. District courts commonly allow for document discovery from third parties even if those same documents may be available from

the parties. *See Sol v. Whiting*, No. 10 CV 1061, 2014 WL 12519789, at *3 (D. Ariz. Sept. 9, 2014) (granting motion to compel third party to produce documents in response to subpoena, court relied on fact that other parties had already produced "hundreds of pages of emails" with the third party). In LG Display, for example, the district court rejected the identical argument that a third party should not be required to produce documents in response to a subpoena because the documents were "duplicative in that these documents are readily available from the defendants in the underlying matter." *LG Display*, 2009 WL 223585, at *3. The argument was "unavailing, particularly in light of Plaintiffs' desire to test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists." *Id.*

Third, AGS's privilege and privacy objections also have no merit. Petitioners are not seeking AGS's privileged information; if AGS truly has responsive but privileged documents, it can withhold them and provide a privilege log. It has not done so, and cannot refuse to produce documents based on the possibility that some documents may be privileged. *See, e.g., Leasure v. Willmark Communities, Inc.*, No. 11 CV 443, 2012 WL 4361555, at *5 (S.D. Cal. Sept. 21, 2012). AGS's privacy objection is likewise without merit since AGS could simply redact personal identifying information for individuals not involved in the Illinois Action.

Fourth, AGS's objections that the documents these requests seek contain trade secrets or other proprietary or confidential information also offer no basis for AGS's failure to produce. Petitioners have assured AGS that under the Illinois Action's Protective Order, any documents AGS marks as "Highly Confidential" will be treated as "Attorneys' Eyes Only," and Petitioners themselves will have no access. (*See* Ex. 13, Protective Order.) The documents would remain with Petitioners' outside counsel. "A protective order allowing 'confidential' or 'highly confidential' designations is sufficient to protect a nonparty's trade secrets." *AFMS LLC v. United Parcel Serv. Co.*, No. 12 CV 1503, 2012 WL 3112000, at *7 (S.D. Cal. July 30, 2012) (ordering production of materials by nonparty in antitrust matter); *see Compaq Comp. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 339 (N.D. Cal. 1995) (ordering third-party to produce confidential information to competitor because protective order barred competitor's "employees and agents, including in-house counsel . . . from accessing these documents"). AGS has not even

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

attempted to explain why the Protective Order is insufficient to protect its confidential information. *See, e.g.*, *Rankine v. Roller Bearing Co. of Am., Inc.*, No. 12 CV 2065, 2013 WL 12096558, at *1-3 (S.D. Cal. Sept. 6, 2013) (ordering third party to produce documents in response to subpoena where third party "had not explained why the existing protective order was insufficient to protect the allegedly confidential commercial information" sought by subpoena). Nor has AGS taken Petitioners' counsel up on their offer to discuss additional protective measures that could address AGS's concerns.

Fifth, although AGS produced 14 pages of documents in response to Request No. 3, AGS limited its search for documents to only the second portion of the request, which concerned DigiDeal. AGS completely ignored the first portion that concerned Shuffle Tech: "All documents referring or relating to Your acquisition of any assets of Plaintiffs [Shuffle Tech] . . . ." Documents relating to Shuffle Tech are, quite clearly, critical to Petitioners' defenses to Shuffle Tech's antitrust and damages allegations. Moreover, AGS's search for documents relating only to DigiDeal was plainly inadequate; AGS improperly constricted its search for these documents by performing "an electronic search" of two databases for the word "digideal" in the "from" field of email addresses for the time period October 12, 2012 to November 30, 2016. (Ex. 10, Dec. 30, 2016 Ltr. From Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman at 4.) Such a search would not capture a host of plainly relevant documents, such as those (1) generated by AGS relating to DigiDeal, (2) sent by AGS to DigiDeal, or (3) created by third parties relating to DigiDeal.[2]

In sum, AGS has not met the high bar it must to avoid production. Petitioners request that the Court order AGS to produce all documents responsive to Request Nos. 1 and 3.[3]

---

[2]   AGS's responses represented that "No documents are being withheld as a result of this search except for certain documents reflecting DigiDeal, which AGS is awaiting confirmation from DigiDeal that it has no issue with AGS producing." (Ex. 10, Dec. 30, 2016 Ltr. From Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman at 5.). AGS has not apprised Petitioners of the status of this inquiry.
[3]   AGS also raised the meritless objection that Petitioners are unable to precisely direct AGS to data in AGS's own databases. Of course, Petitioners have no understanding of the content or operation of the data contained in AGS's databases. At a minimum, AGS must provide Petitioners "with declarations or affidavits detailing the nature of [its] reasonable inquiry to locate responsive documents, and such declarations must address the inquiry [it] made on a request-by-request basis." *Sol*, 2014 WL 12519789, at *3 (citation and quotations omitted).

14

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

2.     **Documents Relating To Shuffle Tech's Alleged Damages Relating To Attorney's Fees For The DigiDeal Patent Litigation (Request No. 2).**

Although AGS raised the same inadequate objections to Petitioners' Request No. 2, which seeks "All Documents referring to or reflecting any Communications between You and Derek Webb or Hannah O'Donnell," AGS appears to have searched for and produced at least some responsive documents.[4]  (Ex. 7, Dec. 13, 2016 AGS Response at 7.)  However, AGS produced only two documents totaling 15 pages, neither of which concerned the matters at issue in the Illinois Action.  During a meet-and-confer call, Petitioners requested that AGS confirm these two documents constituted all responsive documents in its possession, and AGS's counsel agreed to do so.  But AGS's follow-up letter ignored this promise, stating only that AGS had produced the two documents.

Petitioners thus respectfully request that the Court compel AGS to either: (1) confirm that the two documents it produced in response to Request No. 2 constitute the only responsive documents in AGS's possession, custody, or control or if it cannot do so, undertake an additional search for responsive documents.  And, if AGS withheld any documents based on an applicable privilege, Petitioners request that the Court direct AGS to produce a privilege log.

3.     **Documents Relating To The DigiShuffle Or To AGS's Shuffler Incorporating Shuffle Tech's Technology (Request Nos. 4, 5 and 6).**

Request Nos. 4, 5 and 6 concern either the DigiShuffle device or AGS's own shuffler incorporating Shuffle Tech's technology: "All Documents referring or relating to the DigiShuffle" (No. 4); "All Documents referring or relating to any shuffler that incorporates or uses technology developed by Shuffle Tech" (No. 5); and "All Documents referring or relating to Your marketing, display, or sale of any DigiShuffle or any other shuffler that incorporates or uses technology developed by Shuffle Tech." (No. 6).  (Ex. 5, Nov. 29, 2016 Document Subpoena at 6.)  AGS refused to produce any documents in response to these Requests relating to its own devices, and

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

---

[4]   These documents are also relevant to Shuffle Tech's damages claim in the Illinois Action. Derek Webb and Hannah O'Donnell have funded at least a portion of the attorney's fees Shuffle Tech paid in the DigiDeal patent case, fees Shuffle Tech claims as a component of its damages in the Illinois Action.

1    performed an inadequate search for documents relating to the DigiShuffle device.  (Ex. 7, Dec.

2    13, 2016 AGS Response at 10-12.)

3          In fact, documents responsive to these requests are relevant not only to the critical

4    damages issues discussed above regarding Shuffle Tech's alleged lost profits.  They are also likely

5    to show a lack of causation, i.e., that the DigiShuffle and other devices incorporating Shuffle

6    Tech's technology failed to break into the marketplace not because of any anticompetitive conduct

7    of Petitioners, but rather because of the deficiencies of the devices themselves and their

8    underlying technology.

9          AGS objected to these Requests for the same reasons it objected to the prior requests: they

10   are overly broad and unduly burdensome, seek information Petitioners could obtain or have

11   obtained from other sources, seek electronic documents from AGS databases without specifying

12   what data was requested, and seek privileged, private or proprietary information.  On December

13   30, 2016, AGS supplemented its response, stating it, "has performed an electronic search of the

14   email databases for americangamingsystems.com and playags.com" from October 12, 2012 to

15   November 30, 2016 for "emails with the word DigiShuffle in all fields." (Ex. 10, Dec. 30, 2016

16   Ltr. From Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman at 6.)  As a result, AGS

17   produced only 106 pages of documents, over half of which consisted of publicly filed documents

18   from the Illinois Action.  AGS also stated that it was withholding documents based on privilege

19   concerns and trade secret concerns.  (*Id.* at 6-7.)  But for the reasons stated above at § II.B.1.b,

20   these documents are highly relevant, and cannot be withheld based on privilege without AGS's

21   providing a log, and cannot be held based on trade secret status in the presence of an attorney's-

22   eyes-only protective order.

23          Petitioners request that the Court order AGS to produce all documents responsive to this

24   Request.  If AGS maintains its assertion that some responsive documents are privileged, it should

25   submit a privilege log in sufficient detail to allow Petitioners to assess the claim of privilege.

26

27

28

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

4. **Documents Relating To The Two Patents Central To The Antitrust Litigation (Request No. 7).**

Petitioners' Request No. 7 seeks "All Documents referring or relating to the '982 Patent or the '935 Patent." (Ex. 5, Nov. 29, 2016 Document Subpoena at 6.)  As noted above, Shuffle Tech contends that Petitioners' assertion of those patents against DigiDeal was "sham litigation."  Thus, Petitioners seek information from AGS as to what Shuffle Tech told it about the merits of that case, the validity or invalidity of the patents, or AGS's own assessment of whether a shuffler incorporating Shuffle Tech's technology infringes those patents.  All of this information is highly material to Shuffle Tech's claims of "sham litigation."

AGS raised the same objections to this Request as it had in the other Requests and initially refused to produce any responsive documents.  On December 30, 2016, AGS produced only two documents: copies of the '982 and '935 patents.  AGS did not represent these were the only responsive documents in its possession.  (See Ex. 10, Dec. 30, 2016 Ltr. From Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman at 8 ("Without waiving any general or specific objection set forth above, see Bates stamped documents AGS700001-AGS700042.").  And, given the importance of those patents to Shuffle Tech, it is highly doubtful that copies of the patents are all AGS has that is responsive.

AGS should be compelled to produce all documents responsive to Request No. 7 or indicate that it has already done so.

/ / /

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

IV.   **CONCLUSION**

Accordingly, Petitioners respectfully move that the Court open a miscellaneous case for the purpose of compelling AGS to comply with Petitioners' Rule 45 Subpoena, and for any other relief that this Court deems appropriate and necessary.

PISANELLI BICE PLLC

By: _____

James J. Pisanelli, Esq., Bar No. 4027
M. Magali Mercera, Esq., Bar No. 11742
400 South 7th Street, Suite 300
Las Vegas, NV 89101

Craig C. Martin (*Pro hac vice* forthcoming)
David Jimenez-Ekman (*Pro hac vice* forthcoming)
Caroline A. Meneau (*Pro hac vice* forthcoming)
Timothy J. Barron (*Pro had hac* forthcoming)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654-3456

*Attorneys for Petitioners*

JAMES J. PISANELLI
BAR NO. 4027
PISANELLI BICE, PLLC
400 S. 7TH STREET
SUITE 300
LAS VEGAS, NV 89101
TELEPHONE: +702 214 2100
FACSIMILE: + 702 214 2101
JJP@PISANELLIBICE.COM

CRAIG C. MARTIN
DAVID  JIMENEZ-EKMAN
TIMOTHY J. BARRON
*PRO HAC VICE PENDING*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone:  +1 312 222 9350
Facsimile:  +1 312 527 0484

Attorneys for Petitioners

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SCIENTIFIC GAMES CORPORATION, BALLY TECHNOLOGIES, INC., AND BALLY GAMING, INC.,<br><br>Petitioners,<br><br>v.<br><br>AGS, LLC,<br><br>Respondent. | **ACTION PENDING IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS (CASE NO. 1:15-CV-3702) HONORABLE MATTHEW F. KENNELLY**<br><br>**DECLARATION OF DAVID JIMENEZ-EKMAN PURSUANT TO LR 26-7 IN SUPPORT OF PETITIONERS' MOTION TO OPEN A MISCELLANEOUS CASE TO COMPEL AGS, LLC TO COMPLY WITH RULE 45 SUBPOENA ISSUED IN A RELATED PROCEEDING IN THE NORTHERN DISTRICT OF ILLINOIS** |

I, David Jimenez-Ekman, hereby declare under penalty of perjury as follows:

1.      I am over 18 years of age and reside in Cook County, Illinois.

2.      I have personal knowledge of the matters described herein and could competently

1

1    testify to these matters if called to do so as a witness in court.

2            3.      I, along with my colleagues from the law firm of Jenner & Block, LLP, in Chicago,

3    Illinois, represent defendants Scientific Games Corporation, Bally Technologies, Inc., and Bally

4    Gaming, Inc. (collectively, "Petitioners") in an action pending in the United States District Court for

5    the Northern District of Illinois captioned, *Shuffle Tech International, LLC, et al. v. Scientific Games*

6    *Corp., et al.*, No. 1:15-cv-03702 (N.D. Ill. filed Apr. 28, 2015) (the "Illinois Action").

7            4.      I submit this declaration in support of Petitioners' Motion to Open a Miscellaneous

8    Case to Compel AGS, LLC to Comply With Rule 45 Subpoena Issued in A Related Proceeding In

9    The Northern District of Illinois.  Petitioners' Motion seeks to compel AGS, LLC ("AGS") to

10   produce documents in response to a Rule 45 Subpoena that Petitioners served on AGS's counsel on

11   December 2, 2016.

12           5.      The parties' first meet and confer concerning the subpoena and AGS's limited

13   December 15, 2016 production occurred on Monday, December 26, 2016, by telephone.  Petitioners

14   were represented by myself and my colleague, Hillary E. August.  AGS was represented by John

15   O'Reilly and Tim O'Reilly.  The teleconference lasted approximately 45 minutes.  The parties

16   addressed Request for Production ("RFP") Nos. 2, 3, and 4 individually, discussing whether the

17   productions AGS had made were complete productions.  AGS's counsel represented that AGS would

18   make a second production responsive to these Requests by Friday, December 30, 2016.

19           6.      Regarding the remainder of the RFPs, we suggested discussing the specifics of

20   narrowing the Requests, such as by date range, and noted that we would agree to a 2012-2016 date

21   range.  However, because it became clear that the parties had reached an impasse, the parties agreed

22   that continuing the call would not be fruitful.

23           7.      On December 30, 2016, we received supplemental objections and responses to RFP

24   Nos. 2, 3, 4, and 7 of the Subpoena from AGS's counsel, along with a 162-page production.  (Ex. 10,

25   Dec. 30, 2016 Ltr. From Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman.)  The

26   supplemental objections and responses were substantially identical to the responses and objections

27   that AGS's counsel had served on December 13, 2016, except that each concluded by explaining the

28   limited production that AGS either had made or was making in response to the Subpoena.  So far as

                                                    2

Petitioners' counsel is able to determine, however, with the possible exception of Request No. 2, AGS had not made a full and complete production in response to any of the document requests.

8.    Thus, the parties held a second meet and confer on January 4, 2017, which lasted approximately 30 minutes.  The parties discussed RFP No. 6 in detail, as well as proposals for narrowing the requests to specific documents.  My colleague and I also assured AGS that any documents AGS designated as "Highly Confidential" will be marked as "Attorneys' Eyes Only," and that Petitioners themselves will not have access to these documents.  The parties, however, again reached an impasse.

9.    Following the exchange of written correspondence in which Petitioners presented an omnibus proposal for simplifying the outstanding discovery due from AGS and its employees, the parties held a third telephonic meet and confer on January 27, 2017.  AGS presented a counterproposal under which Petitioners would withdraw the document requests in exchange for AGS's representation that AGS employees would not testify in the Illinois Action.  The parties again discussed RFP No. 6.  The meet and confer ended without a successful resolution of the discovery dispute.

10.    Based upon the foregoing, I certify that, after participation in numerous efforts to resolve the dispute, Petitioners have been unable to resolve the matter without the input of this Court.  Counsel for Petitioners and AGS negotiated in good faith pursuant to Local Rule 26-7, but they were unable to reach any agreement.

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

1    Executed on January 31, 2017, in Chicago, Illinois.

2

3                                              Respectfully submitted,

4

5                                       By: _____

6                                              David Jimenez-Ekman
                                               Jenner & Block LLP
7                                              353 N. Clark Street
                                               Chicago, IL 60654-3456
8                                              Telephone:  +1 312 222 9350
                                               Facsimile:  +1 312 527 0484

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        4

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of PISANELLI BICE PLLC and that, on the 1st day of February, 2017, I caused to be served the above and foregoing **PETITIONERS' MOTION TO OPEN A MISCELLANEOUS CASE TO COMPEL AGS, LLC TO COMPLY WITH RULE 45 SUBPOENA ISSUED IN A RELATED PROCEEDING IN THE NORTHERN DISTRICT OF ILLINOIS** via Fedex overnight delivery and e-mail to the following:

Timothy O'Reilly
John O'Reilly
O'Reilly Law Group, LLC
325 S. Maryland Parkway
Las Vegas, Nevada 89101
Telephone: (702) 382-2500
Facsimile: (702) 384-6266
tor@oreillylawgroup.com
jor@oreillylawgroup.com

*Attorneys for AGS, LLC*

Robert A. Rowan
Joseph S. Presta
NIXON &VANDERHYE P.C.
901 North Glebe Rd.
Arlington, Virginia 22203
rar@nixonvan.com
jsp@nixonvan.com

Jonathan Hill
David L. Ter Molen
FREEBORN &PETERS LLP
311 South Wacker Drive, #3000
Chicago, IL 60606
jhill@freeborn.com
dtermolen@freeborn.com

*Attorneys for Plaintiffs Shuffle Tech
International, LLC, Aces Up Gaming, Inc., and
Poydras-Talrick Holdings LLC*

An employee of PISANELLI BICE PLLC

1  James J. Pisanelli, Esq., Bar No. 4027
   jjp@pisanellibice.com
2  M. Magali Mercera, Esq., Bar No. 11742
   mmm@pisanellibice.com
3  PISANELLI BICE PLLC
   400 South 7th Street, Suite 300
4  Las Vegas, NV  89101
   Telephone:   702.214.2100
5  Facsimile:   702.214.2101

6  Craig C. Martin (*Pro hac vice* forthcoming)
   David Jimenez-Ekman (*Pro hac vice* forthcoming)
7  Timothy J. Barron (*Pro hac vice* forthcoming)
   Caroline A. Meneau (*Pro hac vice* forthcoming)
8  JENNER & BLOCK LLP
   353 N. Clark Street
9  Chicago, IL  60654-3456
   Telephone:   312.222.9350
10 Facsimile:   312.527.0484

11 *Attorneys for Petitioners*

12          **UNITED STATES DISTRICT COURT**
13               **DISTRICT OF NEVADA**

14 SCIENTIFIC GAMES CORPORATION,        Action pending in the United States
   BALLY TECHNOLOGIES, INC., AND        District Court for the Northern District of Illinois
15 BALLY GAMING, INC.,                  (Case No. 1:15-cv-3702)
                                        Honorable Matthew F. Kennelly
16
17                         Petitioners,  **CASE NO.**

18      v.                              **EXHIBIT INDEX TO PETITIONERS'**
                                        **MOTION TO OPEN A MISCELLANEOUS**
19 AGS, LLC,                            **CASE TO COMPEL AGS, LLC TO**
                                        **COMPLY WITH RULE 45 SUBPOENA**
20                                      **ISSUED IN A RELATED PROCEEDING IN**
                         Respondent.    **THE NORTHERN DISTRICT OF ILLINOIS**
21
22
23
24
25
26
27
28

1

| Exhibit No. | Description |
|---|---|
| 1 | Illinois Action Amended Complaint |
| 2 | June 29, 2016 Amended Report and Recommendation & Order |
| 3 | Sept. 19, 2016 Order Adopting Amended Report and Recommendation |
| 4 | Jan. 20, 2017 Order re extending discovery |
| 5 | Nov. 29, 2016 Document Subpoena |
| 6 | Dec. 2, 2016 Email Exchange |
| 7 | Dec. 13, 2016 AGS Response |
| 8 | Dec. 15, 2016 AGS Production |
| 9 | Compiled Letter Exhibit |
| 10 | Dec. 30, 2016 Ltr. From Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman |
| 11 | Google Maps Print-Out |
| 12 | Dec. 19, 2016 Ltr. From David Jimenez-Ekman to Tim O'Reilly |
| 13 | Protective Order |

# Filed Under Seal Pursuant to Motion to Seal or Redact Filed Concurrently Herewith

# **EXHIBIT 1**

Illinois Action Amended Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHUFFLE TECH INTERNATIONAL, LLC, an Illinois limited liability company<br><br>and<br><br>ACES UP GAMING, INC., a Colorado corporation<br><br>and<br><br>POYDRAS-TALRICK HOLDINGS LLC, a Delaware limited liability company<br><br>Plaintiffs<br><br>v.<br><br>SCIENTIFIC GAMES CORPORATION, a Delaware corporation<br><br>and<br><br>BALLY TECHNOLOGIES, INC., d/b/a SHFL Entertainment or Shuffle Master, a Nevada corporation<br><br>and<br><br>BALLY GAMING, INC., d/b/a Bally Gaming and Systems, a Nevada corporation<br><br>Defendants | Civil Action No. 1:15-cv-3702<br><br>The Honorable Matthew F. Kennelly<br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

# First Amended Complaint for Damages and Other Relief for Violation of Section 2 of the Sherman Act

## I.     Nature of the case

1.     This is a civil action for violations of Section 2 of the Sherman Act.  Plaintiffs' claims are based upon:  (a) Defendants' wrongful enforcement of patents that were fraudulently procured, from the U.S. Patent and Trademark Office ("USPTO") and which were known to be unenforceable and invalid; and (b) Defendants' pattern of sham litigation, asserting objectively

2555325

baseless claims to enforce patents known to be invalid and/or not infringed, all with the intent to directly interfere with and adversely affect the business operations of competitors, and to unlawfully obtain and maintain monopolistic control over the U.S. market for automatic card shufflers designed for casino use.

## II.    Jurisdiction and venue

2.     This action arises under the antitrust and patent laws of the United States, particularly Section 2 of the Sherman Act (15 U.S.C. 2); Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26); the United States Patent Code (35 U.S.C. §§ 102, 103, 114, 283, and 285); and § 1.56 of Title 37 of the Code of Federal Regulations ("CFR").  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 4, 15, 26, and 1121; and 28 U.S.C. §§ 1331, 1337, and 1338.

3.     This Court has personal jurisdiction over Defendants in this state and district under 15 U.S.C. §22;  28 U.S.C. §§1391(b), (c), and (d);  FED.R.CIV.P. 4(k)(1); the long-arm statutes of the State of Illinois; and the Due Process Clause of the Constitution since the Defendants regularly conduct business in this state and district, "reside" in this jurisdiction, and have committed acts violating the U.S. patent and antitrust laws in this state and district.  A substantial part of the events giving rise to the claims asserted occurred in this district, and the potential impact of the violations alleged will be a substantial lessening of competition in the relevant market for card shufflers in this district.  Moreover, Defendants' acts, both within and without this district, have resulted in injury to Plaintiffs' business and property in this state and district.  Defendants have inflicted substantial and irreparable damage to Plaintiffs' business, revenues, and profits arising from activities within this district.  Defendants have a regular and established business in this district, are found in this district, have agents in this district and have well more than "minimum contacts"

2

2555325

with this state and district, all as further specified in the following paragraphs, including specifically paragraphs 5, 9, and 10.

4.      Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) and (2), (c)(2), and (d); and 15 U.S.C. §§15 and 26, because, *inter alia*, the Defendants are subject to personal jurisdiction in this state and district, and therefore "reside" in this state and district, and a substantial part of the events giving rise to the claims asserted herein arose in this state and district, as further detailed in the following paragraphs.

5.      Defendants conduct business in this state and judicial district by, *inter alia*, distributing and/or selling card shufflers which are the subject of this action to casinos located in Joliet, Aurora, Elgin, and Des Plaines.  Defendant, SCIENTIFIC GAMES CORPORATION ("SGC"), also has a 483,000 square foot technology campus and offices in this judicial district at 2718 Roscoe St., Chicago, IL 60018, as well as a 365,000 square foot facility for administrative offices and manufacturing, which support SGC's gaming business in this judicial district, at 800 S. Northpoint Road Blvd, Waukegan, IL 60085.  Additionally, SGC has a long-term contract with the Illinois Gaming Board to design, implement, and administer a Central Communications System ("CCS") for Illinois that provides real-time communication and control between every licensed video gaming terminal in Illinois, as well as day-to-day management of the operation of the CCS and service throughout Illinois.  On information and belief, Defendant, Bally Technologies, Inc., under the direction of SGC, has sold flush-mounted card shufflers which have been manufactured by Defendant, Bally Gaming, Inc. under the direction of SGC, and which are based on the patents at issue in this case (owned by Bally Gaming, Inc.) to all five casinos within the Northern District of Illinois (Eastern Division), *i.e.*, Hollywood Casino (Joliet); Harrah's Joliet Casino & Hotel

3

(Joliet); Hollywood Casino (Aurora); Grand Victoria Casino (Elgin); and Rivers Casino (Des Plaines).

## III.  The parties

6.      Plaintiff, SHUFFLE TECH INTERNATIONAL LLC ("Shuffle Tech"), is a limited liability company organized and existing under the laws of the state of Illinois, having an office at 1440 N. Kingsbury Street, Suite 218, Chicago, IL 60642.  Shuffle Tech does business in this judicial district and state.

7.      Plaintiff, ACES UP GAMING INC. ("Aces Up"), is a corporation of the State of Colorado, with offices at 5855 W. 38th Ave., Wheatridge, CO 80212.  Aces Up does business in this state and judicial district.

8.      Plaintiff, POYDRAS-TALRICK HOLDINGS LLC ("Poydras"), is a limited liability company of the State of Delaware, with offices at 9456 Thornberry, Dallas, TX 75220.  Poydras does business in this state and judicial district.

9.      Defendant, SGC, is a corporation of the state of Delaware, with a corporate office in Las Vegas, Nevada and a technology campus at 2718 Roscoe St., Chicago, IL.  SGC does business in this judicial district by, *inter alia*, distributing and/or selling under the Shuffle Master and/or Bally name, card shufflers which are the subject of this action to casinos located in Joliet, Aurora, Elgin, and Des Plaines.  SGC also has administrative offices and manufacturing facilities that supports SGC's gaming business in this judicial district at 800 S. Northpoint Road Blvd, Waukegan, IL 60085.  On information and belief, SGC controls and directs the actions and operations of the other defendants, including the authorization, maintenance and conduct of the sham litigation described in paragraphs 25-26 and the defense of the reexaminations described in paragraphs 29-32.

4

10.     Defendant, BALLY TECHNOLOGIES, INC. ("Bally" or "SHFL"),[1] is, or was, on information and belief, a corporation of the State of Nevada, with offices located at 6650 S. El Camino Road, Las Vegas, NV 89118.  On November 21, 2014, Bally was acquired by, and its operations taken over by SGC.  Bally's financial records and data were thereafter consolidated with SGC's on financial reports to the Securities and Exchange Commission ("SEC").  On information and belief, Bally's financial records and data have been consolidated for all other purposes as well, and its revenues and funds have been commingled such that it is no longer possible, at least for the public, to separate or segregate Bally's and SGC's  funds and revenues in any meaningful way.  Subsequent to Bally's earlier acquisition of SHFL Entertainment, Inc. (f/k/a/ Shuffle Master Inc.) on Nov. 25, 2013, Bally, and after November 21, 2014, SGC, began using "Shuffle Master" or "SHFL" as trade names and, upon information and belief, Bally and SGC have sold or leased table-mounted card shufflers, under the "Shuffle Master" name based on the patents at issue in this case, to all five casinos within the Northern District of Illinois (Eastern Division), i.e., Hollywood Casino (Joliet); Harrah's Joliet Casino & Hotel (Joliet);  Hollywood Casino (Aurora);  Grand Victoria Casino (Elgin); and Rivers Casino (Des Plaines).

11.     Defendant, BALLY GAMING, INC. ("BGI") is or was a corporation of the State of Nevada, with offices located at 6650 S. El Camino Road, Las Vegas, NV 89118.  BGI is or was a subsidiary of BALLY GAMING INTERNATIONAL, INC., which operates, or was operated, as a subsidiary of ALLIANCE HOLDING CO., which operates, or was operated, as a subsidiary of

---

[1] The records of the Secretaries of State of Nevada and Minnesota list SHFL Entertainment, Inc. as inactive and dissolved.  However, legal actions initiated by SHFL in 2012 were continued by Bally after the time of its 2013 acquisition of SHFL Entertainment, Inc. and thereafter continued by SGC.  Because this dispute relates to Bally's card shuffler business, which has been consistently known throughout the gaming industry and in prior patent infringement and antitrust litigation by its former names "Shuffle Master" and "SHFL Entertainment," this Complaint will refer to Bally Technology, when it is doing business as SHFL or Shuffle Master, as "SHFL".

5

Defendant Bally.   Upon information and belief, BGI operates, under the direction of SGC management, as a manufacturer of equipment and games, including under the Shuffle Master or SHFL name, for casinos in the U.S., including all five casinos within the Northern District of Illinois (Eastern Division), *i.e.*, Hollywood Casino (Joliet); Harrah's Joliet Casino & Hotel (Joliet); Hollywood Casino (Aurora);  Grand Victoria Casino (Elgin); and Rivers Casino (Des Plaines). According to assignment records in the United States Patent and Trademark Office, BGI is the current owner of record of patents-in-suit U.S. 6,651,982 ("the '982 patent) [Exhibit 1] and U.S. 7,523,935 ("the '935 patent") [Exhibit 2] and their progeny.

12.     Shuffle Tech, Poydras, and Aces Up have each been damaged in their businesses and property by the actions of Defendants as set out below.

## IV.   Facts common to all counts

13.     Casinos routinely use automatic card shuffling machines ("card shufflers") on gaming tables to automate the historically labor-intensive process of shuffling physical playing cards between each hand of play.  For the purpose of this complaint, the "relevant market" is the market in the United States for card shufflers certified and approved for use by casinos, excluding card shufflers designed for private consumer use in unregulated environments and also excluding card shufflers that randomize virtual "cards" in video-based games.

14.     The first patents teaching automatic card shufflers were filed in the late 1800's. Various types of *fully* automatic card shufflers, which randomly shuffle an initial set of cards without human assistance, were first taught in patents issued in the early 1930s, *e.g.*, U.S. Patent 1,889,729 to Hammond, filed in 1932.  Integration of automatic card shufflers into gaming tables where shuffling occurs below the table and delivery of the shuffled cards comes from below the top surface of the table to the dealer was also first taught in the 1930s.  *Id,* also U.S. Patent

2,065,824 to Plass, filed in 1930. By the early 1990s, computer-controlled shufflers, where all "shuffling" is conducted electronically by the onboard computer, were introduced. In those shufflers, the computer determined the final "random" or other intended order for the final set of cards, and the cards were mechanically sorted into that intended order.

15.    Casinos demand card shufflers because they increase labor efficiency, deter player/dealer collusion and cheating, and increase the number of "hands" played each hour at each gaming table, resulting in higher casino profits and dealer tips.

16.    There are no reasonable substitutes for automatic card shufflers for casino table games that use physical playing cards. Without an automatic card shuffler, the dealer must shuffle by hand, which is prohibited by gaming regulators in some jurisdictions and less economical in all other jurisdictions.

17.    The market for card shufflers comprises approximately 30,000 card shuffler units sold and leased to casinos. SHFL has 100% market share in the relevant U.S. market, and nearly 100% market share worldwide. SHFL's 2012 Annual Report indicates that, as of the report date, it had 8,285 SHFL shufflers on lease worldwide (primarily in the US), with an average monthly lease of $451/unit, producing $44,838,420 in recurring revenue. According to SHFL, the majority of its leases are month-to-month and include service and support. In 2012, SHFL sold 2,135 units at an average price of $15,843, for total sales of $33,824,805. SHFL's service and "other" utility segment revenue in 2012 was $11,839,000, including monthly service fees for shufflers purchased and owned by casinos. In summary, total SHFL utility segment revenues (excluding chipper sales) were $92,502,000 in 2012, an increase of approximately $11,000,000 from 2011 to 2012. This figure is comprised of almost $34,000,000 in one-time sales (subject to ongoing support revenue) and $59,000,000 in recurring revenue.

2555325

18.     As of October 2012, SHFL had dominated the relevant U.S. market for more than a decade and had completely monopolized that market since at least 2009, when SHFL acquired the shuffler assets and patents of its only remaining competitor, VENDINGDATA CORPORATION ("VendingData").  SHFL has used the continued threat of litigation to drive out other potential competitors, including but not limited to, TAIWAN FULGENT ENTERPRISE CO., LTD. ("Taiwan Fulgent") and TCS/JOHN HUXLEY ("TCS"), as set forth below.

19.     Shuffle Tech is a developer and manufacturer of card shufflers.  It has been in business since March 2006.  Shuffle Tech has invented several innovative methods and devices for shuffling cards and has been awarded numerous patents by the U.S. Patent and Trademark Office ("USPTO") and several foreign patent offices.[2]  Beginning in 2008, Shuffle Tech manufactured card shufflers primarily for private consumer use, and sold several thousand shufflers to customers around the world.  Shuffle Tech also intended to commercialize its technology for use in casinos and develop a full range of single- and multi-deck card shufflers based on its technology, which benefits casinos by enabling card shufflers that are simpler to build, less expensive, and more reliable than the devices offered by SHFL.

20.     Shuffle Tech developed its first prototype single-deck card shufflers intended for use by casinos between 2010 and 2012.  It obtained certification of the effectiveness of its shufflers

---

[2] U.S. 8,602,416 "Card shuffling device and method,"
   U.S. 8,480,088 "Flush mounting for card shuffler,"
   U.S. 8,109,514 "Card shuffling device and method,"
   U.S. 7,971,881 "Apparatus and method for automatically shuffling cards,"
   U.S. 7,900,923 "Apparatus and method for automatically shuffling cards,"
   U.S. 7,854,430 "Card shuffling device and method," and
   D578,577      "Automatic card shuffler."

8

in March 2012 from GAMING LABORATORIES INTERNATIONAL ("GLI"), an independent testing agency recognized by gaming regulators in most gaming jurisdictions.

21.   Beginning in April 2012, Shuffle Tech demonstrated its card shuffler patents, technology, and working prototypes to DIGIDEAL CORPORATION ("DigiDeal"), an established gaming equipment manufacturer, with the intention that DigiDeal would engineer a series of shufflers based on Shuffle Tech technology that were suitable for mass-production and use in casinos and would pay Shuffle Tech royalties for the use of its technology and patents.

22.   In response to this market opportunity and based on the prototypes provided by Shuffle Tech, DigiDeal developed the DigiShuffle™ and the parties, together with Poydras, executed a patent and technology license agreement for the Shuffle Tech technology and patents in September 2012.[3] The license agreement provided for a minimum sales quota of 800 units in 2013 and 1,200 units per year from 2014 onward, at least until the Shuffle Tech patents expired (approximately 2027), and that DigiDeal would pay a royalty of $4,000 per unit to be divided equally between Shuffle Tech and Poydras. Aces Up was retained to assist in the manufacture, sales and distribution of the licensed shufflers and was awarded an exclusive (except for DigiDeal) contract and sub-license in certain jurisdictions. Updated GLI certification for the Shuffle Tech/DigiDeal final production model, called DigiShuffle™, was obtained in January 2013.

23.   Had DigiDeal (or its successor) not been prevented from meeting its sales quotas by Defendants, it would have paid Shuffle Tech and Poydras minimum royalties of $3,200,000 in 2013 and $4,800,000 in 2014 and each year thereafter until about 2028, when the existing Shuffle

---

[3]   Shuffle Tech executed a patent license agreement for its patented card shuffler technology with Poydras, a gaming equipment finance company, which in turn sub-licensed the technology to DigiDeal, the manufacturer of the shufflers. Shuffle Tech also agreed to pay DigiDeal's litigation costs in the lawsuit filed against DigiDeal.

2555325

Tech patents expire. Shuffle Tech's "know-how," trade secrets, and anticipated improvements, including later patented technology, would further justify additional, albeit reduced, payments after 2028. In any event, it is reasonably predictable that DigiDeal would have sold or leased a minimum of 17,600 shufflers, resulting in patent and technology royalties of at least $70,400,000 paid by DigiDeal to Shuffle Tech and Poydras over the fifteen year period beginning in 2013.[4] Altogether, Shuffle Tech, Poydras, and DigiDeal should have collectively earned more than $8,000,000/year, or $120,000,000 over the 15 year period from 2013 through at least 2027, plus continued earnings from ongoing sales and leases for the ongoing use of Shuffle Tech's trade secrets after Shuffle Tech's patents expired in 2028. Additional sums would have been earned by Aces Up as a result of its role in manufacturing, sales, and distribution of the licensed shufflers. It was anticipated that Aces Up would lease or sell a minimum of 100 licensed shufflers per quarter, *i.e.*, over 400 licensed shufflers per year.

24.     Pursuant to its recently executed license agreement with Shuffle Tech, DigiDeal displayed its initial single-deck prototype DigiShuffle™ card shuffler to customers for the first time at the 2012 Global Gaming Expo ("G2E") in Las Vegas, Nevada, on October 2-4, 2012. The proposed retail price for the DigiShuffle™ was $10,995. The proposed monthly lease price for casinos was $350/month. DigiShuffle's™ sale and lease prices were far less than the SHFL DeckMate or the then-recently announced DeckMate2, which respectively sold for $16,995 and $20,995, or leased for $450/month or $525/month, respectively. In addition to reduced purchase or lease costs, the DigiShuffle™ also offered customers substantial savings from increased reliability and lower routine maintenance costs. As a result of the DigiShuffle's™ lower cost and

---

[4] At the minimum sales quota, DigiDeal would have sold 17,600 shufflers between 2013 and 2027, and assuming profits of at least $2,800/unit, after expenses and patent royalties, DigiDeal would have earned about $50,000,000 over the same 15 year period.

greater reliability, the market response to the DigiShuffle™ was very positive and demand was considerable from the start. DigiDeal's potential customers and the market in general were precluded from realizing these benefits by SHFL's subsequent actions.

25.     Recognizing the threat of Shuffle Tech's improved technology and lower prices, SHFL immediately, on October 12, 2012, filed a sham patent infringement lawsuit against DigiDeal. SHFL's suit falsely alleged that the DigiShuffle™ single-deck card shuffling machine built by DigiDeal under license from Shuffle Tech infringed claims 1-3 and 42-46 of SHFL's U.S. patent 6,651,982 ("the '982 patent") and claims 1, 2, 9, 10, 11 and 14 of SHFL's U.S. patent 7,523,935 ("the '935 patent"). The lawsuit was filed as case no. 2:12-cv-1782, in the U.S. District Court for the District of Nevada and has been continued, maintained and ratified by Bally and SGC to date, notwithstanding Bally's and SGC's knowledge of all the prior art and unlawful conduct set out herein demonstrating the sham nature of that litigation and the Defendants' collective and ongoing fraud on the PTO. Moreover, even if the asserted patents had not been obtained by fraud on the USPTO they have nevertheless been invalided by the USPTO upon re-examination, and thus SHFL, Bally, and SGC have had no basis whatsoever for maintaining their sham litigation against DigiDeal.

26.     On information and belief, SHFL conducted no reasonable pre-filing investigation of the DigiShuffle™ prior to filing suit in October 2012, or even six months later in March 2013 when SHFL served its initial infringement contentions or, if such investigation was conducted, it was ignored. Prior to filing suit, SHFL, under the leadership of Gavin Isaacs, then CEO of SHFL, and now President and CEO of SGC, declined to schedule a meeting with DigiDeal to inspect the DigiShuffle.™ SHFL could have inspected DigiShuffle's™ method and structure and quickly determined that it bore no relation to the patented inventions under any reasonable construction of

2555325

the claims, but SHFL chose not to do so. Each of the infringement assertions made by SHFL and continued by Bally and SGC, against DigiDeal was objectively baseless. In addition, all of the claims asserted by SHFL were invalid, and have been maintained by Bally and SGC for the purpose of inflicting collateral, anti-competitive injury on DigiDeal and the Plaintiffs, as further detailed below. In addition to the damage to the market, Shuffle Tech, Poydras, and Aces Up suffered substantial damages as a result of SHFL's unlawful activities, including, but not limited to, the loss of profits they otherwise would have made. Shuffle Tech was also forced to expend over $950,000 in legal expenses to defend DigiDeal against SHFL's sham patent infringement claims because it was a competitor and potential competitor of SHFL/Bally/SGC and was the target of the sham litigation strategy initiated by SHFL and continued and maintained by Bally and SGC.

27.     The '982 patent asserted against DigiDeal was originally issued on November 25, 2003 to named inventors Attila Grauzer, Feraidoon Bourbour, Troy D. Nelson, Paul K. Scheper, James B. Stasson, and Ronald R. Swanson, and was assigned to SHFL Entertainment, Inc. The '982 patent application was filed by SHFL patent attorney Mark Litman as Patent Application Serial No. 10/128,532 on April 23, 2002. It was a continuation-in-part of U.S. Patent Application 09/967,502, now patented as U.S. Patent 6,651,981, also issued on November 25, 2003. Both patents claimed priority to September 28, 2001.

28.     The sole point of novelty and basis for allowance of the '982 claims was the "automatically moveable cover" over the card elevator, as opposed to a mere "moveable cover" that was found on most prior art shufflers: "Claims 1, 25, 27, 30, 48, 50, and 55 distinguish over the prior art of record with the limitation of an automatically moveable cover in association with card shuffler and dispenser." Notice of Allowability, p.6, June 13, 2003, Application 10/128,532.

12

2555325

29.     On January 2, 2014, DigiDeal initiated *ex-parte* reexamination of all of the contested claims of the '982 patent.  The USPTO found that previously undisclosed prior art raised 136 "Substantial New Questions of Patentability" (for 8 claims; an average of 17 Substantial New Questions of Patentability per claim).  SHFL attorney Alan Fanuchi of WINSTON & STRAWN, which has also represented SGC in this litigation as well as SHFL, Bally, and SGC in the Nevada litigation against DigiDeal, and is directed and controlled by SGC, prosecuted the application during reexamination.  During *ex parte* reexamination in 2014, the Central Reexamination Unit ("CRU") examiner stated, with respect to independent claims 1 and 42 subject to re-examination: "In the previous examination of the '982 patent the original examiner determined that the prior art failed to disclose or fairly suggest an automatically moveable cover associated with a card shuffler and dispenser as recited in claims 1 and 42.  Claims 2 and 3 depend from claim 1 and claims 43-46 depend from claim 42."  All '982 claims asserted by SHFL against DigiDeal and subject to reexamination have been rejected as anticipated and/or rendered obvious by prior art.  Notice of Non-Final Rejection in Office Action in *Ex parte* Reexamination 90/013,112, p.3, Aug. 15, 2014. Both reexaminations have now been terminated and reexamination certificates have issued.  None of the claims asserted against DigiDeal have survived.  SHFL, Bally, and SGC are fully aware of these facts but, despite that knowledge, have continued to authorize, prosecute, ratify and maintain the *DigiDeal* sham litigation and the continuing fraud on the USPTO.

30.     The '935 patent asserted against DigiDeal was originally issued on April 28, 2009. It identified the same group of inventors listed on the '982 patent and was assigned to SHFL Entertainment Inc.  It was filed by SHFL patent attorney Mark Litman on October 15, 2003 as Patent Application Serial No. 10/686,164 and was a divisional of the '982 patent.  The earliest possible priority date for the '935 patent is September 28, 2001.  The point of novelty and basis for

13

allowance of the '935 claims was a "card support surface" recessed beneath the top surface of the gaming table, as set out in the last Amendment (Oct. 30, 2008) before the Notice of Allowance.

31.    On January 2, 2014, DigiDeal initiated *ex parte* reexamination of all of the contested claims of the '935 patent. The USPTO found that previously undisclosed prior art raised 86 Substantial New Questions of Patentability (for 6 claims; an average of 14.3 Substantial New Questions of Patentability per claim). SHFL attorney Alan Fanuchi of WINSTON & STRAWN prosecuted the application during reexamination. During re-examination, with respect to independent claims 1 and 9 subject to reexamination, the CRU examiner stated: "In the previous examination of the '935 patent the original examiner determined that the prior art failed to disclose or fairly suggest an automatic card shuffler with a housing mounted to a gaming table surface such that a card receiver for accepting cards to be shuffled is accessible from the gaming table surface; wherein the card receiving area is recessed beneath the top of the gaming table." All '935 claims asserted by SHFL against DigiDeal and subject to reexamination have been rejected as obvious over prior art. Notice of Non-Final Rejection in Office Action in Ex Parte Reexamination, pp. 3, 15, 17 of 20, July 14, 2014, SN 90/013,111. SHFL, Bally, and SGC are fully aware of these facts but, despite that knowledge, have continued to authorize, prosecute, ratify and maintain the sham litigation and continuing fraud on the USPTO.

32.    However, SHFL's files also contained invaliding prior art that was even more damaging to SHFL's patentability arguments (unbeknownst to DigiDeal at the time of its reexamination requests) which SHFL had failed to produce to the USPTO or to DigiDeal during discovery. Multiple prior art references, known to SHFL as early as October 1997, but not disclosed by SHFL, in bad faith and with deceptive intent, to the USPTO during prosecution or reexamination, support a *prima facie* case of anticipation and/or obviousness against all '982 and

14

'935 claims asserted against DigiDeal. These references include the Roblejo Prototypes which were known to SHFL as early as October 1997, and the Luciano Prototypes which were known to SHFL at least as early as September 2003 and, on information and belief, years earlier, and which are described in detail below. None of the claims asserted against DigiDeal would have issued if this art had been presented. In addition, U.S. 6,361,044 to Block ("the Block '044 patent") was withheld from the examiner during prosecution of the '982 patent, and while nominally disclosed in the '935 application, the card shuffler taught in the Block '044 patent was "buried" among irrelevant prior art not properly brought to the examiner's attention in the '935 application. SHFL made no attempt to advise the '935 examiner that Block's card shuffler was mounted below the gaming table, a critical but not immediately apparent fact. The importance of these facts is evidenced by the opinion of the CRU examiner during reexamination of the '982 and '935 patents. These acts and omissions by SHFL, now under the direction and control of SGC, can only be characterized as affirmative acts of egregious misconduct which were part of a deliberately planned and carefully executed scheme to defraud the USPTO and gain allowance of claims that would not have otherwise been allowed. SHFL knew that the '982 and '935 patents were invalid and unenforceable at the time it sued Shuffle Tech's sub-licensee DigiDeal. SGC is aware of these facts, but nevertheless has continued the fraud and maintained the sham action against DigiDeal.

33. The first group of still undisclosed prior art references, the Roblejo Prototypes, and in particular the second iteration prototype, were developed by CASINO CONCEPTS, INC. ("Casino Concepts") between 1995-1997 and were marketed as the "Sure Shuffler" in sales brochures distributed to potential customers. These prototypes were known to SHFL since at least October 1997. SHFL had received sales brochures from Casino Concepts and a business card from Dr. Conrad Roblejo, its founder and principal inventor, at the World Gaming Expo in Las Vegas,

2555325

Nevada on October 14-16, 1997.  These brochures were also included in an internal SHFL report titled: "97 World Expo: Report on Shuffler Competition" which SHFL produced as belated, supplementary discovery in its case against CARD, LLC (see below) on January 30, 2004.  Letter of Jan. 30, 2004 from SHFL to CARD attorneys (Ex. B to Morrill Declaration, Dkt. 193, *CARD, LLC v Shuffle Master, Inc.,* No. CV-N-03-244 (D. Nev.) ("*CARD* litigation").

34.   The first iteration of the Roblejo Prototypes was constructed between 1991-1995 and demonstrated to at least Bally's Casino in Atlantic City, New Jersey in 1995.  Gola Decl., ¶6, Oct. 23, 2003, *CARD* litigation, (D. Nev.).  It was obtained by CARD in December 2003 from Casino Concepts engineer Hal Solberg and demonstrated by CARD attorney Robert Morrill in a 16-minute video made in December 2003.  The Morrill declaration and video were filed as evidence in the *CARD* case to demonstrate that several features of this prior art anticipated and invalidated the SHFL patents asserted against CARD.

35.   SHFL disclosed CARD's evidence of the Roblejo Prototypes in certain USPTO Information Disclosure Statements ("IDS") filed in more than twenty subsequent unrelated patent applications after January 2004, but SHFL failed to disclose, in bad faith and with deceptive intent, these prototypes in the application that resulted in the '935 patent or in any continuations-in-part ("C-I-P") or divisionals of the '981/'982 patents. SHFL's inequitable conduct in the '982 and '935 patent prosecution bears an immediate and necessary relation to these additional applications, as further detailed below, and that conduct thus infected and tainted those subsequent or co-pending applications as well, rendering each of the resultant patents unenforceable.

36.   A verbatim transcript of the Roblejo Prototype demonstration video was presented in the *CARD* litigation via the Declaration of Robert Morrill in Support of CARD's Motion to Stay Injunction Pending Review [Dkt. 179, pages 14-21].  Additional corroborating evidence of the

several Roblejo prototypes built and marketed between 1995-1997 was included in the Gola Declaration and the Solberg Declaration in that case.  (¶¶ 15, 17, 23) (Dec. 18, 2003, *CARD* litigation).

37.     The Roblejo Prototypes and the sales brochures featuring the Roblejo Prototype shufflers mounted to gaming tables anticipate every claim of both the '982 and '935 patents, and render those claims invalid and unenforceable.  In particular, the several 1995-1995 Roblejo Prototypes feature, *inter alia*, the "automatically moveable cover" over a card elevator which raises cards above the top surface of the device, which was the sole point of novelty over the cited prior art that resulted in the allowance of the asserted '982 claims.  The Casino Concepts brochures also display the Roblejo Prototype mounted in a gaming table such that the card receiver has a support surface for receiving cards below the top surface of the gaming table and an elevator for raising the cards so that the entire shuffled deck of cards can be manually removed from an area proximate the surface of the gaming table, which was the sole point of novelty over the cited prior art that resulted in allowance of the asserted '935 claims.

38.     SHFL, its applicants, and attorney, Mark Litman, failed to disclose, in bad faith and with deceptive intent, the Casino Concepts brochure and SHFL's other records of the Roblejo Prototypes to the USPTO during the prosecution of either the '982 or '935 patents.

39.     SHFL, its applicants, and attorney, Alan Fanucci, failed to disclose in bad faith and with deceptive intent, the Casino Concepts brochure and SHFL's other records of the Roblejo Prototypes to the USPTO during the 2014 *ex parte* re-examination of the '982 or '935 patents. Upon information and belief, Mr. Fanucci reports to and/or has reported to Bally's former General Counsel, Kathryn Lever, and to SGC's current General Counsel, David Smail, and ultimately SGC's President and CEO, Gavin Isaacs.  Upon information and belief, Mr. Fanucci, and certainly

17

2555325

his firm, have also advised Messrs. Isaacs and Smail, and Ms. Lever, with respect to the '982 and '935 patent prosecutions and reexaminations, the *DigiDeal* sham litigation, and this action.

40.   SHFL and its attorneys failed to produce, in bad faith and with deceptive intent, the Casino Concepts brochure and its other records of the Roblejo Prototypes to DigiDeal in response to DigiDeal's document discovery requests, further engaging in litigation misconduct.

41.   The second of the undisclosed prior art references was the Luciano Automatic Card Shuffler ("ACS") Prototype. The Luciano ACS was made known to SHFL and its predecessors-in-interest, including PROGRESSIVE GAMES INTERNATIONAL ("PGI") as early as late 1993, when Luciano Packaging was marketing its engineering services and prototype to nearly every gaming company, including PGI, as evidenced by an October 13, 1994 Letter. Luciano Declaration, d 14, 15, Oct. 4, 2003, *CARD* litigation. The Luciano ACS was also fully disclosed to SHFL during the *CARD* litigation in November 2003. October 4, 2003 Declaration of Lawrence Luciano, and a video demonstration of the 1992 Luciano Automatic Card Shuffler (ACS) filed as Exhibit K to the Lawrence Luciano Declaration.

42.   Not only was SHFL fully aware of the Luciano ACS, but SHFL actually cited the Luciano ACS as evidence of invalidating prior art for other patents asserted against SHFL in the 2005 lawsuit, *MP Games LLC, et. al. v. Shuffle Master, Inc.,* No. 2:05-cv-01017 (W.D. Wash.). A deposition of Robert Luciano[5] was taken in that case and filed under seal at Dkt. 69-5 on July 7, 2006. As evident from the extensive mechanical drawings attached as exhibits in the *CARD*

---

[5] Robert Luciano and Lawrence Luciano are brothers, and owners of LUCIANO PACKAGING, the developer and owner of the Luciano ACS. Robert Luciano was also the Founder of SIERRA DESIGN GROUP, which was acquired by Bally Technologies (then Alliance Gaming) in 2004, at which time Robert Luciano became Executive Vice President and Chief Technology Officer for Bally Technologies. Upon information and belief, Bally Technologies also received prototypes and records related to the Luciano ACS prototypes.

litigation and the video demonstration filed as Exhibit K with the Lawrence Luciano Declaration, the Luciano ACS Prototype was an automatic card shuffler integrated into the top surface of a gaming table, such that the card receiver was below the surface of the gaming table and the shuffled cards were delivered on a card elevator to a point proximate the surface of the gaming table. Luciano anticipated at least '935 claim 1 and rendered obvious all other claims of the '982 and '935 patents that were asserted against DigiDeal. The Luciano Prototypes also bear an immediate and necessary relation to, but were not disclosed in, the prosecution of other progeny of the '982 and '935 applications or their parent applications, thus spreading the infectious unenforceability created by SHFL's inequitable conduct in the '982 and '935 applications to those other patent applications.

43.    SHFL and its attorney Mark Litman failed to disclose, in bad faith and with deceptive intent, the Luciano ACS Prototype and its other records thereof to the USPTO during the prosecution of either the '982 or '935 patents.

44.    SHFL and its attorney Alan Fanucci failed to disclose, in bad faith and with deceptive intent, the Luciano ACS Prototype and its other records thereof to the USPTO during the 2014 *ex parte* re-examination of the '982 or '935 patents. Upon information and belief, SGC, its General Counsel and CEO, were aware of or became aware of this deliberate deception of the USPTO, but nevertheless authorized and instructed Mr. Fanucci and his firm to maintain the sham litigation against DigiDeal.

45.    SHFL and its attorneys failed to produce, in bad faith and with deceptive intent, the Luciano ACS Prototype and its other records in response to DigiDeal's document discovery requests, further engaging in litigation misconduct.

46.    SHFL failed to disclose, in bad faith and with deceptive intent, the Block '044 patent during prosecution of '982 and it was not available or considered by the '982 examiner prior to

19

allowance. SHFL subsequently disclosed the Block '044 patent in an IDS for subsequent C-I-Ps and divisionals of '982, including CIP application 10/261,166, and divisional application 10/686,164, but did not disclose the Roblejo and Luciano Prototypes in each of those C-I-Ps and divisionals.

47.     SHFL knew about the Block '044 patent at least five months before the '982 patent issued in November 2003 as shown by the facts that:  (1) SHFL filed an unrelated patent application, serial number PCT/2005/009561 A2, titled "Smart Discard Rack For Playing Cards," on July 17, 2003, naming Attila Grauzer and other inventors named in the '982 and '935 patents as its inventors, which included a description of the Block '044 patent in its written specification, at page 8, ln. 4-14; and (2) SHFL filed an IDS citing the Block '044 patent as material prior art to SHFL's disclosed invention on October 28, 2003 in CIP application 10/261,166, which issued as U.S. Patent 7,036,818 ("the '818 patent").

48.     The Block '044 patent teaches and claims a computerized, automated gaming table that uses physical playing cards (as opposed to digital, on-screen cards that are common in automated gaming tables). An automatic card shuffler is inherently necessary to the operation of an automated gaming table that uses physical playing cards, although it was not a point of novelty in Block's claimed invention.  Block did not make reference to the automatic card shuffler of his automated gaming table in his title, his abstract, or his summary of his invention.  However, an automatic card shuffler was fully described in the detailed description of his invention.  Although SHFL identified the Block '044 patent as material to their claimed automatic card shuffler, it did not notify the examiner of its relevance, which the examiner would have only discovered if he read the entire specification, a very unlikely occurrence given SHFL's deceitful silence on this issue and the multitude of other, much less relevant prior art concurrently dumped on the examiner.

49.     The Block '044 patent anticipates and/or renders obvious all claims of '935 and '982 patents, as found by the CRU examiner during ex-parte reexamination in 2014.

50.     SHFL and its patent attorney, Mark Litman, failed to disclose, in bad faith and with deceptive intent, the Block '044 patent to the USPTO, although it was in SHFL's possession no later than July 2003.   SHFL and Mark Litman, in bad faith and with deceptive intent, failed to exercise their duty of candor and good faith regarding the Block '044 patent during prosecution of the '935 and '982 patents.

51.     SHFL's patent infringement lawsuit against DigiDeal was a sham, with no objective likelihood of success on the merits.  SHFL held in its records evidence of no less than three prior art references that anticipated and/or rendered obvious every '982 and '935 claim asserted against DigiDeal but effectively withheld those prior art references from multiple patent examiners while arguing that no such teaching existed in the prior art.  Because some of those same references had been the basis for inequitable conduct counterclaims against SHFL in prior litigations, causing SHFL to settle those cases and to pay large sums of money to those counterclaimants, SHFL could not have reasonably believed that the '982 and '935 patent claims asserted against DigiDeal were valid and enforceable.   Upon information and belief, these facts were known to SGC and in particular, Ms. Lever and Mr. Isaacs, who, on behalf of SGC, have authorized and maintained the sham litigation against DigiDeal.

52.     In addition to the invalidity and unenforceability of the '982 and '935 patent claims asserted against DigiDeal, DigiShuffle's™ shuffling method and structure are fundamentally different from the shuffling method and structures disclosed and claimed in the '982 and '935 patents and clearly could not infringe either of those patents even if they were valid.   The DigiShuffle™ shares only three common characteristics with the asserted patent claims, all of

21

which are common to many prior art card shufflers: (a) rectangular shaped housings; (b) input and output apertures located on the top surface of the device, with elevators to lift shuffled cards for removal by the dealer near the output aperture; and (c) moveable doors/covers over the output aperture that open and close by a mechanism, rather than by hand. Thus, *even if* the '982 and '935 patents were valid and enforceable, no reasonable claim construction of the '982 and '935 patents could lead to a finding of infringement by the DigiShuffle™. No reasonable litigant could have expected to prevail on the merits of SHFL's infringement contentions against the DigiShuffle™. Upon information and belief, SGC's management and, in particular, Ms. Lever, were and are aware of these, but SGC nevertheless authorizes and maintains the sham litigation against DigiDeal.

53.     Defendants' initiation and SGC's maintenance of the sham litigation against DigiDeal has caused substantial damage to Shuffle Tech, Aces Up, and Poydras, potential customers of each of these parties, as well as to DigiDeal and the market itself.

54.     SHFL intentionally misused the '982 and '935 patents, which were invalid and unenforceable, by filing suit to enforce them knowing them to be invalid, unenforceable (due to SHFL's fraudulent conduct in the initial applications between 2001-2009), and not infringed. SGC has knowingly and in bad faith continued this misuse. The '982 and '935 patents and various progeny patents deriving from those patents and their parent applications are further rendered unenforceable by SHFL's additional fraudulent conduct (with the knowledge, approval, and ratification of SGC) in withholding relevant prior art during the *ex parte* reexaminations in 2014 and 2015 and in response to document and other discovery requests in litigation.

55.     Since acquiring Bally Technologies, Inc. on November 21, 2014, SGC has held itself out to the public as a single integrated entity, both financially and operationally. On Dec. 9, 2014, Bally filed with the SEC, a Form 15: "Certification and notice of termination of registration

22

under section 12(g) of the Securities Exchange Act of 1934 or suspension of duty to file,"
essentially removing itself from the rolls of publicly traded entities, and began filing consolidated
financial reports with the SEC, combining its financial data with that of SGC and all its other
wholly owned (or controlled) subsidiaries.  As seen in SGC's latest 10-Q filing (Aug. 7, 2015 for
the period ending June 30, 2015), all of Bally's and SHFL's financial data are combined with SGC's
and separate financial statements and are no longer publicly available for Bally or SHFL as
separate entities.  SGC's relationship with Bally has moved far beyond the normal scope of a
parent/subsidiary relationship.  SGC manages and directs Bally's internal and external affairs and
determines how Bally operates on a day-to-day basis.  SGC's latest 10-Q filing with the SEC states
that its operations are divided into three business segments along product, rather than corporate,
lines – Gaming, Lottery, and Interactive.  Each segment is managed by a separate executive who
reports to the CEO (Gavin Isaacs) who is described as the "chief operating decision maker."
Scientific Games Corporation, Form 10-Q, p.12, for quarterly period ended March 31, 2015 (May
11, 2015).

56.    To implement its corporate integration, SGC formed an "Integration Management
Office" led by SGC's Chief Administrative Officer, Dan Savage.  SGC's website refers to "[t]he
combined company" and that "[t]he combination of Scientific Games and Bally Technologies
creates a premiere gaming and lottery entertainment and technology company . . . " See "Stronger
Together," www.scientifigames.com/about/bally-acquisition/ (Oct. 13, 2015).  Bally's integration
into SGC and SGC's representation to the public that SGC and Bally are one and the same company
are further explained by Bally's website (www.ballytech.com) and specifically the "About" tab.
When searching for information on Bally, the reader is directed to SGC's website
(www.scientificgames.com), which provides no breakout information on Bally.  On information

and belief, Bally is no longer a viable, operating entity, but a mere shell corporation, through which SGC conducts its business. On information and belief, Bally's operations, including in particular those relevant to this case, are wholly directed by SGC and, to the extent Bally even exists as a separate entity, it operates wholly as an agent of SGC.

57.     Upon information and belief, SGC's current President and CEO, Gavin Isaacs; former General Counsel, Kathryn Lever; current Chief Legal Officer, David Smail; and current Group Chief Executive of Gaming, Derik Mooberry (and others) are fully familiar with this litigation, the previously described fraud on the USPTO, the underlying *DigiDeal* sham litigation and they control the litigation decisions (*e.g.*, whether to press forward or terminate) in both cases. Despite the results of the patent reexaminations (see paragraphs 29 – 31 above) and other information known to such SGC executives, these SGC executive have authorized, maintained, and ratified the *DigiDeal* sham litigation for nearly a full year after the Bally acquisition and for six months after the filing of this litigation fully describing and documenting the various frauds perpetrated on the courts and the USPTO. Upon information and belief, SGC was fully aware of the prior art and wrongdoing recited in the preceding paragraphs of this Complaint even before the filing of this Complaint, yet has fully authorized, ratified, and continued SHFL's and Bally's monopolization of the relevant market and has continued and directed the wrongful sham litigation against DigiDeal, including through SGC's attorneys, Winston & Strawn, who assisted in the perpetration of much of the fraud described herein. Prior to SHFL's acquisition by SGC, SGC's top executives, Mr. Isaacs, Ms. Lever, and Mr. Mooberry, were top SHFL executives (respectively, Chief Operating Officer, General Counsel, and Senior VP of Products and Operations) and at least Mr. Isaacs and Ms. Lever were directly responsible for, and had full knowledge of the *DigiDeal* sham litigation and the concealed prior art. On information and belief, Ms. Lever's successor as

General Counsel at SGC, Mr. Smail, has also become aware of most, if not all, of the relevant facts alleged herein, but nevertheless continues to maintain, authorize, and ratify the sham *DigiDeal* litigation on behalf of SGC.

58.     On information and belief, including the information provided by SGC to the SEC and thereby to the public: SCG's and Bally's funds have been commingled; Bally is now undercapitalized; its funds and other assets have been diverted; SGC is treating Bally's assets as its own; and many corporate formalities are no longer being observed.

59.     As described above and hereafter: (1) Bally is governed and influenced by its alter ego, SGC, in particular, by the actions and directions of Gavin Isaacs, Kathryn Lever, and David Smail;  (2) there is a unity of interest and ownership such that the Bally and SGC are one and the same entity; and (3) the facts are such that adherence to the fiction of Bally as a separate entity would sanction a fraud on Plaintiffs and would promote injustice.

## A.     Overview of SHFL's and SGC's predatory acts to create and maintain their monopoly of the relevant shuffler market

60.     The sham litigation brought against DigiDeal by SHFL and Bally and authorized and maintained by SGC was not an isolated incident.  It was a continuation of SHFL's longtime strategy, ratified by SGC, of concealing prior art known to and possessed by SHFL, and now SGC, in order to obtain overly broad patents on card shufflers, then engaging in sham patent litigation against any competitor that dared to market competitive card shufflers in the relevant market.  This practice has been continued by Bally and SGC, including by the individual officers and attorneys previously identified.

61.     SHFL and SGC have been extremely successful in their efforts to monopolize the shuffler market.  SGC now controls virtually 100% of the relevant U.S. market and, prior to SGC's

2555325

takeover, SHFL had been the only supplier of card shufflers suitable for use in casinos in the U.S. since at least 2009. SGC also dominates the global market as well, with slightly less than 100% market share worldwide.

62.    SGC's monopoly and market power in the relevant market has not occurred by virtue of superior acumen, innovation, skill, foresight, or industry, or by the proper functioning of the market, or by natural market conditions. Instead, it has occurred as the result of SHFL's, Bally's, and SGC's purposeful abuse of the patent system and the judicial process. For more than a decade, SGC, initially through SHFL and Bally, has engaged in a series of sham patent infringement lawsuits against every potential competitor that has marketed competitive card shufflers to casinos in the United States. DigiDeal patent and technology licensors, Shuffle Tech and Poydras, and its distributor, Aces Up, are merely the latest victims.

63.    Prior to its suit against DigiDeal, SHFL filed sham patent infringement litigation lawsuits against every other competitor in the relevant market, then acquired their assets at a discount after they had been weakened by the litigation, or drove them out of the market with the threat of litigation expenses which small start-up operations could not afford. These litigations include: (1) an action against CARD LLC in 2003-2004 followed by an acquisition of CARD by SHFL in 2004; (2) a suit against VendingData in 2004-2009, followed by VendingData's acquisition by SHFL in 2009); (3) a suit against Taiwan Fulgent it 2009-2010; and (4) a suit against TCS Huxley in 2012-2013, similarly resulting in TCS's departure from the market.

64.    In addition to forcing all actual competitors out of the market, SHFL's, and now SGC's lengthy pattern of predatory, vexatious patent litigation has effectively raised a substantial artificial barrier to entry for all potential competitors. As a result of SHFL's and SGC's actions, no potential competitor can enter the relevant market without a multi-million dollar war chest and

2555325

a business plan that includes millions in upfront litigation costs as part of its anticipated start-up expense.

65.     In each of the prior sham patent infringement cases, SHFL asserted patents procured from the USPTO by fraud.  Several patents asserted against CARD, VendingData, Taiwan Fulgent, and TCS were from the same patent family, which began with the application that issued as U.S. Patent 6,149,154 ("the '154 patent"), and had a common priority date of April 15, 1998.[6]  As proven by CARD during its litigation in 2004, SHFL was in possession of at least one invalidating prior art reference since October 1997 that clearly invalidated the '154 patent claims asserted against CARD, and, on information and belief, invalidated or rendered unenforceable all remaining claims of the '154 patent and its progeny asserted against CARD, VendingData, Taiwan Fulgent, and TCS.

66.     SHFL was in possession of the 1997 Casino Concepts Brochure and other records of the Roblejo Prototypes since at least October 1997.  SHFL nevertheless failed to disclose, in bad faith and with deceptive intent, this art to the USPTO during the initial examination of its applications that issued as the '982 and '935 patents, during reexamination of those patents, or during the applications that resulted in the '154 patent and its progeny, which were asserted against CARD and VendingData.

67.     In each patent infringement case filed by SHFL since at least 2003, SHFL's allegations failed on the merits, but ultimately resulted in SHFL's acquisition of each defendants' shuffler technology and patents, or otherwise drove the defendant out of the relevant U.S. market,

---

[6] SHFL patent application 09/060,627, filed April 15, 1998, issued as U.S 6,149,154 on Nov 21, 2000.  Application 09/688,597 filed on Oct 16, 2000, as a CIP of 09/060,627, issued as U.S. 6,588,597 on July 8, 2003.  Application 09/912,879, filed on Jul 25, 2001, as a CIP of 09/688,597, issued on Dec 2, 2003 as U.S. 6,655,684.  SHFL asserted the '154 and '597 patents against CARD, and the '684 patent against VendingData.

27

thus preserving and extending SHFL's monopoly. Through its predatory patent litigation, SHFL intended to raise, and succeeded in raising, substantial barriers to entry for *any* competing card shuffler, not just shufflers that would actually, or even in good faith allegedly, infringe *valid, enforceable* patents owned by SHFL.

68.     Former SHFL General Counsel Jerry Smith declared in SHFL's lawsuit against then competitor CARD that: "... the mere showing of the [CARD] one2six has the potential ability to disrupt Shuffle Master's order taking and sales process. *It could confuse customers into believing that there is an alternative to Shuffle Master's shufflers available to them.*" Declaration of Jerry Smith, ¶14, Sept. 5, 2003, *CARD* litigation [Exhibit 15], emphasis added. Then and now, SHFL's attitude was that no competition and no alternatives to its shufflers would be permitted in the relevant market.

69.     In furtherance of its objective to monopolize the relevant market, SHFL has taken advantage of the fact that significant legal costs are required to defend against aggressive patent litigation, regardless of the merits of a case, and that such costs can drive the defendant out of the market and/or into SHFL's arms. SHFL has actually bragged about its sue-and-acquire strategy to the press. In a news article published several months after SHFL acquired former competitor CARD, SHFL's former CEO, Mark Yoseloff, explained how he forced the distress sale of CARD, a company with a "terrific product" that he coveted:

> "So we had to create a situation where they would be induced to sell," Yoseloff said. "It struck me that one way (to do that) was to sue them (and have them incur) legal fees sufficiently high even for a company the size of the parent."

INVESTOR'S BUSINESS DAILY, Nov. 15, 2004, at A3 [Exhibit 22, p.2 of 3].

2555325

**B.      Specific instances of SHFL's use of sham litigation to monopolize the relevant shuffler market**

   **1)      *CARD Austria v. Shuffle Master Inc.* (2003-04)**

70.      On May 6, 2003, CASINO AUSTRIA RESEARCH AND DEVELOPMENT IN VIENNA and its U.S. subsidiary CARD, LLC (collectively "CARD") filed suit seeking declaratory judgment of non-infringement of U.S. Patents 6,149,154; 6,267,248; 6,139,014; and 6,588,750 by CARD's one2six shuffler.  Complaint, May 6, 2003, *CARD* litigation.  SHFL counterclaimed on August, 25, 2003, seeking a finding of infringement of those and additional patents.  *Id.*, Dkt. 10.

71.      On September 26, 2003, CARD served SHFL with its First Set of Production Requests.  Document Request 22 required SHFL to produce all prior art in its files relating to the patents-in-suit.  Morrill Declaration at Dkt. 193, ¶2.  SHFL responded to CARD's First Set of Production Requests on October 27, 2003.  However, SHFL failed to produce any of the documents in its possession concerning the "Sure Shuffler" developed for Casinos Concepts by Dr. Conrad Roblejo, Mr. Steven Gola, and Mr. Hal Solberg, which would later become the "smoking guns" in that case.  *Id,* para. 3.

72.      Instead, SHFL sought, and unjustly obtained on December 8, 2003, a preliminary injunction preventing CARD from making, using, or selling, or even submitting its one2six device for regulatory testing.  Preliminary Injunction, *CARD* litigation, paragraph bridging pages 2-3, Dec. 8, 2003, Dkt. 153.

73.      CARD continued to investigate the prior art, and in particular the Roblejo shuffler device developed by Casino Concepts.  On December 13, 2003, CARD Attorney Brian Ogonowsky met with Hal Solberg, the engineer who had developed the Second Roblejo Prototype between 1996-1997.  Ogonowsky Declaration, ¶2, Dec. 23, 2002, *CARD* litigation, Dkt. 169.  On December 18, 2003, CARD obtained a declaration from Mr. Solberg, along with numerous

29

exhibits, establishing the engineering and design of the First Roblejo Prototype beginning in 1995 and the construction of the Second Roblejo Prototype in 1996-1997.  Solberg Declaration, ¶¶ 15, 17, 23, Dec. 18, 2003, *CARD* litigation.

74.      On December 22, 2003, CARD filed a motion to dissolve the preliminary injunction entered against it based on the newly discovered evidence that the patents asserted against CARD, which formed the basis for the preliminary injunction, were invalid.  Dkt. 162.  Five weeks later on January 30, 2004, SHFL inexplicably produced the "smoking gun" Roblejo documents that had been requested more than four months earlier and prior to the preliminary injunction having been ordered by the Court.

75.      One of the documents was a "Report on Shuffler Competition" from the " '97 World Expo," which highlighted that Casino Concepts (run by Dr. Roblejo and Mr. Gola) had displayed its "Sure Shuffler" at the October 1997 Expo.  Exhibit B at SMI 10395-96, from Dkt. 193, Morrill Decl.  Attached to the report was a sales brochure for the Sure Shuffler (*Id.*, at 10397-401), along with a business card from Dr. Roblejo (pp. 2-5 of 5, at SMI 010397-99, 10401).

76.      On information and belief, the sales brochure attached to the "Shuffler Competition" report was the same as the sales brochure attached to Exhibit H to the Solberg Declaration (*CARD* litigation, Dkt. 162), in which Mr. Solberg provided a detailed description of the Sure Shuffler "production prototype".  Mr. Solberg's description made clear that the Sure Shuffler anticipated and/or rendered obvious many of the claims of SHFL's patents-in-suit against CARD.

77.      During prosecution of the patents, however, SHFL, in bad faith and with deceptive intent, never disclosed to the USPTO what it had learned at the '97 World Gaming Expo.  Morrill Declaration, ¶4. Sept. 26, 2003 *CARD* litigation, Dkt. 193.  On February 4-5, 2004, Mr. Solberg

was deposed in Dedham, Massachusetts.  Feb. 4-5, 2004 Solberg Deposition.  On Feb. 13, 2004 CARD filed amended counterclaims seeking, *inter alia*, at Count Twelve, a declaratory judgment that, at least SHFL's patents 6,149,154; 6,267,248; 6,588,750; and 6,588,751 were unenforceable due to inequitable conduct, also seeking attorney fees.  Dkt. 192, pages 29-34.   Seven days later, on February 20, 2004, faced with devastating evidence of patent misuse and fraud on the USPTO which would have eviscerated SHFL's entire shuffle patent portfolio and laid the groundwork for potential antitrust damages, SHFL agreed to stay the litigation pending negotiation between the parties.   Dkt. 198.   Less than 90 days later, on May 13, 2004, SHFL paid approximately $50,000,000 to acquire CARD, comprised of a cash payment and 767,076 shares of the company's common stock.  SHFL 8-K SEC, p.2, May 13, 2004.

78.     Because it had discovered proof of SHFL's egregious misconduct before the USPTO and the district court, CARD, a company with a few million dollars of sales and a preliminary injunction preventing it from selling its core products in the United States, exited the market via a $50 million buyout less than five months after its discovery of the concealed prior art.  For $50 million, SHFL avoided the threat of competition and an antitrust lawsuit, solidified its monopoly position in the market, and ensured that its casino customers would have no "alternative to Shuffle Master's shufflers available to them," thus achieving the goal set in the September 2003 declaration of SHFL General Counsel Jerry Smith.  Decl. of Jerry Smith, ¶¶4, Sept. 5, 2003, *CARD* litigation, Dkt. 22.  SHFL 8-K, p.2 (May 13, 2004).

## 2)     *Shuffle Master Inc. v. VendingData Corp.* (2004-2009)

79.     Less than six months later, on October 5, 2004, SHFL filed suit against its next target, VendingData.  SHFL filed this suit one day after VendingData announced the availability of its PokerOne shuffler, a product that VendingData had spent millions of dollars to develop.

2555325

VendingData's Memorandum In Support Of Its Rule 54 Motion For Award of Attorneys-Fees and Costs Under 35 U.S.C. §285, page 4, lines 6-7, Feb. 15, 2008, *Shuffle Master, Inc. v VendingData Corp.,* No. 2:04-cv-1373, (D. Nev.) ("*VendingData* litigation"). In this action, SHFL alleged infringement of independent Claim 20 of U.S. Patent 6,655,684 ("the '684 patent"), which reads as follows:

> Claim 20. A method for delivering hands of randomly mixed cards from an apparatus comprising: providing at least one deck of playing cards; forming at least one set of cards within the apparatus from the at least one deck of playing cards; delivering to a delivery tray from the at least one set of cards within the apparatus a first individual set of randomly mixed playing cards for a game; delivering the first individual set of randomly mixed playing cards from the delivery tray of the apparatus, with all cards in the first individual set delivered at the same time, and then providing a second individual set of randomly mixed playing cards into the delivery tray.

80.    The '684 patent asserted against CARD was a continuation-in-part of SHFL's application 09/688,597 filed on October 16, 2000, now patent 6,588,750, issued on July 8, 2003, which itself was a continuation-in-part of SHFL's application 09/060,627, filed on April 15, 1998, now patent 6,149,154, issued November 21, 2000. Thus, the '684 patent asserted against VendingData was the progeny of the very patents (including at least the '154 and '750 patents) that CARD had demonstrated in February 2004 were invalid and/or unenforceable.

81.    As with its earlier patent applications, SHFL failed to disclose the sales brochure and other information it possessed regarding the Sure Shuffler/Roblejo Prototypes to the USPTO examiner during prosecution of the '684 claims. On information and belief, SHFL also failed to disclose, in bad faith and with deceptive intent, to VendingData any of SHFL's materials and information on the Roblejo Prototypes that resulted in the invalidity and inequitable conduct counterclaims filed by CARD less than a year earlier and the $50 million settlement with CARD. Had SHFL disclosed these materials to the USPTO, the examiner would never have allowed the

'684 patent to issue.  And, if SHFL had produced these materials to VendingData, VendingData's fate would likely have been much different.

82.     However, SHFL's objective in the VendingData litigation was not to comply with VendingData's document production demands or to win the litigation after full disclosure.  SHFL's objective was to impose overwhelming litigation costs and force VendingData out of the card shuffler business, then acquire its technology at a deep discount.

83.     Prior to filing this lawsuit, SHFL had pursued VendingData's Random Ejection Shuffler™ ("RES") technology for many years.  Blad Decl., paras 9-15 (submitted in support of VendingData's Opposition to Shuffle Master's Motion For A Preliminary Injunction, Nov. 12, 2004, Dkt. No. 20).  In keeping with SHFL's publicly acknowledged strategy, SHFL had bluntly told VendingData that if it would not sell its technology, SHFL was prepared to sue – repeatedly. *Id.* at para 15.  This strategy worked again.

84.     After spending more than $1.6 million defending itself (as described by VendingData's attorneys in this case, WINSTON & STRAWN[7], *Id,* page 2, lines 1-6) and despite winning its case on summary judgment of non-infringement on February 1, 2008 (Dkt. 201), VendingData was forced to all but shut down manufacturing by early 2006.

85.     VendingData and its successor, ELIXIR GAMING TECHNOLOGIES INC. ("Elixir") thereafter sold its shuffler business and its shuffler patents to SHFL for "a base amount of $2.4 million, subject to adjustment related to the precise final inventory, not to exceed $2.8 million" and a seven year worldwide non-compete agreement.  Elixir (formerly VendingData) SEC Form 8-K dated March 20, 2009 [Exhibit 26].

---

[7] The same attorneys at WINSTON & STRAWN, who defended VendingData against SHFL and categorized SHFL as a vexatious litigant, now represent SHFL in the *DigiDeal* litigation, the recently completed reexaminations and, until very recently, represented SGC in this case.

2555325

86.     Once again, SHFL "lost the battle but won the war," this time for a pittance, at least as compared to the CARD pay-off.  Vending Data spent millions of dollars to develop the PokerOne Shuffler and $1.6 million more to defend against SHFL's sham patent infringement lawsuit, and won on summary judgment of non-infringement, but in the end was forced into a fire sale of its shuffler assets and patents to SHFL.

87.     As was the case with SHFL's prior litigation against CARD, SHFL's suit against VendingData was plainly intended to "cause VendingData to spend funds on legal representation," exactly as threatened by SHFL's then COO, Mr. Paul Meyer, during a May 18, 2006 lunch meeting between Mr. Meyer and VendingData's President, Mr. Mark Newberg.  Newburg Decl.,  3, May 21, 2007, Dkt. 155-3 (attached as Ex. 3 to VendingData's Response to Shuffle Master's Motion For Protective Order, Dkt. 155).

88.     Unfortunately for VendingData, it failed to discover the prior art located by CARD (that should have been produced to VendingData by SHFL) proving that the patents asserted against VendingData had been procured by fraud on the USPTO and were asserted against VendingData with SHFL's full knowledge that the patents were invalid and unenforceable.  Unlike the CARD case that concluded earlier the same year with a $50 million buyout, VendingData never found the same "smoking gun" evidence that would have likely resulted in a much more favorable outcome for it.  A summary judgment of non-infringement was not enough to obtain a decent fire sale price for VendingData's shuffler business.  For the marketplace, however, the result was the same as it was with the CARD litigation:  SHFL eliminated another competitor, leaving its casino customers and potential customers with no "alternative to Shuffle Master's shufflers available to them."

2555325

3)   *Shuffle Master v. Taiwan Fulgent Enterprise Co., Ltd.* (2009-2010)

89.   Shortly after SHFL acquired the remaining assets of VendingData, thus consolidating their control over the U.S. market, SHFL filed suit against Taiwan Fulgent Enterprise Co., Ltd. ("Taiwan Fulgent") based on patents from the same family patent family shown to be invalid by CARD in 2004, specifically U.S. 6,588,751, and its progeny patents 7,255,344 and 7,322,576.  Case 2:09-cv-02194 (D. Nev.), filed Nov. 17, 2009.  The case was quickly dismissed on February 23, 2010 on undisclosed terms and, upon information and belief, Taiwan Fulgent has discontinued all marketing and sales of shufflers in the United States, again depriving the relevant marketplace of any competition.

4)   *Shuffle Master v. TCS John Huxley* (2012-2013)

90.   SHFL filed suit against gaming equipment distributor John Huxley ("TCS") on September 14, 2012, based on patents from the same family patent family that was shown to be invalid by CARD in 2004.  Case 2:12-CV-1626 (D. Nev.), filed Sept. 14, 2012.  Specifically, SHFL asserted U.S. patents 6,254,096; 6,588,751; 7,059,602; and 7,073,791 against TCS.  This case was quickly dismissed on undisclosed terms and, upon information and belief, TCS has discontinued marketing any shufflers in the United States, again depriving the relevant marketplace of competition.

**Violation of Sherman Act, § 2:  Monopolization of the relevant market**

91.   Plaintiffs repeat and incorporate by reference the allegations set forth in each of the preceding paragraphs, and, in particular, paragraphs 13-88.

92.   During prosecution of the '982 and '935 patents, one or more people substantially involved in the preparation and/or prosecution of those patents withheld material information from

2555325

the USPTO with the intent to, and effect of, deceiving the USPTO and for the purpose, and with the effect of, obtaining patents that would not have otherwise issued.

93.     SHFL, and now BGI, is the named assignee of the '982 and '935 patents. Pursuant to 37 CFR § 1.56, all officers, employers, consultants, and attorneys employed by SHFL who were substantially involved in the preparation or prosecution of the '982 and '935 patents – especially the attorneys, such as Mr. Littman and Mr. Fanuchi, and the named inventors, such as Mr. Grauzer – had a duty to disclose to the Patent Office information known or thought to be material to the patentability of the inventions claimed in these patents.

94.     Mark Litman was initially the principal patent attorney responsible for the prosecution of the original applications for the '982 and '935 patents. Pursuant to 37 CFR §1.56, Mr. Litman had a duty to disclose to the USPTO information material to the patentability of the inventions claimed in the '982 and '935 patents.

95.     Allan Fanuchi of WINSTON & STRAWN was later the principal patent attorney responsible for the prosecution of the '982 and '935 patents during their *ex parte* reexamination. Pursuant to 37 CFR §1.56, Mr. Fanuchi also had a duty to disclose to the USPTO information material to the patentability of the inventions claimed in the '982 and '935 patents.

96.     Attila Grauzer is one of the named inventors of the '982 and '935 patents. He was also, upon information and belief, the Director of Product Development for SHFL and was substantially involved in the prosecution of the '982 and '935 patents. Pursuant to 37 CFR §1.56, Attila Grauzer had a duty to disclose to the USPTO information material to the patentability of the inventions claimed in the '982 and '935 patents.

97.     Upon information and belief, one or more people from SHFL substantially involved in the preparation and prosecution of the '982 and '935 patents, including Attila Grauzer and other

2555325

named inventors, observed the Roblejo Prototype/Sure Shuffler in operation at the '97 World Gaming Congress and Expo and/or saw the sales brochure from Casino Concepts. Shortly after the Expo concluded on October 16, 1997, one of the people at SHFL attending the Expo circulated a document titled " '97 World Gaming Expo: Report on Shuffler Competition." *CARD v. SHFL*, SMI 10395-96. Upon information and belief, this report provided a description of the SureShuffler shown at the expo and included the sales brochure or a summary thereof for the SureShuffler, along with a business card from Dr. Roblejo. *CARD v. SHFL,* SMI 10397-99, 10401. This report also included descriptions and information about four other competing card shufflers displayed at the expo, including the Quick Draw shuffler and CARD's Shuffle Star shuffler. On information and belief, this report and the attached sales brochure were read by one or more people from SHFL substantially involved in the preparation or prosecution of the '982 and '935 patents, including Attila Grauzer and/or one of the other five named inventors working at SHFL.

98.     Significantly, USPTO guidelines specifically state that information material to patentability may include information learned from "co-workers, trade shows, communications from or with competitors, potential infringers, or other third parties." MANUAL OF PATENT EXAMINING PROCEDURE § 2001.06 (8th ed., Aug. 2001).

99.     One or more people from SHFL substantially involved in the preparation and prosecution of the '982 and '935 patents, including Attila Grauzer and/or other named inventors, and/or SHFL's patent attorney, Mark Litman, were aware of the 1992-1993 Luciano ACS Prototype no later than October 23, 2003, the time of filing of the Luciano Declaration. Luciano Declaration, CARD case, Dkt. 86. Attila Grauzer specifically evaluated the Luciano ACS materials set forth in the Luciano Declaration, and set forth opinions from his review of the Luciano Declaration and its exhibits in his own declaration filed on November 6, 2003.

2555325

Declaration of Attila Grauzer, November 26, 2003, at Dkt. 109, paragraphs 23-26. Grauzer and

SHFL patent attorney Mark Litman disclosed the Luciano evidence in more than 20 other shuffler

applications between 2004 and 2009, when the '935 patent issued, but failed to disclose, in bad

faith and with deceptive intent, the Luciano prior art to the examiner in the '935 application or in

any other CIP or divisional application from the '981, '982, and '935 patents.

100.    One or more people from SHFL substantially involved in the preparation and

prosecution of the '982 and '935 patents, including Attila Grauzer and other named inventors,

and/or SHFL's patent attorney Mark Litman, were aware of the Block '044 patent no later than July

17, 2003, when attorney Litman and named inventor Grauzer included a description of the Block

'044 patent in the specification of another unrelated patent application with the serial number

PCT/2005/009561 A2 titled "Smart Discard Rack For Playing Cards."

101.    On information and belief, one or more people from SHFL substantially involved

in the preparation or prosecution of the '982 and '935 patents, including Mark Litman, Alan

Fanuchi, Attila Grauzer, and/or other named inventors working at SHFL, withheld from the

USPTO, with the intent to deceive: (a) information about the Sure Shuffler and other competing

card shufflers displayed at the '97 World Gaming Congress and Expo; (b) information about the

1992-1993 Luciano ACS that was obtained no later than October 2003 during the CARD lawsuit;

and (c) information about the Block '044 patent.

102.    The information was material because each of these three prior art references

established, either by itself or in combination with other information, a *prima facie* case of

unpatentability under 35 U.S.C. §§ 102-103 with respect to the claimed inventions of '982 and '935

patents.

2555325

103.    Any reasonable examiner would have considered the Sure Shuffler and the other competing card shufflers displayed at the '97 World Gaming Congress and Expo, and the Luciano and Block references critical to the patentability of the inventions claimed in the '982 and '935 patents and would have rejected the claims that issued and were later asserted in the subsequent litigations detailed above.

104.    SHFL, Bally, BGI, and SGC have further misused their patent rights by knowingly asserting invalid and unenforceable patent claims, and by misrepresenting the scope of those claims, against DigiDeal and each of the defendants described above.  SHFL's overly broad and misleading claim constructions in the above-described litigations, including the DigiDeal constructions subsequently ratified by SGC, are contrary to the statements that SHFL made to the USPTO during the prosecution and *ex parte* reexamination proceedings of the same patents at issue in such litigations in order to overcome prior art.

105.    SHFL's and SGC's assertion of knowingly invalid, unenforceable and non-infringed claims was for the purpose, and with the effect of, substantially lessening competition and attempting to create, and creating, a substantial restraint on trade and an actual monopoly in the relevant market described above.

106.    This misuse by SHFL, Bally, BGI, and SGC, further renders the patents at issue unenforceable.

107.    The '982 and '935 (and progeny) patents are also unenforceable due to their fraudulent procurement during prosecution and reexamination.

108.    Prior to its sham litigation and resultant acquisition of CARD in 2004 and the shuffler assets and data of VendingData in 2009, SHFL, Bally, and BGI, already had near-

2555325

dominant market share and market power in the relevant market, which market share and market power have been unlawfully maintained by SGC.

109.   By falsely suing and subsequently acquiring CARD and VendingData, SHFL's market share of the relevant U.S. market increased to virtually 100%, and the resultant market power further increased SHFL's ability to raise prices, restrain and exclude competition, and preclude new entrants from the relevant market.  That unlawfully obtained market power continues today under SGC's direction.

110.   SHFL's sham litigations against Taiwan Fulgent and TCS Huxley described in preceding paragraphs 87-88 were also part and parcel of SHFL's sham patent infringement litigation strategy, as set forth in detail in the preceding paragraphs.  Those sham litigations and the subsequent departures of those entities from the U.S. market further reduced competition and enhanced SHFL's monopoly power in the relevant market.

111.   The sham litigation brought by SHFL and authorized and maintained by SGC against DigiDeal was part and parcel of the same unlawful strategy to monopolize and maintain SHFL's (and now SGC's) monopoly of the relevant market and, like SHFL's litigation against CARD, Vending Data, Taiwan Fulgent, and TCS Huxley, was predicated on objectively baseless patent infringement claims which were motivated by SHFL's (and now SGC's) desire to impose collateral, anti-competitive injury on SHFL's (and now SGC's) competitors, potential competitors (including DigiDeal, Shuffle Tech, Poydras, and Aces Up), their customers, and the market itself.

112.   SGC is directly liable for the acts of its own officers, directors, and attorneys in authorizing and maintaining the sham *DigiDeal* litigation after the date it acquired SHFL (Nov. 21, 2014), and is vicariously liable for the prior acts of SHFL and Bally's officers, directors, and attorneys because SGC, through many of the same officers and attorneys, ratified and approved

40

those actions by authorizing and continuing the sham litigation against DigiDeal despite SGC's full knowledge of the ongoing fraud on the USPTO and the ongoing sham litigation and the continuing monopolization of the relevant market and because SGC has completely absorbed SHFL/Bally, has commingled their funds and other assets with SGC's, has taken over the day to day operations of Bally and has held out to the public and the trade that the parties are inseparable and are in fact one and the same company.  To the extent that SGC has divested Bally of its own funds and assets, and thereby deprived Bally of the ability to pay in full any judgment this court may award in favor of Plaintiffs and against Bally, it would work a manifest injustice and fraud upon Plaintiffs not to hold SGC liable for any such deficiency or shortfall.

113.   Upon information and belief, at least the following SGC officers:  Gavin Isaacs, Kathryn Lever, and Derik Mooberry (who were top SHFL executives), had full knowledge of the ongoing fraud on the USPTO and the wrongful nature of the *DigiDeal* sham litigation and ongoing monopolization of the shuffler market from the date they became SGC officers, and especially after service of the Complaint in this action on SGC (May 1, 2015), which specifically detailed those violations of which Isaacs, Lever, and Mooberry were either specifically or generally aware and could have easily investigated and confirmed including through counsel, especially WINSTON & STRAWN.  Upon information and belief, the *DigiDeal* litigation is being pursued on SGC's behalf and at its direction and authorization.

114.   By engaging in the above-described predatory acts, SHFL, Bally, BGI, and SGC have willfully acquired, maintained, and enhanced their monopoly power in the relevant market. SGC dominates the market for card shufflers, having nearly 100% of the market.  The demand for card shufflers is generally limited to professional casinos, the number of which is strictly regulated. Virtually all of these casinos feature card games and virtually all of them possess card shufflers.

41

Accordingly, sales made by Defendants, including SGC, by falsely claiming that Defendants' own products are covered by the '982 and '935 patents, and that the Plaintiffs and others infringe these patents, have caused, and are causing, severe damage to the market for card shufflers, to Plaintiffs, to other potential providers of shufflers, and to other participants in the relevant card shuffler market, such as the casinos and their customers, in the form of lost sales, higher prices, and damages to goodwill.

115.    By reason of these continuing violations, Shuffle Tech, Poydras, DigiDeal, and Aces Up, as well as the casino customers or potential customers of automatic shufflers in the relevant market, as well as the market itself, have been, and will continue to be, injured in their business and property by each of the Defendants' actions. Plaintiffs' actual damages exceed $100 million dollars. The concurrent damage to the relevant shuffler market is incalculable, in part because it will be impossible to effectively replace the competition and potential competition eliminated by SHFL, Bally, BGI, and now SGC over the many years of their litigate-and-acquire strategy or to compensate SHFL's, Bally's, BGI's, and SGC's customers' casinos for their losses by way of higher prices, decreased competition in service and quality, and the benefit of the innovations that could have occurred, but have been stifled by SHFL, Bally, BGI, and SGC.

116.    Shuffle Tech, Poydras, and Aces Up are entitled to treble damages and to injunctive relief under Section 2 of the Sherman Act (15 U.S.C. § 2) and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) to prevent and further restrain predatory conduct by SGC and to prevent the expansion, maintenance, or continuation of SGC's monopolization of the relevant markets.

117.    Shuffle Tech, Poydras, and Aces Up are also entitled to the costs of prosecuting this action, including their reasonable attorneys' fees.

42

2555325

## Relief sought

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     That the aforesaid acts by Defendants be determined to constitute acts of patent misuse, sham litigation, monopolization, and attempts to monopolize in violation of Section 2 of the Sherman Antitrust Act, and that each of these violations have injured Plaintiffs' businesses and property, as well as competition itself in the relevant market.

B.     That the Court determine that Plaintiffs have been injured in their property and business in an amount of not less than $100,000,000 in compensatory damages and that Plaintiffs will continue to be irreparably damaged in their property and business by the aforesaid anticompetitive and monopolistic conduct unless enjoined by this Court.

C.     That the Court award Plaintiffs their compensatory damages, of not less than $100,000,000, enhanced/trebled as provided in the Sherman and Clayton Acts, plus such injunctive and other relief as may be just and equitable.

D.     That the '982 and '935 patents, and thereby their progeny, are unenforceable as a result of fraud on the USPTO.

E.     That the Court award Plaintiffs their costs, including attorneys' fees, in preparing and litigating this action.

F.     Awarding such other and further relief, including a determination that SGC is directly liable for the acts of its own officers and attorneys as described above, and is vicariously liable for the acts of SHFL's and Bally's officers and attorneys for the acts described herein, particularly, but not limited to, the acts of the same officers and attorneys now employed by SGC, as the Court deems just and equitable under the circumstances of this case.

# Demand for jury trial

Plaintiffs demand a trial by jury under FED.R.CIV.P. 38(b) and the Seventh Amendment to the U.S. Constitution of all issues triable as of right by jury in this action.


October 26, 2015                                    Respectfully submitted,

                                                   /s/  *Robert A. Rowan*
                                                   Robert A. Rowan *(Pro Hac Vice)*
                                                   rar@nixonvan.com
                                                   Joseph S. Presta *(Pro Hac Vice)*
                                                   jsp@nixonvan.com
                                                   Michael E. Crawford *(Pro Hac Vice)*
                                                   mec@nixonvan.com
                                                   NIXON & VANDERHYE P.C.
                                                   901 North Glebe Rd.
                                                   Arlington, Virginia 22203
                                                   Phone:  703-816-4000
                                                   Fax:      703-816-4100


                                                   Jonathan Hill (IBN 6256939)
                                                   jhill@freeborn.com
                                                   Jacob Koering (IBN 6275292)
                                                   jkoering@freeborn.com
                                                   FREEBORN & PETERS LLP
                                                   311 South Wacker Drive, #3000
                                                   Chicago, IL 60606
                                                   Phone: 312-360-6643
                                                   Fax:      312-360-6520


                                                   *Attorneys for Plaintiffs*
                                                   SHUFFLE TECH INTERNATIONAL, LLC,
                                                   ACES UP GAMING, INC., and POYDRAS-TALRICK
                                                   HOLDINGS LLC

2555325

**Certificate of Service**

I certify that on October 26, 2015 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notification of Electronic Filing (NEF) to all counsel of record.

/s/ *Michael E. Crawford*
Michael E. Crawford
mec@nixonvan.com
NIXON & VANDERHYE P.C.

45

2555325

# **EXHIBIT 2**

June 29, 2016 Amended Report and Recommendation & Order

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\*\*\*

SHFL ENTERTAINMENT, INC.,

             Plaintiff,

vs.

DIGIDEAL CORPORATION,

             Defendant.

Case No. 2:12–cv–1782–GMN–VCF

**AMENDED REPORT AND RECOMMENDATION & ORDER**

This matter involves Plaintiff SHFL Entertainment's civil action against the Digideal Corporation. Before the court are the following motions:

1. Digideal's motion for attorneys' fees (ECF No. 147); SHFL's response (ECF No. 156); and Digideal's reply (ECF No. 158).

2. SHFL's motion to strike Digideal's reply (ECF No. 159); Digideal's response (ECF No. 160); and SHFL's reply (ECF No. 161).

3. Digideal's motion for taxation of costs (ECF No. 146); SHFL's response (ECF No. 155); and Digideal's reply (ECF No. 157).

For the reasons stated below, Digideal's motion for attorneys' fees (ECF No. 147) should be denied. SHFL's motion to strike (ECF No. 159) is denied, and Digideal's motion for taxation of costs (ECF No. 146) is granted in part and denied in part.

## I. Discussion

1. Digideal's Motion for Attorneys' Fee is Denied

In a patent action, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

An exceptional case is "one that stands out from other with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1755, 188 L.Ed.2d 816 (2014). "District courts may determine whether a case is 'exceptional in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

       i.    *SHFL's Claims Possessed Substantive Strength*

As an initial matter, this action is not a "prototypical exceptional case" that involves a non-practicing entity filing a lawsuit "merely to extract a settlement from the alleged infringer." *JS Products, Inc. v. Kabo Tool Co.*, Case No. 2:11-cv-1856-RCJ-GWF, 2014 WL 7336063 at* 4 (D.Nev. 2014). SHFL participates in the gaming industry by marketing a variety of automatic card shufflers. (ECF No. 1) As a patent holder, SHFL was entitled to presume the validity of its patent and engage in a good-faith effort to enforce its perceived rights under the patent. *JS Products, Inc,.* 2014 WL 7336063 at 4-5.

In order to succeed, Digideal was required to show that "no reasonable litigant could realistically [have] expect[ed] success on the merits. *Id.* at 3. Digideal has not made this showing. The company argues that the U.S. Patent Office's decision coupled with the entry of summary judgment in its favor demonstrates that SHFL's infringement claims were meritless. (ECF No. 147) However the "defeat of a litigation position, even on summary judgment, does not warrant an automatic finding" that SHFL's claims lacked substantive strength. *Id.* (quoting *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 650 F.3d 1305, 1315 (Fed. Cir. 2010)).

Additionally, for the first time in its reply, Digideal alleges that SHFL failed to conduct an adequate investigation before filing this infringement action. (ECF No. 158) The company's argument

2

however are only supported by defense counsel's declarations and speculation about the First Amended

Complaint.  (*Id.*)  On the contrary, SHFL's success at the claims construction hearing (ECF No. 77)

suggests that SHFL conducted an adequate investigation prior to filing this lawsuit.  It was thus

reasonable for SHFL to bring this infringement action and defend against Digideal's counterclaims,

despite the U.S. Patent Office's subsequent alteration of SHFL's original claims.

> ii.    *SHFL's Used Reasonable Litigation Methods*

Digideal accuses SHFL of engaging in an "aggressive, full-throttle, and resource consuming"

litigation strategy.  (ECF No. 147)  The company argues that these tactics demonstrated that SHFL

conducted this litigation in an unreasonable manner.  In support of its position, Digideal provides a brief

synopsis of SHFL's conduct.  This summary includes a description of SHFL's efforts to lift the stay of

proceedings as well as SHFL's repeated requests regarding the allegedly infringing product.  (*Id.*)  Even

if the court were to accept as true Digideal's synopsis, SHFL did not litigate this action in an

unreasonable manner.  Indeed, SHFL's strategy and tactics are those of a party aggressively pursuing its

patent rights rather than a party abusing the system.

2.    <u>SHFL's Motion to Strike is Denied</u>

SHFL moved to strike Digideal's reply to the motion for attorneys' fees.  (ECF No. 159)  In its

motion to strike, SHFL correctly notes that Digideal's arguments regarding SHFL's pre-lawsuit

investigation and subsequent conduct before the U.S. Patent Office were raised for the first time in its

reply brief.  Generally, this court would not consider arguments raised for the first time in a reply brief.

*Turtle Island Restoration Network v. U.S. Dept. of Commerce*, 672 F.3d 1160, 1166 n. 8 (9th Cir. 2012).

In this instance, this court has considered Digideal's additional arguments and has determined that, even

with this additional information, this action does not present an "exceptional case" that warrants an

award of attorneys' fees.

3.    Digideal's Motion for Taxation of Costs is Granted in Part and Denied in Part[1]

As an initial matter, SHFL does not dispute that Digideal is the prevailing party in this action and would be entitled to an award of costs under Federal Rule of Civil Procedure 54(b).  (ECF No. 155) SHFL does raise specific objections to each category of requested costs.

i.     *Clerk's Fees*

Digideal requests $12,000 in clerk's fees it incurred during proceedings before the U.S. Patent Office.[2]  (ECF No. 146) 28 U.S. § 1920(1) authorizes this court to award "fees of the clerk" to the prevailing party.  This court will exercise its discretion to deny Digideal's request for $12,000 in clerk's fees. *See Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 221 (9th Cir. 1964).  This court does not believe that the scope of § 1920 encompasses clerk's fees incurred in related proceedings before the U.S. Patent Office.  Digideal's request for $12,000 in clerk's fee is denied.

ii.    *Process Server Fees*

Local Rule 54-2 authorizes the taxation of process server fees.  SHFL objects to Digideal's request for $531 in process server fees because the request includes costs associated with the service of deposition subpoenas.  (ECF No. 155)  Although Local Rule 54-2 does not expressly state what types process server fees may be taxed, this court finds that Digideal's request, including the cost to serve deposition subpoenas, is reasonable.  Digideal is awarded $531 for process server fees.

*/// /// ///*

*/// /// ///*

---

[1] SHFL correctly notes that Digideal did not follow the Local Rules governing bills of cost.  (ECF No. 155)  Instead Digideal filed a motion for taxation of costs under Federal Rule of Civil Procedure 54.  Because this court has Digideal's bill of costs as well as its supporting document before it, this court will decide which costs Digideal may recover.  Digideal is reminded that compliance with the Local Rules is mandatory unless otherwise ordered by the court.

[2] As a defendant in this action, Digideal would not have paid filing fees in this court. *See* U.S. District Court – Schedule of Fees, (Jan. 1, 2015), http://www.nvd.uscourts.gov.

4

iii.    *Deposition Transcript Fees*

Local Rule 54-4 authorizes the taxation of the costs associated with deposition transcripts. Digideal requests $587.05 for a deposition transcript.  In support of its requests, the company attached an invoice from a transcription company.  (ECF No. 157-1)  Accordingly Digideal is awarded $587.05 in costs associated with obtaining a deposition transcript.

iv.    *Exemplification and Copies of Papers*

Local Rule 54-6 lists five categories of copies for which costs are taxable and four categories of copies for which costs are not taxable.   For example copies of exhibits attached to filed documents are taxable, while copies made for an attorney's own use are not taxable.  LR 54-6.  In support of its fee request, Digideal attached an 89-page invoice that documents each photocopy made during the course of this action.  The company's list however does not distinguish between the different categories of copies. (ECF No. 146-2)  Instead each entry simply lists the expense as "photocopies."  Because this court is unable to distinguish between categories of permissible and impermissible copies, Digideal's request for $1,716.85 in copying costs is denied.

v.    *Patent File Wrappers and Prior Art Patents*

Local Rule 54-6(a)(5) expressly allows this court to tax costs associated with patent file wrappers and prior art patents charged by the U.S. Patent Office.  Accordingly, Digideal's is awarded $500 in costs associated with patent file wrappers and prior art patents.

vi.    *Charts, Models, Photographs, and Summaries*

Local Rule 54-7 allows this court to tax costs of "photographs, 8" x 10" in size or less, … if the photographs are admitted into evidence or attached to documents required to be filed and served on opposing parties.  Digideal requests $2,056.80 in costs associated with exhibits created for the parties' claim construction hearing.  (ECF No. 146)  In support of its request, Digideal attached the following

documents: (1) a FedEx Office receipt for $1,503.20[3]; (2) an invoice for $411.99 that appears to list

Digideal's exhibits for the claim construction hearing; (3) a T E Dianda & Associates invoice for $56.00

for DVD duplication.  (ECF No. 157-1)  Based on these documents and Digideal's representations, this

court awards Digideal $467.99 for the costs of charts, models, photographs, and summaries.  This court

excludes the $1,503.20 documented in the FedEx Office receipt because it is unable to determine

whether Digideal is permitted to recover the full amount represented by the receipt.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY RECOMMENDED that Digideal's motion for attorneys' fees (ECF No. 147)

beDENIED.

IT IS HEREBY ORDERED that SHFL's motion to strike (ECF No. 159) is DENIED.

IT IS FURTHER ORDERED that Digideal's motion for a taxation of costs (ECF No. 146) is

GRANTED in part and DENIED in part.  On or before July 31, 2016, SHFL must pay Digideal $2,086.04

for various costs the company incurred during this action.

IT IS SO ORDERED.

DATED this 29th day of June, 2016.


CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[3] The receipt does not itemize the services for which Digideal was charged.  (ECF No. 157-1)  It simply lists a total amount.

6

# **EXHIBIT 3**

Sept. 19, 2016 Order Adopting Amended Report and Recommendation

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SHFL ENTERTAINMENT, INC.,              )
                                       )
                    Plaintiff,         )          Case No.: 2:12-cv-1782-GMN-VCF
         vs.                           )
                                       )          **ORDER**
DIGIDEAL CORPORATION                   )
                                       )
                    Defendant.         )
_____)

Pending before the Court is the Amended Report and Recommendation of United States Magistrate Judge Cam Ferenbach, (ECF No. 165), which states that Defendant Digideal Corporation's Motion for Attorney Fees, (ECF No. 147), should be denied.

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a de novo determination of those portions to which objections are made. *Id.* The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b). Where a party fails to object, however, the Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See, e.g., United States v. Reyna–Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003).

/ / /

/ / /

1    Here, no objections were filed, and the deadline to do so has passed.

2    Accordingly,

3    **IT IS HEREBY ORDERED** that the Amended Report and Recommendation, (ECF

4    No. 165), is **ACCEPTED and ADOPTED in full.**

5    **IT IS FURTHER ORDERED** that Defendant Digideal Corporation's Motion for

6    Attorney Fees, (ECF No. 147), is **DENIED.**

7

8    **DATED** this  19  day of September, 2016.

9

10   _____

11   Gloria M. Navarro, Chief Judge
     United States District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **EXHIBIT 4**

Jan. 20, 2017 Order re extending discovery

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.1.1
### Eastern Division

Shuffle Tech International LLC, et al.

                  Plaintiff,

v.                                 Case No.: 1:15−cv−03702
                                 Honorable Matthew F. Kennelly

Scientific Games Corporation, et al.

                  Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, January 20, 2017:

      MINUTE entry before the Honorable Matthew F. Kennelly: Rule 16(b) status hearing held on 1/20/2017 with attorneys for both sides. Detailed status report regarding production of transaction/sales data, as discussed at the status hearing, is to be field by 1/30/2017. Fact discovery extended to 2/22/2017 for matters described in status report. Rule 26(a)(2) disclosures are due by 4/5/2017 for party with burden of proof and 6/15/2017 for rebuttal disclosures. Expert discovery ordered closed 7/6/2017. Status hearing set for 2/6/2017 at 9:30 a.m. Mailed notice. (pjg, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# **EXHIBIT 5**

Nov. 29, 2016 Document Subpoena

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | | | |
|---|---|---|---|
| Shuffle Tech International, LLC et al. | ) | | |
| *Plaintiff* | ) | | |
| v. | ) | Civil Action No. | 1:15-cv-3702 |
| Scientific Games Corporation, et al. | ) | | |
| *Defendant* | ) | | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     AGS, LLC
                            2470 St. Rose Parkway, Henderson, NV 89074

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Scientific Games Corporation 6650 El Camino Rd. Las Vegas, NV 89118 | Date and Time: 12/15/2016 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    11/29/2016

                    *CLERK OF COURT*
                                                        OR

_____          /s/David Jimenez-Ekman
  *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Scientific Games Corporation _____, who issues or requests this subpoena, are:

David Jimenez-Ekman Jenner & Block 353 N Clark St., Chicago IL 60654 djimenez-ekman@jenner.com 312.923-2683

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:15-cv-3702

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____        _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

## ATTACHMENT A

Pursuant to the accompanying Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena") and Rules 34 and 45 of the Federal Rules of Civil Procedure, Defendants Scientific Games Corp. ("Scientific Games"), Bally Technologies, Inc. ("Bally Technologies"), and Bally Gaming, Inc. ("Bally Gaming") hereby request that third party AGS, LLC ("AGS") produce Documents and Things responsive to the Requests for Documents and Things listed below at the date and location specified in the Subpoena, unless otherwise agreed to by Defendants and AGS.

### DEFINITIONS

As used in this document, the following definitions apply unless specified otherwise:

1.      The term "Amended Complaint" means the amended complaint that Plaintiffs filed on November 16, 2015 in this lawsuit (*i.e.*, Document No. 60 on the docket).

2.      "You," "Your," and "AGS" mean third party AGS, LLC, including all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

3.      "Plaintiffs" means the Plaintiffs in the above-captioned lawsuit, namely, Plaintiffs Shuffle Tech International, LLC, Aces Up Gaming, Inc., and Poydras-Talrick Holdings LLC, including all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

4.    "Defendants" means the Defendants in the above-captioned lawsuit, namely, Defendants Scientific Games Corp., Bally Technologies, Inc., and Bally Gaming, Inc., including all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, including SHFL Entertainment, Inc. and Shuffle Master, Inc. and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

5.    "Shuffle Tech" means Shuffle Tech International, LLC, including all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

6.    "DigiDeal" means DigiDeal Corp. including all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all principals, officers, investors, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

7.    References to this "lawsuit," "litigation," "case," or "action" means the civil litigation filed in the U.S. District Court for the Northern District of Illinois, captioned *Shuffle Tech International, LLC, et al. v. Scientific Games Corporation, et al.*, Case No. 1:15-cv-3702.

8.    The "'982 Patent" means U.S. Patent No. 6,651,982—including any reexamination certificate.

9.    The "'935 Patent" means U.S. Patent No. 7,523,935—including any reexamination certificate.

10.     "DigiShuffle" refers to the card shuffler developed by DigiDeal based on Shuffle Tech's technology, as described in the Amended Complaint.

11.     "Reflect," "reflecting," "concern," "concerning," "mentioning," "related," "relating," "relate," "refer," or "referring" and other variations thereof, as used herein shall be construed in their broadest possible sense, and mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical or factual connection whatsoever with the subject addressed, regardless whether the factual connection is favorable to or adverse to you.

12.     The term "Amended Complaint" means the First Amended Complaint for Damages and Other Relief for Violation of Section 2 of the Sherman Act, filed by Plaintiffs on October 26, 2015, in this lawsuit, at Document No. 50 on the docket.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents referring to or reflecting any Communications between You and Plaintiffs.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents referring to or reflecting any Communications between You and Derek Webb or Hannah O'Donnell.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents referring or relating to Your acquisition of any assets of Plaintiffs or DigiDeal.

3

**REQUEST FOR PRODUCTION NO. 4:**

All Documents referring or relating to the DigiShuffle.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents referring or relating to any shuffler that incorporates or uses technology developed by Shuffle Tech.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents referring or relating to Your marketing, display, or sale of any DigiShuffle or any other shuffler that incorporates or uses technology developed by Shuffle Tech.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents referring or relating to the '982 Patent or the '935 Patent.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
  **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
  **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
  **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
  **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# **EXHIBIT 6**

Dec. 2, 2016 Email Exchange

Begin forwarded message:

**From:** "Timothy R. O'Reilly" <tor@oreillylawgroup.com>
**Date:** December 2, 2016 at 11:29:05 AM PST
**To:** "Meneau, Caroline L." <CMENEAU@JENNER.COM>
**Cc:** "Jimenez-Ekman, David" <DJimenez-Ekman@jenner.com>
**Subject: RE: Document Subpoena to AGS in Shuffle Tech v. Scientific Games**

Caroline,

With the understanding AGS reserves all applicable rights etc. we can accept service.

Thanks,

Tim

**Timothy R. O'Reilly, Esq.**
325 S. Maryland Parkway Las Vegas, Nevada 89101
P: 702-382-2500 | F: 702-384-6266
E: tor@oreillylawgroup.com
W: www.oreillylawgroup.com



IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer or a law firm employee. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

**From:** Meneau, Caroline L. [mailto:CMENEAU@JENNER.COM]
**Sent:** Tuesday, November 29, 2016 11:16 AM
**To:** Timothy R. O'Reilly
**Cc:** Jimenez-Ekman, David
**Subject:** Document Subpoena to AGS in Shuffle Tech v. Scientific Games

Dear Mr. O'Reilly,

We understand from Casey Gish that you represent AGS, and that we should contact you about our planned document subpoena to AGS.  The document subpoena is attached.  Please let us know if you can accept service, or if we need to serve AGS directly.

Thank you,
Caroline Meneau

---

**Caroline L. Meneau**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456  |  jenner.com
+1 312 840 7410 | TEL
CMENEAU@JENNER.COM
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

# **EXHIBIT 7**

Dec. 13, 2016 AGS Response

**O'REILLY LAW GROUP, LLC**
John F. O'Reilly, Esq.
Nevada Bar No. 1761
Timothy R. O'Reilly, Esq.
Nevada Bar No. 8866
325 S. Maryland Parkway
Las Vegas, Nevada 89101
Telephone: (702) 382-2500
Facsimile:  (702) 384-6266
Attorneys for Third Party Respondent
AGS LLC

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS - EASTERN

| | |
|---|---|
| SHUFFLE TECH INTERNATIONAL, LLC, et al., )<br><br>          Plaintiffs, )<br><br>vs. )<br><br>SCIENTIFIC GAMES CORPORATION, et al., )<br><br>          Defendants. ) | CASE NO.:    1:15-cv-03702 |

**THIRD-PARTY RESPONDENT AGS LLC'S RESPONSE TO DEFENDANTS' SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

Third-Party Respondent AGS LLC ("AGS"), by and through its attorneys, O'Reilly Law Group, LLC, pursuant to FRCP 45, herein responds to Defendants Scientific Games Corp., Bally Technologies, Inc. and Bally Gaming, Inc.'s (collectively "Defendants") Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "subpoena") directed to AGS as follows:

/ / /

/ / /

/ / /

Law Offices
**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

# PRELIMINARY STATEMENT

1.      All of the responses and objections set forth herein are made without prejudice to, and are not a waiver of, any of the AGS rights and objections all of which are hereby reserved.

2.      By making the accompanying responses and objections to Defendants' requests for documents AGS does not waive, and hereby expressly reserves, it's right to assert any and all objections as to the confidentiality of and admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, AGS makes the following responses and objections herein without in any way implying that it considers the requests and responses to be relevant or material to the subject matter of this action or legally discoverable.

3.      AGS will produce responsive non-objectionable documents only to the extent that such documents are in the possession, custody, or control of AGS.  AGS's possession, custody, or control does not include any constructive possession that may be conferred by AGS's right or power to compel the production of documents or information from third parties.

4.      A response to a document request stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that AGS performed any of the acts described in the document request or definitions and/or instructions applicable to the document request, or that AGS acquiesces in the characterization of the conduct or activities contained in the document request, or definitions and/or instructions applicable to the document request.

5.      AGS expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6.      Publicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the Internet, will not be produced.

7.      To the extent permissible, AGS does not consent to the jurisdiction of the issuing Court.

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

### ADDITIONAL GENERAL OBJECTIONS

1.      AGS objects to each definition and document request as imposing a requirement of discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court with proper jurisdiction over these matters.

2.      AGS objects to each document request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

3.      AGS objects to the document requests as they fail to allow a reasonable time to comply and subject AGS to undue burden and expense.

4.      AGS objects to each document request to the extent that they call for internal privileged, proprietary, and/or trade secret information of AGS, and other confidential research, development, or commercial information.  Should any such disclosure by AGS inadvertently occur, it shall not constitute a waiver of any privilege, and Defendants and each party to this lawsuit is hereby on notice that any and all such disclosures are subject to a claim of privilege and/or protection.

5.      AGS objects to each document request to the extent that it calls for information and documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by AGS inadvertently occur, it shall not constitute a waiver of any privilege, and Defendants and each party to this lawsuit is hereby on notice that any and all such disclosures are subject to a claim of privilege and/or protection.

6.      AGS objects to each definition and document request as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendants from Defendants' own files or information in Defendants' possession, Plaintiffs' possession, or some other third parties possession.  Responding to such requests is oppressive, unduly burdensome and unnecessarily expensive, and the burden of responding to such requests is substantially the same or less for Plaintiffs as for AGS. Furthermore, a substantial amount of the

1   information requested is available from other parties, including Plaintiffs and Defendants, in the

2   litigation.

3       7.      Defendants' document requests call for the production of documents and

4   information that were produced to AGS by other entities and that may contain confidential,

5   proprietary or trade secret information. AGS objects to the requests as requesting the disclosure of

6   privileged and/or other protected matters, and should any such disclosure by AGS inadvertently

7   occur, it shall not constitute a waiver of any privilege. Defendants and each party to this lawsuit are

8   hereby on notice that any and all such disclosures are subject to a claim of privilege and/or

9   protection.

10      8.      AGS objects to the inspection, copying, testing or sampling of any or all of the

11   materials requested, or to inspecting the premises, or to producing electronically stored information

12   in the form or forms requested in light of the attorney work product doctrine, and other privileges

13   protecting such internal documents from production.

14      9.      AGS objects to the production of a production log as unreasonable, unduly

15   burdensome, and causing financial hardship.

16      10.     AGS herein reserves any and all rights under FRCP 45 to apply to the appropriate

17   court or courts for any and all remedies to quash, modify or limit this subpoena or to apply for an

18   order of protection.

19      11.     AGS incorporates by reference every general objection set forth above into each

20   specific response set forth below. A specific response may repeat a general objection for emphasis

21   or some other reason. The failure to include any general objection in any specific response does not

22   waive any general objection to that request.  Moreover, AGS reserves and does not waive its right

23   to amend its responses.

24      **<u>RESPONSES TO DOCUMENT REQUESTS AND INFORMATION</u>**

25   **REQUEST FOR PRODUCTION NO. 1:**

26      ***All Documents referring to or reflecting any Communications between You and***

27   ***Plaintiffs.***

28

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

O'REILLY LAW GROUP, LLC
Law Offices
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to the General Objections set forth above, AGS sets forth the following specific objections in response to Request for Production No. 1:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs, who initiated the litigation.

AGS further objects to this document request as requesting documents "referring to or reflecting" any communications between AGS and Plaintiffs. Such documents and communications may, in fact, contain privileged communications and/or documents pursuant to the attorney work product doctrine.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested. AGS objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in potential question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS.

All such documents and information will not be produced.

**REQUEST FOR PRODUCTION NO. 2:**

*All Documents referring to or reflecting any Communications between You and Derek Webb or Hannah O'Donnell.*

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

In addition to the General Objections set forth above, AGS sets forth the following specific objections in response to Request for Production No. 2:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting documents "referring to or reflecting" any communications between AGS, Derek Webb or Hannah O'Donnell. Such documents and communications may, in fact, contain privileged communications and/or documents pursuant to the attorney work product doctrine.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested.

AGS further objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS. All such documents and information will not be produced.

However, without waiving any of the general or specific objections set forth above, AGS has performed an electronic search of the americangamingsystems.com and playags.com databases. This search encompassed a time frame in excess of four years beginning October 12, 2012 and ending November 30, 2016, as follows:  1) emails with the word webb in the email address in the "to" or "from" fields; 2) emails with the word o'donnell in the email address in the "to" or "from" fields; and 3) emails with the word odonnell in the email address in the "to" or "from" fields.  This search was performed without regard to whether letters in the search terms were capitalized or not. As a result of this search, responsive documents will be produced.

**REQUEST FOR PRODUCTION NO. 3:**

*All Documents referring or relating to Your acquisition of any assets of Plaintiffs or DigiDeal.*

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

In addition to the General Objections set forth above, AGS sets forth the following specific objections in response to Request for Production No. 3:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity.  Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS as the request is asking for documents that are more accessible, to the extent discoverable, to Plaintiffs who initiated this action or to DigiDeal.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs who initiated this lawsuit.

AGS further objects to this document request as requesting "All documents referring to or relating to" AGS' acquisition of any assets of Plaintiffs or DigiDeal.  Such documents and

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
125 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

1  communications may, in fact, contain privileged communications and/or documents pursuant to the

2  attorney work product doctrine or other proprietary information, including propriety information of

3  DigiDeal, that cannot be disclosed.

4      AGS further objects to this document request as overly broad, vague, ambiguous, not

5  reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and

6  oppressive insofar as it seeks production of documents in electronic format from AGS databases

7  without specifying what data is requested.  AGS objects to this request on the ground that it seeks

8  information, communications and documents that may be protected from disclosure by privacy

9  laws and unrelated to this action.  AGS objects to this request to the extent it assumes that the

10 databases in question are capable of capturing data as it existed on any specific date.

11     AGS further objects to this document request as seeking AGS communications, documents

12 and information that were produced to the Defendants by other entities.

13     AGS further objects to this document request as seeking to obtain communications

14 containing proprietary information, trade secrets or other confidential research, development or

15 commercial information of AGS or DigiDeal.  All such documents and information will not be

16 produced.

17     Without waiving any general or specific objection set forth above, AGS has performed an

18 electronic search of the americangamingsystems.com and playags.com databases.  This search

19 encompassed a time frame in excess of four years beginning October 12, 2012 and ending

20 November 30, 2016 and included emails with the word digideal in the email address in the "from"

21 field.  This search was performed without regard to whether letters in the search terms were

22 capitalized or not.  As a result of this search, responsive documents will be produced pursuant to a

23 mutually agreed upon stipulation the documents can only be viewed with "Attorneys Eyes Only."

24 To the extent Defendants take the position the Protective Order [Doc.66] applicable it will need

25 to confirm this does not subject AGS to this Court's jurisdiction in regard to any disputes in regard

26 to this Subpoena.

27 / / /

28

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-6266

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
125 South Maryland Parkway •Las Vegas, Nevada 89101
Telephone (702) 382-2500 •Facsimile (702) 384-0266

**REQUEST FOR PRODUCTION NO. 4:**

*All Documents referring or relating to the DigiShuffle.*

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the General Objections set forth above, AGS sets forth the following specific objections in response to Request for Production No. 4:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity.  Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS as the request is asking for documents that are more accessible, to the extent discoverable, to Plaintiffs who initiated this action.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting "All documents referring to or relating to" the DigiShuffle.  Such documents and communications may, in fact, contain privileged communications and/or documents pursuant to the attorney work product doctrine or other proprietary information, including that of DigiDeal, that cannot be disclosed.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested.  AGS objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action.  AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

1  AGS further objects to this document request as seeking to obtain communications
2  containing proprietary information, trade secrets or other confidential research, development or
3  commercial information of AGS.  All such documents and information will not be produced.

4  Without waiving any general or specific objection set forth above, AGS is in the process of
5  determining what if any responsive documents are in their possession that do not waive the
6  applicable objections and will supplement this response.

7  **REQUEST FOR PRODUCTION NO. 5:**

8  *All Documents referring or relating to any shuffler that incorporates or uses technology*
9  *developed by Shuffle Tech.*

10  **RESPONSE TO REQUEST FOR PRODUCTION NO.  5:**

11  In addition to the General Objections set forth above, AGS sets forth the following specific
12  objections in response to Request for Production No. 5:

13  AGS objects to this document request as overly broad, unduly burdensome, vague and
14  ambiguous to the extent that the request asks for communications and documents not limited by
15  time or specificity.  Responding to such request as written would be oppressive, unduly
16  burdensome and unnecessarily expensive to AGS as the request is asking for documents that are
17  more accessible, to the extent discoverable, to Plaintiffs who initiated this action.

18  AGS further objects to this document request as unduly burdensome to the extent it seeks
19  information that is readily or more accessible to Defendants from public files, Defendants' own
20  files, or the files of a related party to this matter, including Plaintiffs.

21  AGS further objects to this document request as requesting "all Documents referring or
22  relating to any shuffler" that incorporates or uses technology developed by Shuffle Tech.  Such
23  documents and communications may, in fact, contain privileged communications and/or documents
24  pursuant to the attorney work product doctrine or other proprietary information that cannot be
25  disclosed.

26  AGS further objects to this document request as overly broad, vague, ambiguous, not
27  reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and

28

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-0266

1  oppressive insofar as it seeks production of documents in electronic format from AGS databases

2  without specifying what data is requested.  AGS objects to this request on the ground that it seeks

3  information, communications and documents that may be protected from disclosure by privacy

4  laws and unrelated to this action.  AGS objects to this request to the extent it assumes that the

5  databases in question are capable of capturing data as it existed on any specific date.

6     AGS further objects to this document request as seeking AGS communications, documents

7  and information that were produced to the Defendants by other entities.

8     AGS further objects to this document request as seeking to obtain communications

9  containing proprietary information, trade secrets or other confidential research, development or

10 commercial information of AGS.

11    All such documents and information will not be produced.

12 **REQUEST FOR PRODUCTION NO. 6:**

13    *All Documents referring or relating to Your marketing, display, or sale of any*

14 *DigiShuffle or any other shuffler that incorporates or uses technology developed by Shuffle*

15 *Tech.*

16 **<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 6:</u>**

17    In addition to the General Objections set forth above, AGS sets forth the following specific

18 objections in response to Request for Production No. 6:

19    AGS objects to this document request as overly broad, unduly burdensome, vague and

20 ambiguous to the extent that the request asks for communications and documents not limited by

21 time or specificity.   Responding to such request as written would be oppressive, unduly

22 burdensome and unnecessarily expensive to AGS.

23    AGS further objects to this document request as unduly burdensome to the extent it seeks

24 information that is readily or more accessible to Defendants from public files, Defendants' own

25 files, or the files of a related party to this matter, including Plaintiffs.

26    AGS further objects to this document request as overly broad, vague, ambiguous, not

27 reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and

28

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

Law Offices
O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS
325 South Maryland Parkway • Las Vegas, Nevada 89101
Telephone (702) 382-2500 • Facsimile (702) 384-6266

1   oppressive insofar as it seeks production of documents in electronic format from AGS databases

2   without specifying what data is requested.  AGS objects to this request on the ground that it seeks

3   information, communications and documents that may be protected from disclosure by privacy

4   laws and unrelated to this action.  AGS objects to this request to the extent it assumes that the

5   databases in question are capable of capturing data as it existed on any specific date.

6       AGS further objects to this document request as seeking AGS communications, documents

7   and information that were produced to the Defendants by other entities.

8       AGS further objects to this document request as seeking to obtain communications

9   containing proprietary information, trade secrets or other confidential research, development or

10   commercial information of AGS, and privileged and attorney work product documents.

11       All such documents and information will not be produced.

12   **REQUEST FOR PRODUCTION NO. 7:**

13       *All Documents referring or relating to the '982 Patent or the '935 Patent.*

14       <u>**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**</u>

15       In addition to the General Objections set forth above, AGS sets forth the following specific

16   objections in response to Request for Production No. 7:

17       AGS objects to this document request as overly broad, unduly burdensome, vague and

18   ambiguous to the extent that the request asks for communications and documents not limited by

19   time or specificity.  Responding to such request as written would be oppressive, unduly

20   burdensome and unnecessarily expensive to AGS.

21       AGS further objects to this document request as unduly burdensome to the extent it seeks

22   information that is readily or more accessible to Defendants from public files, Defendants' own

23   files, or the files of a related party to this matter, including Plaintiffs.

24       AGS further objects to this document request as requesting "All Documents referring or

25   relating to" the '982 Patent or the "935 Patent.  Such documents and communications contain

26   privileged communications and/or documents pursuant to the attorney work product doctrine.

27

28

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested.  AGS objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action.  AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS.

All such documents and information will not be produced.

DATED:  December 13, 2016                     O'REILLY LAW GROUP, LLC


By: _____
     John F. O'Reilly, Esq.
     Nevada Bar No. 1761
     Timothy R. O'Reilly, Esq.
     Nevada Bar No. 8866
     325 South Maryland Parkway
     Las Vegas, Nevada 89101
     Attorneys for Third Party Respondent
     AGS  LLC

# **EXHIBIT 8**

Dec. 15, 2016 AGS Production

# O'REILLY LAW GROUP, LLC

A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

325 SOUTH MARYLAND PARKWAY
LAS VEGAS, NEVADA 89101-5300
TELEPHONE: (702) 382-2500   FACSIMILE: (702) 384-6266
www.oreillylawgroup.com

December 15, 2016

Via Email to CMENEAU@JENNER.COM

Caroline L. Meneau, Esq.
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654-3456

Re:   Response to Defendants Scientific Games Corp., et al.'s Subpoena to Produce Documents,
      Information, or Objects or to Permit Inspection of Premises in a Civil Action; Case No.
      1:15-cv-03702 – **Documents responsive to Request No. 2**
      Our File No.:   32431-00001

Dear Ms. Meneau:

Pursuant to AGS LLC's Response to Defendants' Subpoena to Produce Documents, Information,
or Objects or to Permit Inspection of Premises in a Civil Action forwarded to you yesterday,
December 13, 2016, please find attached AGS's documents responsive to Request No. 2, Bates
stamped AGS200001 through AGS200015.

Very truly yours,

O'REILLY LAW GROUP, LLC

Timothy R. O'Reilly, Esq.

TOR:fr

Enclosures:  (as noted)

## EMail

| | |
|---|---|
| **From:** | Derek Webb <notification@jobvite.com> |
| **Sent:** | Tuesday, December 15, 2015 1:24 PM |
| **To:** | Ruby Manuel |
| **Subject:** | Application for Network Administrator from Employee: Wanda Kennedy |
| **Attachments:** | Resume-DerekWebb-2015OCT02.docx |

Dear Ruby,

You have received a new application for *Network Administrator*. View the application at:
https://app.jobvite.com/em?i92B66747A4FCDFB8F6230581B9BD42CE

If you reply to this message your reply will be added to the candidate's Message section and also sent as an email to the candidate.

Cover letter:

-- I started my IT career as a humble Active Directory Administrator and, after a very successful Physical-to-Virtual migration, I was soon on my way to designing, engineering, and integrating complete datacenter solutions- from SANs to Servers to Switches.

-- Now that physical infrastructure is becoming more and more converged, I now spend my time researching and engineering logical infrastructures- such as VMware NSX, Microsoft Hyper-V, KVM, OpenStack and hosted solutions like Amazon AWS, Microsoft Azure, and VMware vCloud- and supporting technologies like Node.js and Hadoop.

Resume:

Derek Webb engineer architect
1701 Dave Ward DR Lot 102 Conway, AR 72034 (479) 970-5236 dedrick427@gmail.com

Page 2

Skills Summary

VMware Certified Professional SCCM/SMS/SCOM Directory Services
Microsoft Certified Systems Engineer Backup/DR - RTO/RPO PowerShellScripting
Exchange 2003/2007 Datacenter Engineering & Architecture Linux: OS, Networking, BASH scripting, and web
VEEAM Backup & Recovery SystemsDiagramming ServerCore2008/2012R2
CompTIA Security+ NetApp Certified Systems & Network Optimization
WordPress/SharePoint HP EVA, Compelient, and many other storage techs PHP / CSS / HTML.
Cisco, Brocade, HP, Dell, & Force10 switches 40/10GbInfrastructure Service & Datacenter Automation
MSSQL, MySQL, and other databases VIM DNS / DHCP / Routing

Professional Experience
(IGT) Created a self-service portal that automated the connection of real, physical gaming machines to a user's virtual environment, driven by a backend of PHP, MySQL, PowerShell, and Shell Scripts. This allowed a dramatic increase

in productivity since anyone in any office in the world could now easily test various customer scenerios with real equipment.
(USAble) Directed the migration from Active Directory 2003 to AD 2008R2 with all DCs running ServerCore 2008R2 with site links weighted based on link-speed, site tier and data availability across multiple sites providing better performance, security, reliability and scalability for AD and a new file share architecture powered by DFS topologies and replication
(IGT) When our venerable NetApp wasn't performing as needed and started to become unreliable with age, replacements were looking costly. An in-house solution was created using Windows Server 2012R2 and an array of SSDs. Using various strategies of when and where to use compression and deduplication, this SAN was able to provide the performance and capacity needed and tracking important metrics such as SSD degradation rates- replacing a power-heavy appliance, saving not only energy costs, but

AGS200001

over $100k in hardware purchases

(USAble) Architected and executed the rollout of a multi-site/multi-state Virtual Environment with vSphere and orchestrated the Physical to Virtual migration of current servers which saved $750,000 within 1 year while providing a vast improvement in service availability, scalability and reliability

(IGT) About 4 complete server racks moved through our environment every month-each needing VMWare, SAN/NAS, Switching/Routing, Cabling, OS and application installs, and so on. Each rack goes to a new customer, each with their own set of guidelines and needs. This process could take months for each customer. This was reduced to weeks or even days with the engineering and architecting of centralized rack & stack, automated OS provisioning and an array of scripts that would create custom environments on-the-fly

(Children's) Implemented a proximity/biometric SingleSignOn solution with a Citrix presence that enabled personnel to freely and effectively roam the campus with high security and an increased productivity

(ITT) Created scripted solutions via PowerShell, GPO and batch-files to provide automated self-service and network diagnostics and maintence throughout one of the world's largest AD infrastructures

Very familiar with new storage systems including Bleeding-Edge Technology Flash-Arrays (Nimbus, PureStorage), Mass-Storage systems (Promise, Sans Digital, DIY solutions), and the Venerable Enterprise Array systems from HP, EMC, Dell, and NetApp

(USAble) Executed a multi-tier Backup/DR/Replication solution spanning from localized Snapshots, Disk-to-Disk images and off-site replication that reduced the time-to-recover from days to minutes and while providing rock- solid stability

(USAble) Engineered Virtualized SQL/Web/File Services that out-performed any current high-end physical implementation

(USAble) Documented and executed a plan to test various systems performance - SQL/Web/High-Transactional File-shares -within newly implemented VMware Environment

(USAble, IGT) Assessed End-to-End budget & systems needs for projects from licensing costs; network & storage requirements to cooling & electricity

(USAble, IGT) Conducted various reports for the ROI/TCO of current and future projects including Physical & Virtual servers, Backup & DR practices and Storage Area Networks


EmploymentHistory

INTERNATIONAL GAME TECHNOLOGY (IGT) - Las Vegas
Systems Engineer/Established Inventor, 2013 to present
MILITARY
CONTRACTOR via ITT EXELIS - Kuwait
Systems Engineer, 2011 to 2013
USABLE LIFE - Little Rock, AR
Network Administrator/Engineer, 2007 to 2011
ARKANSAS CHILDREN'S HOSPITAL - Little Rock, AR
Security Administrator, 2006 to 2007
SPHERION - Conway, AR
Contract NOC Administrator, 2005

Certifications
MICROSOFT CERTIFIED SYSTEMS ENGINEER
NETAPP CERTIFIED DATACENTER ARCHITECT
COMPTIA SECURITY+/CA
VMWARE CERTIFIED PROFESSIONAL
DELL COMPELLENT CERTIFIED
TOP SECRET CLEARANCE
MULTIPLE GAMING LICENSES

You can change your email preferences at:
https://app.jobvite.com/l?ksSVDsqwD

2

AGS200002

# Derek Webb

engineer | architect

1701 Dave Ward DR Lot 102 | Conway, AR 72034 | (479) 970-5236 | dedrick427@gmail.com

## Skills Summary

- VMware Certified Professional
- Microsoft Certified Systems Engineer
- Exchange 2003/2007
- VEEAM Backup & Recovery
- CompTIA Security+
- WordPress/SharePoint
- Cisco, Brocade, HP, Dell, & Force10 switches
- MSSQL, MySQL, and other databases

- SCCM/SMS/SCOM
- Backup/DR - RTO/RPO
- Datacenter Engineering & Architecture
- Systems Diagramming
- NetApp Certified
- HP EVA, Compellent, and many other storage techs
- 40/10Gb Infrastructure
- VIM

- Directory Services
- PowerShell Scripting
- Linux: OS, Networking, BASH scripting, and web
- ServerCore 2008/2012R2
- Systems & Network Optimization
- PHP / CSS / HTML
- Service & Datacenter Automation
- DNS / DHCP / Routing

## Professional Experience

- (IGT) Created a self-service portal that automated the connection of real, physical gaming machines to a user's virtual environment, driven by a backend of PHP, MySQL, PowerShell, and Shell Scripts. This allowed a dramatic increase in productivity since anyone in any office in the world could now easily test various customer scenerios with real equipment.

- (USAble) Directed the migration from Active Directory 2003 to AD 2008R2 with all DCs running ServerCore 2008R2 with site links weighted based on link-speed, site tier and data availability across multiple sites providing better performance, security, reliability and scalability for AD and a new file share architecture powered by DFS topologies and replication

- (IGT) When our venerable NetApp wasn't performing as needed and started to become unreliable with age, replacements were looking costly. An in-house solution was created using Windows Server 2012R2 and an array of SSDs.  Using various strategies of when and where to use compression and deduplication, this SAN was able to provide the performance and capacity needed and tracking important metrics such as SSD degradation rates—replacing a power-heavy appliance, saving not only energy costs, but over $100k in hardware purchases

- (USAble) Architected and executed the rollout of a multi-site/multi-state Virtual Environment with vSphere and orchestrated the Physical to Virtual migration of current servers which saved $750,000 within 1 year while providing a vast improvement in service availability, scalability and reliability

- (IGT) About 4 complete server racks moved through our environment every month—each needing VMWare, SAN/NAS, Switching/Routing, Cabling, OS and application installs, and so on. Each rack goes to a new customer, each with their own set of guidelines and needs. This process could take months for each customer. This was reduced to weeks or even days with the engineering and architecting of centralized rack & stack, automated OS provisioning and an array of scripts that would create custom environments on-the-fly

- (Children's) Implemented a proximity/biometric SingleSignOn solution with a Citrix presence that enabled personnel to freely and effectively roam the campus with high security and an increased productivity

- (ITT) Created scripted solutions via PowerShell, GPO and batch-files to provide automated self-service and network diagnostics and maintenance throughout one of the world's largest AD infrastructures

- Very familiar with new storage systems including Bleeding-Edge Technology Flash-Arrays (Nimbus, PureStorage), Mass-Storage systems (Promise, Sans Digital, DIY solutions), and the Venerable Enterprise Array systems from HP, EMC, Dell, and NetApp

- (USAble) Executed a multi-tier Backup/DR/Replication solution spanning from localized Snapshots, Disk-to-Disk images and off-site replication that reduced the time-to-recover from days to minutes and while providing rock-solid stability

- (USAble) Engineered Virtualized SQL/Web/File Services that out-performed any current high-end physical implementation

- (USAble) Documented and executed a plan to test various systems performance – SQL/Web/High-Transactional File-shares –within newly implemented VMware Environment

AGS200003

# Derek Webb

engineer | architect

1701 Dave Ward DR Lot 102 | Conway, AR 72034 | (479) 970-5236 | dedrick427@gmail.com

- ◆ (USAble, IGT) Assessed End-to-End budget & systems needs for projects from licensing costs; network & storage requirements to cooling & electricity
- ◆ (USAble, IGT) Conducted various reports for the ROI/TCO of current and future projects including Physical & Virtual servers, Backup & DR practices and Storage Area Networks

## Employment History

INTERNATIONAL GAME TECHNOLOGY (IGT) – Las Vegas
Systems Engineer/Established Inventor, 2013 to present

MILITARY CONTRACTOR via ITT EXELIS - Kuwait
Systems Engineer, 2011 to 2013

USABLE LIFE - Little Rock, AR
Network Administrator/Engineer, 2007 to 2011

ARKANSAS CHILDREN'S HOSPITAL - Little Rock, AR
Security Administrator, 2006 to 2007

SPHERION - Conway, AR
Contract NOC Administrator, 2005

## Certifications

MICROSOFT CERTIFIED SYSTEMS ENGINEER

NETAPP CERTIFIED DATACENTER ARCHITECT

COMPTIA SECURITY+/CA

VMWARE CERTIFIED PROFESSIONAL

DELL COMPELLENT CERTIFIED

TOP SECRET CLEARANCE

MULTIPLE GAMING LICENSES

AGS200004

# EMail

| | |
|---|---|
| **From:** | Drew Pawlak |
| **Sent:** | Thursday, February 18, 2016 3:37 PM |
| **To:** | * Reno - SDS Compliance (sdscompliance@ballytech.com); *LQ - DCCASJING (dccasj_ing@loto-quebec.com); ?? ?? (t_maekawa@segasammycreation.co.jp); 999makamo@gmail.com; Aaron Hightower, Aaron Hightower (ahigh@ntek.com); acegraves@aol.com; Adam Fong; Adam Goldstein (agoldstein@williamhill.us); Adam Majewski; afsiddiqui@gmail.com; Aftab Rizvi (aftab.rizvi@gamingassociates.com); Alan Duewel (alan.duewel@scientificgames.com); Alan Santiago (alan.santiago@state.or.us); Albert Daude; Alejandra Burato; Alejandro Calle (alejandro.gonzalezc@gana.com.co); Alex Havenick (ahavenick@magiccitycasino.com); Alex Ortiz (aortiz@ardentsky.com); Alex Sanchez (asanchez@paumatga.com); Alexander Gornakov (agornakov@altogaming.com); Alexander Penner (alexander.penner@gtech.com); Alexey Lepa (alepa@smargames.ru); Alfonso Royal III (alfonso.royal@lottery.state.tx.us); Alicia Ray (a.ray@playags.com); Alisha Ray (alisha.ray@interblockgaming.com); alishadray@gmail.com; Alison Vixaysakd (alison.vixaysakd@ainsworth.com.au); Allan Dillabough (allan.dillabough@gtech.com); Allan Stone (allan@affiliaterevenue.com); Alpheus Matsebula (amatsebula@ballytech.com); Alvaro Nores; Amit Ranjan (amit.ranjan@nagarro.com); Amit Sharma; Andraz Kljajic (andraz.kljajir@rubicon-gaming.com); Andre Bouffard (andre.bouffard@bluberi.com); Andre Golubic; Andrej Sluga (andrej.sluga@advansys.si); Andres Cilley (cilleand@loteria.gba.gov.ar); Andres Sala (andres.sala@loteriacba.com.ar); Andrew Burke; Andrew Clucas (andrewc@microgaming.co.uk); Andrew Colbert (alolber@us.ibm.com); Andrew Felsher; Andrew Lehfeldt (alehjel@us.ibm.com); Androniki Tzivanaki (tzivanaki@intralot.com); Andy Knaiz (akniaz@ltsgames.com); Angel Iribozov (iribozov@btagi.org); Anna Sainsbury (anna@geocomply.com); Antar Johnson (antar.johnson@dc.gov); Anthony Lucas (anthony.lucas@unlv.edu); Anthony Mari (amari@casinojobs.com); Anthony Rabito (arabito2@fabiatm.com); Antoine Roker (roker.ant@gmail.com); Ariana Belotti (abelotti@electrochance.com); Aroldo Soares (coo@playbrandsgroup.com); Arte Nathan (arte.nathan@unlv.edu); Ashok Singh ; Avron Goss; Avron Goss (avron.goss@digitalgamingcorp.com); avrong@betstone.com; b.amegadjie@gmail.com; B.Tolladay@octavianonline.co.uk; Barney Gregory (barney.gregory@gb.co.uk); Bassel Moukaddem; Bassel Moukaddem (bmoukaddem@asturiatechnologies.com); bbreslo@DiamondGame.com; Ben Robitaille (ben@axesnetwork.com); Benjamin Ahdoot (benjamin@amayagaming.com); Bettina Mardyks (bettina@revistagames.com); biguymarried31@yahoo.com; Bil Liusian (bil@billabs.com); Bill Avgeris (bill.avgeris@intralot.us); Bill Lerner (bill.lerner@uniongaminggroup.com); Bill Stearns (bill@isisports.com); Billy MacLellan (bmaclellan@betrite.ca); Bilyan Balinov (balinov@casino-technology.com); bknow66474@cox.net; Blair Connolly (blair.connolly@britishgroup.ca); Blaise Verdi (blaise@catcogaming.com); bmccullough@theglenngroup.com; bmccullough@wideawakenv.com; Bob Bondarevich (bob.bondarevich@aglc.ca); Bob Connelly; Bob Cooney; Bob O'Donnell; Bob Schuijt (bobs@mbcii.com); Bobby Jones (bjones@scoregamingnv.com); 'Bojan Struna ; Boris Itsov (boris@jvl-ent.com); Boris@jvl.ca; Bostjan Duka (bostjan@gambee.eu); Bostjan Gustin (bostjan.gustin@alfastreet.si); Bostjan Rupnik (bostjan.rupnik@gold-club.si); Bozicevich, Richard (RBozicevich@us.tuv.com); Brad Geinzer (brad.geinzer@jbace.com); Brad Glencross (bradglencross@hk1180.com); Brad Romano (bromano@bclc.com); Brendan McCarthy (bmccarthy@gameaccountnetwork.com); Brendan.Mullins@cadillacjack.com; Brian Hooper (brian.hooper@finderservices.com); Brian Hooper (brian.hooper@magl.com); Brian Perego (brian@g2gamedesign.com); brian.wedderspoon@CranePI.com; brian@ltgaming.com; |

AGS200005

**To:**   brianna.mccullough@gmail.com; Brooke Dunn (bdunn@bigbetgaming.com); Brooks Pierce (brooks.pierce@aristocrat-inc.com); Bruce Familian (bruce@nevadagamingpartners.com); Bruce Kaye (brucekaye@assoc.org); Bruce Merati (bmerati@yahoo.com); Bryan Brammer (bbrammer@buildprofit.net); Bryan Snyder <bryans@sohosoftinc.com> (bryans@sohosoftinc.com); Bryson, Brad (Brad.Bryson@scientificgames.com); Buddy Levy (buddy.levy@verizon.net); Butcher, Bill (bbutcher@bmm.com); Byron Bridger; Byron Goodman; Carlos Alliende (csilva@scj@gob.cl); Carlos Batista (carlos.batista@meigroup.com); Carlos Gloza (carlosgloza@gmail.com); Carlos Rodriguez (cinfo@emilgames.com); Carole L. Hardy (cleehardy@gmail.com); Cary Lucier (cary.lucier@unlimitedconcepts.net); CBordeaux@shfl.com; cbordeaux@shufflemaster.com; ccox@planetbingo.com; Cesar Reyes (cesar.reyes@gdpsupergroup.com); Chad Edward (chad@emilgames.com); Chad Hoehne (chad@tabletrac.com); Chad Ryan (cryan@wms.com); chad.hoehne@casinotrac.com; chad54166@yahoo.com; Charles Bernitz (charles.bernitz@digitalgamingcorp.com); Charles Cohen (charles@probability.co.uk); Charles Hiten (chiten@novomatic.com); charlesgaudet71@yahoo.ca; charlie@acesupgaming.com; Cherie Duncan (cherie.duncan@sg-gaming.com); Cheryl Hoile (choile@ctclusi-gc.com); Cheryl Terhune-Honore (cherylt@fullcolorgames.com); Chris Barranco (christopher.barranco@castlehillholding.com); Chris Guerreo (Home Fax); Chris Lowe (technical.approvals@ainsworth.com.au); Chris Mercier (chris.mercier@grandronde.org); Chris Neil (chris@netplaytv.com); Christian Arbeiter (christian.arbeiter@gtech.com); Christian Ruggeri (cristian@interprodsa.com); Christine <Christine. Masino@GTECH. COM> Masino (christine.masino@gtech.com); Christopher Cummings (chris.cummings@paceomatic.com); Christopher Lowe (christopher.lowe@ainsworth.com.au); Christopher Strano (cstrano@ltgaming.com); Clark Hepper (clark.hepper@state.sd.us); Claudia@ghisolutions.com; Clay Dubois (cdubios@gpigaming.com); Cody Herrick (cody.herrick@ainsworth.com.au); COLIN MCRAE; collin.korich@aristocrat-inc.com; Confederated Of (ddurgan@ctclusi-gc.com); conniescrow@gmail.com; Constantine Vorobetz (cvorobetz@mt.gov); Courtney Monteiro (courtney.monteiro@sovereignfinance.com); Craig Acheson (craigacheson@jvl-ent.com); Craig Askins (craig@gulfcoastgaminginc.com); Craig Flowers (cwflowers.flowers@gmail.com); Cristie Purple (cristie.purple@lottery.state.tx.us); Cristina Arevalo (cristina@revistagames.com); Cynthia Hayes (cynthia.hays@scientificgames.com); Cyril Swavy (swavy3214@gmail.com; d.lopez@americangamingsystems.com; dallas.burnett@mm-games.com; Damjan Semec (damjan.semec@siq.si); Dan McCoy (mccoy0102@konamigaming.com); Dan.Ceppaluni@vgt.net; Daniel Carter (cybertecgaming@aol.com); Daniel Donohue (ddonohue@novagaming.net); 'Daniel Grabher' (daniel.grabher@mediastream.ag); Daniel Magarinos (info@pallana-gaming.net); Daniel McCarty (daniel@ltgaming.com); Daniel Placeres (danielp@sielcon.com.ar); Darin Peters (darin@goodtimeaction.com); Darnell Johnson (darnell.johnson@igt.com); darryl.deraedt@spingames.net; Daurean Sloan (d.sloan@playags.com); Dave Bonecutter (dave@gamefission.com); Dave Danhi (dave@thegrilledcheesetruck.com); Dave Goodhue (dave.goodhue@paltronics.com); Dave Schuening (d.j.schuening@state.or.us); Dave Steele (david.steele@igt.com); Dave Waters (dwaters@novagaming.net); dave@slotaces.com; David Baazov (david.baazov@amayagaming.com); David Balmer (dbalmer@mca-mail.com); David Coldea (david@baumgames.ro); David Dezse (ddezse@microcomcorp.com); David Engel (david.engel@nuukster.com); David Evans (d.evans@jgc.je); David Flinn (david.flinn@igt.com); David Lopez (d.lopez@playags.com); David Lucchese (dlucchese@gcamail.com); David Mahan (david@fulicolorgames.com); David Mahon (david@fullcolorgames.com); David Omens (domens@cabazonindians-nsn.gov); David Orrick (dorrick@novomatic.com); David Santoyo-Amador; David Selle (davidpselle@googlemail.com); David Small (david.small@gtech.com);

AGS200006

To:  davidschultz@jvl.ca; Dawn.Ray@globalpay.com; Dean Martin
(deanmartin@capitalendeavors.com); Dean Martin (dino_martin@bellsouth.net);
Deborah Starrett-Guerin (dstarrett-guerin@gpigaming.com); Delmar Weaver
(dweaver@nativegamingservices.com); Delores Ward <dward@fmlcompanies.com>
(dward@fmlcompanies.com); Dennis Korthouwer (d.korthouwer@hitutopia.com); Dennis
Maanen (dennis@esandarecruitment.com); Dennis Nelson (dnelson@goldeneyeld.com);
Derek Webb (webb@bayfrontcp.com); Derik Mooberry (dmooberry@ballytech.com);
Dessislava Panova (d.panova@dkh.minfin.bg); DeWayne Wooten
(dwooten@eqube.com); Deyvon Jones (deyvonj@gmail.com);
dforman@planetbingo.com; 'Diana González'
(diana.gonzalez@jmcgamingconsultants.net); Didier Collette; Didier Collette; Didzis
Kjavīr,Is (didzis.klavins@tilde.com); 'Diego Fernandez'
(Diego.Fernandez@mediastream.ag); Diego Mejia (dmejia@transact-tech.com); Diego
Mendez (diego.mendez@ingg.com); Dieter Sauerland (dsauerland@merkur-
gaming.com); DiGrazia79@aol.com; Dimitri Georghiou (dimitri@dclfoods.com); Dingo5
@me.com; dionne_ethier@yahoo.ca; Dmitry (dk@vipstakes.com); Dolph Barnhouse
(dbarnhouse@luebbenlaw.com); 'Domen Štangar' (domen.stangar@zuum.eu); Don
Baugh (dbaugh@gamingsupport.com); Don Doucet (don.doucet@gtech.com); Donna
Romeo (donna@ethno-insight.com); Doug Schwarz
(doug.schwarz@aspectgaming.com); dpawlak@bmm.com; Drury, Kacy
(kdrury@gcamail.com); Dsalour@bmm.com; Duff Taylor (rpgm2@yahoo.com); Earl
Hopkins (ehopkins@contactaac.com); Earle Hall (egh@axesnetwork.com); Edifcio
Alameda (moxrav@odrex-sales.com); Edna Sena (edna.sena@ortizgaming.com); Edo
Haitin (edo@games-os.com); Eduardo J. Delaney (eduardojdelaney@gmail.com); Efim
Podvoiski (efimpodvoiski@jvl-ent.com); ejimenez@wms.com; Elena Karaivanova
(karaivanova@casino-technology.com); Elizabeth O'Neill (neill@state.or.us); Ellen
Sparrow (sparrow0718@konamigaming.com); Enrique Azua (eruizazua@wms.com);
Enrique Mason (emazon@diversifynevada.com); Eric Bouhanna (ericb@adictel.com); Eric
Chabot (eric.chabot@axon-ld.com); Eric Fisher (eric.fisher@meigroup.com); Eric
Meyerhofer (eric.meyerhofer@gamblitgaming.com); eric.berzok@reelgamesinc.com;
Erica Jimenez (erica.jimenez@scientificgames.com); Erick Bethke
(erik@beecavegames.co); Erik Grigg (egrigg@vsrindustries.com); Erik Nordin
(enordin@epictech.com); Erik@beecavegames.com; Erin Kovnot
(erin.kovnot@respingaming.net); Esteban Corio (esteban.corio@igt.com); Esteban, Jose
Antonio  (joseantonio.eatan@codere.com); Esther Villalobos (esther@dgssvc.com);
Fabio Takahashi (fabio@ambragaming.com); Faisal Siddiqui
(faisal@realdealinteractive.com); Faisal Siddiqui (Home Fax); Fawad Naqvi
(FawadNaqvi@jvl-ent.com); 'fernando salazar' (fernando.salazar@verificacion-
versatil.mx); Floyd Baroga (Home Fax); fortunatox@mac.com; Francis Keyser
(francis.keyser@spingames.net); Francois Bergeron (Francois.Bergeron@bluberi.com);
Frank Coirnelius (fcorneli@oneidanation.org); Frank Fantini
(ffantini@fantiniresearch.com); Frank Marinaro (fmarinaro@montroseaccounting.com);
Frank Warzecha (frank@gc2inc.com); Fred Gabbard (fgabbard@wms.com); Fred
Lychock; Fred Lychock (fred.lychock@suzohapp.com); Frederick Noyes
(bicount@msn.com); Frederick Reis (fereis@compliantgaming.com); Frederick Vachon
(fvachon@dekinternational.com); G.Thompson@ags-llc.net; Gabor Helembai
(helembaig@fdlaw.hu); Gabriela Manu (gabi@baumnet.com); Garrett Blackwelder
(garrett@banillagames.com); Gary Carter (gcartersr@mptn-nsn.gov); Gary Danger
(gary.danger@gcb.state.mn.us); Gary Kapral (gkapral@ballytech.com); Gary Kuipers
(gary.kuipers@casinfosystems.com); Gene Browder (genebrowder@hk1180.com);
George Bogushevsky (g.bogushevsky@entertainment-research.net); George
Zarcadoolas (george@peekgaming.com); Georgi Koprinarov (koprinarov@casino-
technology.com); Gerald Danforth (jerry.danforth@rocketgaming.com); Gerald Dumal

3

AGS200007

**To:**    (gerald.duhamel@bluberi.com); Gerardo Taccone (gltaccone@gmail.com); Gergana
Yaneva (gergana.yaneva@egt-bg.com); German Gonzalez - Gerencia Colombia
(gerencia.colombia@jmcgamingconsultants.net); Gert Telkamper
(g.telkaemper@gaminglabs.com); ggronau@gpigaming.com; Gideon Kessel
(gideon.vankessel@amayagaming.com); gideonvkessel@gmail.com; Gino Domincco
(gino1811@yahoo.com); Glen Howard (glen@fullcolorgames.com); Glen Rose
(glenr@intuicode.com); Golonka, John (jgolonka@bmm.com); Gonzalo Tellez
(gonzalo@koalagaming.cl); Gorazad Golob (gorazd.golob@interblockgaming.com);
Graeme Levin (graeme@gamblingcity.com); Greg Drew
(greg.drew@eclipsegamingsystems.com); Greg Drew (greg.drew@elitegamesllc.com);
Greg Ewald (greg@ultbingo.com); Gregory Giordano (ggiordano@lrlaw.com); Guerassim
Nikolov (gerasim.nikolov@sportpesa.com); Gus Fritschie (gus.fritschie@senet-int.com);
Gustavo.Diaz Mar (gustavo.diaz@loteriacba.com.ar); gwichinsky@aol.com; gymratt4321
@yahoo.com; haigjean@aol.com; Hal Gwin (halgwin@crowngamingsystems.com);
Harald Kaiblinger (hk@8unlimited.co.uk); Harley Jackson (harley.jackson@gentsys.com);
'Hector Ruiz Vidal' (hector.ruiz@verificacion-versatil.mx); Heidi Minten
(heidi.minten@state.or.us); Heidi Staudenmaier (hstaudenmaier@swlaw.com);
heidi@casinorecruiter.com; Heino Schuetz (heino.schuetz@mediastream.ag); Helen
Wanjau (helen@sportpesa.com); Heliodoro Giner
(info@europeancasinoassociation.org); Hermilo Peregrina
(hermilo.peregrina@verificacion-versatil.mx); Herve Schlosser
(herve.schlosser@sportnco.fr); Horacio Vazquez
(horacio.vazquez@multicommerce.com.ar); Howard Smoyer
(howard@bigdaddygames.net); Hugh@bmm.com; Ian Hepburn
(ian@providencetg.com); ianhuges@cox.net; Ilan Katz (ilan.katz@senet-int.com); inag11
@aol.com; Ing Cuacci (daniel@dayco.com.ar); Isaakyan Edgar (edgar@slotlogic.eu);
Ishmael Masoka (imasoka@wms.com); Ivan.Souffront@gamblitgaming.com;
j.namchek@americangamingsystems.com; J.Schmitz@ags-llc.net;
jack.saltiel@eclipsegamingsystems.com; jack.saltiel@primerogames.com; Jackie Sapp
(Jackie.Sapp@cadillacjack.com); JACOB.WEAVER@chickasaw.net; Jacques Paquin
(jpaquin@sidecity.com); Jamal Azzam (jazzam@gamingarts.com);
jamal.azzam@me.com; James Burns (jburns@williamhill.us); James Tzouvelekas
(jgtz@novagaming.net); James.oatman@mm-games.com; Jamie Rapose
(jamie.rapose@scientificgames.com); Jamie Tzouvelekas (jamie@novagaming.net);
Jamie-Hummingbird@cherokee.org; Jamison Hill (jamison.hill@aruze-gaming.com);
Jammal Scarlett (jammal.scarlett@sedgaming.com); Janae Hoover
(janae.hoover@rocketgaming.com); janaeh@rocketgaming.com; Jason Rosenberg
<wolf@americangamingsolutions.com> (wolf@americangamingsolutions.com); Jason
Seelig (jseelig@ymail.com); Jason Sprinkle (jason.sprinkle@castlehillgaming.com); Jason
Walker (jason.walker@aglc.ca); jason.griffiths@bmm.com; Javier Bringas
(javier.romero@caliente.com.mx); Jay Bertsch; Jay Duarte
(jay.duarte@thundervalleyresort.com); Jay Fennel (Business Fax); Jay Gross
(jgross@moneycenters.com); Jay Roper (jroper@ballytech.com); Jay Tang
(jtang@nrttech.com); jay.fennel@stationcasinos.com; Jazz Patel
(jazz.patel@respingaming.net); jcohen@kgmgaming.com; jcorriveau@bmm.com; JD
Garner (jd.garner@gambleid.com); jdilascio@bmm.com; Jean Sabini
(jpsabini@sabiacorporation.com); Jeanette Youngerman
<jyoungerman@spingames.net> (jyoungerman@spingames.net); Jean-Paul Symeonidis
(jp.symeonidis@tcsjohnhuxley.com); Jeff Allyn (jallyn@loc-aid.com); Jeff Bierman
(jeff.bierman@jcmglobal.com); Jeff Connor (jeff.connor@casinotrac.com); Jeff Cooper
(jcooper@ochogaming.com); Jeff Halloran (jeff@mtdynamics.com); Jeff Voyles
(jef.voyles@itoga.org); Jeffrey Jacobson (jefrey.jacobson@aristocrat-inc.com);
jenaleger@gmail.com; Jennifer Chapman (jennifer.chapman@amayagaming.com);

4

AGS200008

To:     jennifer_comeau@hotmail.com; Jens Halle (jhalle@novomaticamericas.com);
jenshalle777@yahoo.com; Jeremy Jeremy (jeremys@intuicode.com); Jeremy Tyra
(jtyra@fourcornersinc.com); Jeremy Wine (jeremyw@titantechgroup.com); Jerome
Merchant (jerome.merchant@kineaticadvisors.com); Jesse DeBruin (jesse.debruin@mm-
games.com); Jessy Fleurent (jessy.fleurent@bluberi.com); Jesus Ryes (jreyes@cocopah-
casino.com); jhalloran@thejacobsonlawgroup.com; jhiser@gravesmgmt.com; Jholley84
@aol.com; Jim Breslo (jbreslo@diamondgame.com); Jim Eiteljorg
(jim@vegasgamepoint.com); Jim Haworth (jim.havvorth@pbr.com); Jim Hunt
(jhunt@wyandottecasinos.com); Jim McNierney (jim@colekepro.com); Jim Morrow
(jim.morrow@gtech.com); Jim Slattery (jslattery@ballytech.com); Jim Sullivan
(jimsullivan@scoregamingnv.com); Jimi Falin (jimi@somethingnewfilms.com);
jlight@bmm.com; Jodi Dilascio; Jodie Thind (jodie@lyceummedia.com); Joe Pappano
(joseph.pappano@vantiv.com); Joe Pisano (joepisano@jadegaming.com.ph);
joe.valandra@mynexus.com; joe.valandra@vadvisorsllc.com; Johan Stoop
(johans@vsrindustries.com); Johann Bodenstein (Betstone)
(johann.bodenstein@betstone.com); John Biron (johnd.biron@bluberi.com); John Blouin
(john@jamesindustrtesinc.com); John Bolton, III (jbolton@hillhillcarter.com); John
Chamberlain (john.chamberlain@gogtg.com); John Heinen (jheinen@galottery.org);
John Hemberger (j.hemberger@playags.com); John Hilbert (john.hilbert@futurelogic-
inc.com); John Martin-Meyer (j-mmeyer@perpetualgaming.com); John McCormack
(john.mccormack@scientificgames.com); John Pittman (john.pittman@intralot.us); John
Roberts (jroberts@pokagongc.com); John Rochester; John Tarr (jtarr@mt.gov); John
Taylor (john.taylor@castlehillgaming.com); John Toohey
(john.toohey@scientificgames.com); John.Connelly@interblockgaming.com;
john.tahsuda@navigatorsglobal.com; John@gogtg.com; John-Martin Meyer <j-
mmeyer@mindspring.com> (j-mmeyer@mindspring.com); Jon Matonis
(jon@bitcoinfoundation.org); Jon Paschal (jpaschal@ewa.com); jon.goldstein@id-
gaming.com; jon@isdgames.com; Jonas Stewen (jonas.stewen@combitech.se); Jonathan
Broome (jbroome@ling3.com); Joquein Gonzolaz (jgonzalez@bmm.com); Jose Miguel
Chueca; Jose Sánchez (jose.sanchez@gdpsupergroup.com); Joseph Arnold III
(jarnold@laserlocktech.com); Joseph Halloran (ihalloran@thejacobsonlawgroup.com);
Joydeep Dash (joydeep@nagarro.com); Juan Carlos Pina (jpina@mikohn.net); Juan
Irarrazaval (jpirarrazaval@shfl.com); Juan Lorandi (juan@perrotuerto.com); Juan Martin
Delaney (jmartindelaney@gmail.com); Juan Salaberry (jsalaber@boldt.com.ar); Judy
Davidson (judy.davidson@aglc.com); Julian Isaacs; Julie Noonan
(jnoonan@magiccitycasino.com); Julie Uribe (julie.uribe01@gmail.com); Jure Jure
Kolman - Kolman (Business Fax); Jure Jure Kolman - Kolman (jure.kolman@zuum.eu);
Justin Georgilas (justin@smijune.com); Kahn Jekarl (kahn@flowstatemedia.com); Kai
Prangel (kprengel@dlv.lv); kakini@rosettelaw.com; Kaloyan Krustev
(k.krustev@dkh.minfin.bg); KanemotoN@soj.sega.co.jp; Karla Mendoza
(karla.mendoza@gdpsupergroup.com); Kat Martini; Katrin Schreiber
(kschreiber@novomatic.com); Kay Busby (jbusby@goldriverok.com);
kcflynn@rogers.com; Keith Riggs (keith.riggs@mm-games.com); Keith.Moore@vgt.net;
Kellen Carr (kcarr@galottery.org); Kelly Dyer (kelly.dyer@deq.com); Kelly Kraus
(kelly.kraus@mm-games.com); Ken Bossingham (k.bossingham@playags.com); Ken
Golda (ken.golda@vgt.net); Ken@Rogoway.com; Kenneth Santos
(k_santos@segasammycreation.co.jp); Kenny Delaney (kenny@dingnews.com); Kent
Young (kent.young@spingames.net); Kern Eustace (kern.eustace@ainsworth.com.au);
Kevin Chelius; Kevin Cochran (kevinc@gamblingcompliance.com); Kevin Cunningham;
Kevin Markey (kevin.markey@state.or.us); Kevin Markey (kevin.rnarkey@state.or.us);
Kevin Mitchell (kevin.mitchell@sedgaming.com); Kevin Reilly (k.reilly@playags.com);
Kevin Simington (kevin.simington@thundervalleyresort.com); Kevin Thornton
(kevin@catcogaming.com); kevin.sweet@stofgaming.com; kevin@divfund.com;

5

To:   kevin@paradisegames.com; Kilmer, Tina (TKilmer@ballytech.com); Kim Martin (kmartin@vsrindustries.com); Kimber.johnson@aruze-gaming.com; klippon@msn.com; Krasimir Kostadinov (krasimir@casino-technology.com); Kristina Tsabadze (kristina.tsabadze@unisas.com.mx); Kristopher Sanchez (ksanchez@diversifynevada.com); Krystene Strohak (krystene.strohak@aruze-gaming.com); Kuckelmann, Susan (Susan.Kuckelmann@scientificgames.com); Kurt Luger (gpiga@gpiga.com); kwhite@bmm.com; Kwilliams@beecavegames.com; Lael Echo-Hawk (lechohawk@gsblaw.com); Lane Spina (ispina@wms.com); Larry Hodgson (lhodgson@itsgames.com); Larry Swimmer (i.swimmer@prairiewindcasino.net); lasvegasfrank@gmail.com; Laura King (laura.king@state.or.us); Lauralyn McCarthy (lauralyn.mccarthy@scientificgames.com); Laurie Korpi (laurie@gamblingcompliance.com); Leinani Marshall (leinani@weststar.org); lenah@tulaliptga.org; Leo Oves (loves@ardentsky.com); Leonid Mendelev (leonidmendelev@jvl-ent.com); lfmabogados@gmail.com; Lina Malahova (imalahova@dlv.lv); Linda Gordon (linda.gordon@scagaming.com); Linda Lemieux; Lindsay Slader (lindsay@geocomply.com); Lisa Black (lblack@colossalswg.com); lmackenzie@techlinkentertainment.com; lmalahova@dlv.lv; Lombardico@aol.com; Losif Galea (iosif.galea@lga.org.mt); Lou DeGregorio (lwdatdp@aol.com); Lou Kelly (lkelly@transact-tech.com); louise.dionne@bmm.com; Lucien Wijsman (lwijsman@usa.net); Luis Bernstein (lbernstein@loyaltygroup.com.ar); Luis Santana (luis@axesnetwork.com); Luiz Zonca (l.zonca@sportradar.com); Luke Orchard (Business Fax); Luke Orchard (Luke.Orchard@GTECH.COM); LWeiss@C2Gaming.com; Lydia Tse (lydiatse@takaragaming.com); Lynn Becker (lynn.becker@intralot.us); Lyon, Emil; Mackenzie Haugh (m.haugh@gaminglabs.com); Makoto Tanaka (makoto.tanaka@sega.com); Malcolm Barnett (systemsupport@paradisegames.com); Manfred Schimpf (mschimpf@tab.at); Marc Michet (marc@videobet.com); Marc Santerre (marc.santerre@casino.qc.ca); marc.sean.lee@gmail.com; marcbernarde@yahoo.com; Marcelo Marcelo (marcelo@centuriongamesinc.com); Marcos Leme (mleme@operaclonesdelnorte.com); Marcos Tavares (marcos.tavares@ortizgaming.com); Marcus Fortunato (marcus@tictabs.com); Maria Eugenia (ventas@soloazar.com.ar); Mario Moser (mmoser@tab.at); Mark Cavanagh (markc@gamblingcompliance.com); Mark Maes (mark@casinoskillgaming.com); Mark Munger (Home Fax); Mark Munger (mark@markmunger.com); Mark Munger (mmunger@whitesandgaming.com); Mark Nizdil (mark.nizdil@primerogames.com); Mark Noctor (mnoctor@arxan.com); Mark Pace; Mark Pinan (MarkP@microgaming.co.uk); Mark Riva (mdallariva@betrite.ca); Mark Staudt (mark.staudt@meigroup.com); Mark Yoseloff (myoseloff@bigbetgaming.com); markpnewton@hotmail.com; Marlene Tuzar (marlene.tuzar@poletowininternational.com); Martin Müller (Martin.Mueller@mediastream.ag); Marty Clennon (mclennon@bigoaddygames.net); Marvin Smith (marvin.smith@spingames.net); mason377@yahoo.com; Matej Lah (matej@fairplay.si); mathew.morgan@chickasaw.net; Matt Johnson (MattJohnson@intralot.us); Matt Kilgore (matt.kilgore@chickasaw.net); Matt Reback (reback1105@konamigaming.com); Matt Wilson (mwilson@aristocrat-inc.com); Matt Young; matt.hayner@yahoo.com; Matthew Kulas (mkulas@transact-tech.com); Matthew Stafford (matt.stafford@nyxgg.com); Matthew.Morgan@chickasaw.net; maureen.d.williamson@gmail.com; Maurice Lerfino (maurice.ierfino@bluberi.com); Mauricio Wagner (mowagner@ambragaming.com); Maurilio Silva (maurilio.silva@ortizgaming.com); Mauro.franic@cadillacjack.com; Max Eiterjord (maxeiteljorg@gmail.com); Max Rav (maxrav1@hotmail.com); Maxwell Goldstein (mgoldstein@carmanahsigns.com); MCaldwell@enterpriseperformance.net; Meistrich, Steven (stevenmeistrich@gmail.com); Mel Adair; Melanie.Butler@chickasaw.net; Melissa Aarskaug (m.aarskaug@gaminglabs.com); Melissa Adams; Merle Frank

6

**To:**  (merly@grandvisiongaming.com); mfdreitzer@gmail.com; Micah.landis@countryfinancial.com; Micha Grundman (micha.grundman@amayagaming.com); micha@amayagaming.com; Michael Cosley (mcosley@elitegamingtech.com); Michael Covarrubias (michael.covarrubias@zuum-usa.com); Michael Crooks (mcrooks@ballytech.com); Michael Ellen (michael.ellen@agcc.gg); MICHAEL FRIES; Michael Fries (michael.fries@scientificgames.com); Michael Kaplan (mike@paynearme.com); Michael Kroiher (MKroiher@novomatic.com); Michael Newell (mnewell@novagaming.net); Michael Parham (mparham@galottery.org); Michael Shapland (michael.shapland@vgt.net); Michael Templeman (michael@paradigmtablegames.com); michael@vegasverticals.com; michaelpbird@aol.com; Michail Volokotkin (div@diviv); Michel Vaudry (michel.vaudry@opentrust.us); Michelle.Chatigny@IGT.com; micruz@state.pa.us; Miguel Rodriguez (migr@once.es); Mike Darley (mdarley@nextgaming.co); Mike Dreitzer (mike.dreitzer@ainsworth.com.au); Mike Fields (mike.felds@actiongaming.com); Mike Fletcher (truejury1@aol.com); Mike Macke (mikemacke@msn.com); Mike Mass (mmaas@amientertainment.com); Mike McKiski (mmckiski@ballytech.com); Mike Medlin (mike.medlin@scientificgames.com); Mike Ornstein <mornstein@bigstk. Ornstein (mornstein@bigstk.com); Mike Reaves (mreaves@cashbet.com); Mike Schreibman (mike@wagerengine.com); Mike Smith (mike.smith@vgt.net); mikeh@spingames.net; Mitchell Broth (mitchell.j.broth@wellsfargo.com); Mitchell Rankin (mitchell.rankin@snowcatsystems.com); Mitja o. o. Kolman (mitja.kolman@zuum.eu); Mitsuhiro Miyazaki (mm.43618@konamigaming.com); mkaltz@atlantictechnicalconsulting.com; mnizdil@me.com; Monica Ladd (monica@northamericangaming.com); Moodley, Tashie (tmoodley@bmm.com); 'Moosad Sreedharan'; mp@apex-gaming.com; mzilevski@bmm.com; Nadya Hambach (nadya@vylawoffce.com); Natasha Chandler (nchandler@gamingns.com); Nathalie Beaudoin (nathalie.beaudoin@baldwingames.com); Nathalie Fabre-Pluchon (nathalie.fabre@sportnco.fr); Neal Andres (nealandres@hotmail.com); nealanders@hotmail.com; Neil Moir (n.moir@theglobaldraw.com); Neil Wilson (neil.wilson@vgt.net); ngoldman@granitexconstruction.com; Nic Sulsky (nic.sulsky@sportech.net); Nicholas Autiello (nautiello@laserlocktech.com); Nichole Andrighetti (nandrighetti@silverskygames.com); Nick Connolly (nconnolly@ewa.com); Nick Icamina (nick.icamina@jbace.com); nick.hogan@bmm.com; Nicole Babbs; nigoldman@me.com; nikul.patel@mm-games.com; Nimai Malle (nimai@beecavegames.com); Noah Turner (nturner@bcic.com); Norman Lingle (norman.lingle@state.sd.us); Ofir Ventura (o.ventura@playags.com); Oh, Frank (foh@bmm.com); okcoin1@aol.com; Oliver Zammit (oliver@gbsmalta.com.mt); Omer Sattar (osattar@sightlinepayments.com); Orion Poulin (orion@plansonintl.com); Orlando Baridon (orlando.baridon@gtech.com); Orlin Stefanov (orlin@proxima-3.com); oschuyie@hotmail.com; OSCHUYLE@oneidanation.org; Pamela Williams (pamela.morris@betssongroup.com); Pat Crawford (pcrawford@roguegamingstudio.com); Patrick Campbell (Home Fax); Patrick Campbell (pcampbell@itsgames.com); Patrick Kellick (pat.kellic@vgt.net); patrick.ramsey@mm-games.com; Patty Randell (patty.randell@nanotechent.com); Paul Digrazia (pdigrazia@wms.com); Paul Kappus (paul@gamefission.com); Paul Lofgren (plofgren@reclhorseadvisory.com); Paul Parker (paul.parker@aristocrat-inc.com); Paul@connectionsit.com; Pavel Veselko (pavel.veselko@vitinvest.com); Petar Kaykiev (petar.kaykiev@egt-bg.com); Peter Anderson (p.anderson@playags.com); Peter Christensen (pchristensen@tab.at); Peter Guterres (PeterGuterres@jvl-ent.com); Peter Khai (peter@wgsc.ws); Peter Murray (peter.murray@gb.co.uk); Peter Palexas (petergdp2@gmail.com); Peter Price (peter.price@cgi.com); peter@ags-llc.net; peter@wgtc.net; petergdp@gmail.com; Phil Gelber (phil.gelber@scientificgames.com); Phil Horrell

AGS200011

**To:**

(horrellp@welsfargo.com); Phil Lulek (plulek@technologyexclusive.com); Philipps, John (jphillips@bmm.com); Phillip Dodd (phillip.s.dodd@state.or.us); Pierre Otto (potto@wms.com); Plamen Antonov (plamen_a@proxima-3.com); Pree Patel (pree.patel@gb.co.uk); ptraficant@theMresort.com (ptraficant@themresort.com); Quinton Singleton (qsingleton@cgtglobal.com); Quraish Behari (quraish.behari@derivco.com); r.perry@playags.com; Rachel Barber (rachel.barber@gtech.com); Rachelle.Barnett@chickasaw.net; Rafael Quispe (rafael.quispe@gdpsupergroup.com); Ragnar Toompere (ragnart@primanetworks.eu); Randall Reed (randy.reed@vdoginc.com); randyz@cre8tvgames.com; Ray Thomas (raythomas@us.ibm.com); Raymond Smith (commander@praticehard.com); rdr@rocketgaming.com; rdreitzer@yahoo.com; Rejean Belliveau (rbelliveau@nanoptix.com); Renato Bicic (renato.bicic@spintec.si); Renato Vieira (rvieira@ambragaming.com); RHansen@C2Gaming.com; Rich.Baldwin@uniongaminggroup.com); Richard Azimov (Home Fax); Richard Azimov (richard.azimov@amaya.com); Richard Cone (rcone@betrite.ca); Richard Dreitzer (richard.dreitzer@wilsonelser.com); Richard Newman (rich@newmanlawlv.com); Richard Schuetz (rschuetz@cgcc.ca.gov); Richard Weltmer (rweltmer@switchlv.com); Richard Williamson (richard.williamson@vgt.net); Rick Legenza (richardcca@hotmail.com); Rick Meitzer (rmeitzler@novomaticamericas.com); rick.lopez@aristocrat-inc.com; RickMeitzler@NOVOMATICAMERICAS.COM; Rivara, Jay (Jay.Rivara@northstarlottery.net); rj2709@aol.com; Rob Bone Bone (rob.bone@interblockgaming.com); Rob Siemasko (rsiemasko@diamondgame.com); Rob.Jacks@chickasaw.net; Robbie Lyn (robbie-lyn@isdgames.com); Robert Delrossi (rdr@rocketgarning.com); Robert Emert (robert.emert@wgsc.ws); Robert Munoa (rjmunoa@pechanga-nsn.gov); Robert Reyes (robert.reyes@ortizgaming.com); Robert Toth (robert.toth@mediastream.ag); robert.rayes@ortizgaming.com; Roberto Coppola (roberto.coppola@igt.com); Roberto Morales (r.morales@decart.bg); roberto.m.coppola@gmail.com; Robin Drummond (robin.drummond@spielo.com); Rocaberte.Rock; Rodney Fee (rodney@tstradingsystems.com); roel@wgtc.net; Roger Garceau (roger.garceau@loto-quebec.com); Roger McComas (roger.mccomas@state.or.us); Roger Thornton (roger@alienvault.com); Rohan Dalpatadu (dalpatad@unlv.nevada.edu); Roman Frymer (roman@revistagames.com); Ron Clapper (ron@clapperenterprises.com); Ron Hulium (rhullum@paumatga.com); Ron Luck (rod@casinobs.com); Ron Wolff (hmdentertainment@yahoo.com); Ronald Haider (rhaider@tab.at); ronh@rocketgaming.com; Rosa Garcia (rgarcia@spielo-int.com); Ross Bernstein (rbernstein@fourwindsinteractive.com); Ross Edwards (ross.edwards@scientificgames.com); Rossi McKee (compliance@casino-technology.com); Rossi McKee (rossimckee@casino-technology.com); Roy Clements (r.clements@playags.com); Rudy Berti (rberti@nextgaming.co); Rudy Gonzalez; rui@fabamaq.com; Russell.Witt@ainsworth.com.au; rvecchio@ambragaming.com; rweatherby@mesalogic.com; Ryan Clapper; Ryan Thomson (ryan.thomson@cgi.com); rziems@gmail.com; Salim Adatia (S.Adatia@gaminglabs.com); Sally Blacksnake (Sally.Blacksnake@SenecaGamingAuthority.com); Salvador Martinez (smartinez@big-valley.net); Sam Basile (sam.basile@globalzitro.com); Sam Calis (sam@asciimedia.com); Sam Eigen (sam@slefilms.com); sam.basile@me.com; Sandi Stanic`` (sandi.stanic@spintec.si); Sandra Drozd (sdrozd@williamhill.us); sanjiv.g@droisys.com; Sarile, Les  (Les.Sarile@cadillacjack.com); Schreiber.Shawn (Shawn.Schreiber@IGT.com); Scott Chow (scchow@paypal.com); Scott Emerson (scott.emerson@chickasaw.net); Scott Gibson (Scott.Gibson@eclipsegamingsystems.com); Scott Rose (Scott.Rose@cadillacjack.com); Scott Scott (scott.s@gen-game.com); Scott Vollmer (svollmer@epictech.com); Scott Winzeler (scott.winzeler@vgt.net); Sean Center (scenter@epictech.com); Sean Cook (sean.cook@tks.com); Sean Cromwell (scromwell@epictech.cm); Sean Evans (sean.evans@scientificgames.conn); Sean M.

8

**To:**    Mason (sean_mason@nigc.gov); Sean Smith (sean.smith@reelgamesinc.com); sean@reelgamesinc.com; Sebas Bastian (stonebas@hotmail.com); Sebastian Mosse (smosse@mtg-gaming.com); serena.proudfoot@3gstudios.com; Serge Beaudoin (serge.beaudoin@axesnetwork.com); Sergey Harutyunyan (sergey.harutyunyan@betconstruct.com); Sergey Vardanyan (serge@betconstruct.com); sergey@betconstruct.com; Sergio Alvarenga (sergio.alvarenga@intralot.com.br); Sergio Martin (director@soloazar.com.ar); Seth Schorr <sschorr@fifthstreetgaming.com> (sschorr@fifthstreetgaming.com); Seth Young (seth@flowercitygaming.com); Seth Young (seth@starfantasyleagues.com); SGreaves@wms.com; Shannon Thompson (shannon.thompson@state.or.us); Sharon Marshall (smarshall@mgmresorts.com); Shawn Fellows (shawn@nutechpromos.com); Shawn Fellows (shawnfellws@bellsouth.net); Shawn Quick (squick@acsplayon.com); Shawn Veerasammy (sveerasammy@magiccitycasino.com); Shawnfellows@bellsouth.net; Shea Peach (speach@gamingns.com); Sheila Smith (shelia.smith@ainsworth.com.au); Shunichi Fujita (fujita_shunichi@sega.co.jp); Sigmund Lee; Simon Witty (simonwitty1@gmail.com); Slattery, Jim (Jim.Slattery@scientificgames.com); slee@playags.com; SLenske@aol.com; Slot Academy (hello@slotacademy.com); Soler, Miguel Angel (Miguel.Soler@IGT.com); Sonia Joya (sjoya@gov.nv.gov); Sonny Silva <hulaville@mac.com> (hulaville@mac.com); 'Sonya Nikolova' (sony@casino-technology.com); Spencer Peterson (peterson0809 @konamigaming.com); Sreeram Vanga (sree@cozygames.com); ssmith@reelgamesinc.com; Stacey McKinney (smckinney@diamondgame.com); Stacy Friedman (stacy@olympiangaming.com); Stan Kotova (skotova@m3ts.com); Stanislav Stanev (stanislav.stanev@egt-bg.com); Stefan.Hamann@dragonfishtech.com; Stephanos Florentiades; Stephen Colbert (sdcolbert@cjdlawfirm.com); Stephen Miller (stephen.millen@ainsworth-uk.com); Stephen Naylor (s.naylor@gaminglabs.com); Stephen Riesenberger (stv@nanotechgaming.com); Stephen Riesenberger (stv@ntek.com); Steve Angelo; Steve Grossman (steve@xsgames.biz); Steve Hoare (sah@gamingintelligence.com); Steve Lefler (slefler@codespacegaming.com); Steve Steve <Steve. Kastner@IGT. Kastner (steve.kastner@igt.com); Steve Wilson (steve.wilson@vgt.net); Steve·York (styork@earthlink.net); Steve.Loska@dps.la.gov; Steven Richards (srichards@vsrindustries.com); Stone, Susan (sstone@cgtnv.com); storm@bmm.com; Stowe Shoemaker (stowe.shoemaker@unlv.edu); Stromer, Dan (dstromer@meskwaki.com); Sue Rossiter (srossiter@rrga.eu.com); Sulsky, Nic (Draftday.com) nic@draftday.com); Sung.Chun@macquarie.com; Susan Britt (britt35954 @gmail.com); Susana Pascual (purchasing@globalzitro.com); swhite@parlaygroup.com; Sy Esfahani (sesfahani@mgmresorts.com); Takako Wright (twright@snocasino.com); TAPadilla@aol.com; tdeadman@bmm.com; tdonovan@wvlottery.com; Tears Smith (tears@praticehard.com); Tebogo Makamo (tebogo.makamo@cdpgaming.com); teri.poust@poustlaw.com; teri.poust@yahoo.com; Terry Gauvin (terry.gauvin@spielo.com); thaliavargas@gmail.com; thawk@pechanga-pgc.net; Thomas Engstberger (T.Engstberger@amatic.com); Thomas Graf (tgraf@novomatic.com); Thomas Jingoli; Thomas Kolbabek (thomas.kilbabek@greentube.com); Tim Adams (mit999@cox.net); Tim Caldwell (tcaldwell@epictech.com); Tim Malloy (tim.malloy@respingaming.net); Tim Minard; Tim Moser (tim.moser@aristocrat-inc.com); Tim Richards (trichards@gcamail.com); Tim Shelburn (tim@vegasgamepoint); Tim Smith (tim@banillagames.com); Timothy Moser (tim.moser@ainsworth.com.au); Tina Kilmer (tina.kilmer@scientificgames.com); Tobin Prior (tprior@fertitta.com); Tod Sarlemyn (tsarlemyn@shfl.com); Todd Cravens (todd.cravens@tcsjohnhuxley.com); Todd Elsasser (todd.elsasser@digitalgamingcorp.com); Todd Schneider (tschneider@ballytech.com); Todd Seymour (todd@monstergaminginc.com); Todd Taylor (todd@acesupgaming.com); Tolliver, Kevin (ktollive@dncinc.com); Tom Doyle; Tom Doyle (tom.doyle@scientificgames.com); Tom Sears (tsears@sightlinepayments.com); Tom Willer (tomwiller@paynearme.com);

9

AGS200013

**To:**          tom.nugent@meigroup.com; Tomas Pagerup (tomas.pagerup@combination.se); Tommy Buck (TBuck@maynardcooper.com); Tony Antonucci; Tony Antonucci (tony.antonucci@eclipsegamingsystems.com); Tony Buono (tonyb@amayasoftware.com); Tony DeLeon (tonyd@tdeleon.com); Tony DubBois (gaming_ops@smscgc.org); Tony DuBois; Tony DuBois (Tony.DuBois@smscgc.org); Tony Hall; Tony Hall (tony.hall@beyond19.com.au); Tony Payne (tony.payne@aspectgaming.com); Tony Tessmer (tony@mtdgaming.com); Torrance Hill; Tracey Eginton (tracey.eginton@ainsworth.com.au); Tracy Burris ; Troy Jungmann; Troy Jungmann (tjungmann@enterpriseperformance.net); Troy King (troy@innovatetechnologiesgroup.com); Ushla Majel (umajel@paumatga.com); Vahe Bloulian (info@egamingpartners.com); Val Levitan (val@levitan.me); Van Villanueva (van.t.villanueva@fisglobal.com); Vaska Petkova (vaska.petkova@egt-bg.com); Vic Gallo ; Victor Pate; Victoria King (victoria@gamblingcompliance.com); Victoria Parrott (victoria@lucky7angels.org); Vigilante, Luisa (lvigilante@bmm.com); Viktoria Makova ; Viktoria Makova (viktoriam@jvl.ca); Vinod Kumar (vinodk@damcogroup.co.uk); Virgil Debrosse; Vishal Shah (Vishal.Shah@cadillacjack.com); Vitaly Veselko (vitaly.veselko@vitinvest.com); Viviana Saavedra (viviana.saavedra@gdpteam.com); Vivienne Dean (VDean@bahamasgamingboard.com); Vizconde, Erick (Erick.Vizconde@IGT.com); 'Wagenhofer, Karin' (KWagenhofer@novomatic.com); Wagner Comeron; Walt Eisele; Walt Hawkins; Warren Jolly (warren@adquadrant.com); Warren Jolly (warren@afiiaterevenue.com); Wayne Hong (etablegames@gmail.com); Wayne Hong (waynehong@yahoo.com); Wendy Anderson; Weyman Moon (wmoon@galottery.org); Wichinsky, Glenn (gwichinsky@HowardandHoward.com); William "Bill" Taylor; William Park (william.park@gamblitgaming.com); William Pfeiffer; William Wilsnagh (william.wilsnagh@betstone.com); William Wilsnagh (William.wilsnagh@digitalgamingcorp.com); William Taylor (wtaylor@vistagaming.com); Wojtek Bachorski (wb@advantgames.com); Xavier Trudel (xavier.trudel@bluberi.com); Yogonet.com; Youdi Wu; Young, Shawn (Shawn.Young@scientificgames.com); Zach Stanley (zach@flowercitygaming.com); Zachary Salem (zsalem@williamsinteractive.com); Zack Thomas (zack.thomas@wgsc.ws); Zoran Svetik

**Subject:**          Drew Pawlak New Contact Details

Hello to all my friends and colleagues,

I just wanted to get you my new contact details. As many of you know, I have left BMM Testlabs and joined a long time client AGS. For those of you that have not heard, I resigned after 12 great years in a outstanding company, our separation was 110% amicable. I am only 3 days in, but settling into the role gracefully. My new contact details are below, my cell remains the same. As always cell is best to reach me, including text or whats app.

If you have any questions, or need anything from me at all, please do not hesitate to reach out. As always I am always happy to help.

Thanks for your continued personal and professional support!

Drew



10

**Drew Pawlak** | VP & GM for Latin America | 5475 South Decatur Blvd.
Ste. 100 | Las Vegas, NV 89118 | (o) +1 702 912 2147 | (m) +1 702 493 6314 | Connect With Us

This email and any attachments may be privileged and confidential. Please delete if you are not the intended addressee.

11

# **EXHIBIT 9**

Compiled Letter Exhibit

353 N. CLARK STREET CHICAGO, IL 60654-3456

# JENNER&BLOCK LLP

December 19, 2016

David Jimenez-Ekman
Tel +1 312 923 2683
Fax +1 312 840 7683
DJimenez-Ekman@jenner.com

Timothy O'Reilly
235 South Maryland Parkway
Las Vegas, NV 89101

Re:     Scientific Games's Subpoena to AGS in *Shuffle Tech et al. v. Scientific Games et al.*, Case No.
         1:15-cv-03702 (N.D. Ill.)

Dear Mr. O'Reilly,

I write in response to AGS's December 13, 2016 objections to Scientific Games's subpoena and AGS's
December 15, 2016 two-document document production in Case No. 1:15-cv-03702 (N.D. Ill.).  The
subpoena to AGS calls for highly-relevant information that is central to the plaintiffs' claims and therefore
Scientific Games's defense.  This letter is to begin the meet-and-confer process, and to determine
whether AGS will produce any further documents.

Case No. 1:15-cv-03702 involves allegations that Scientific Games and its subsidiaries improperly
prevented various entities, including Shuffle Tech, Aces Up, Poydras, and DigiDeal, from selling an
automatic card shuffler product called the DigiShuffle.  Shuffle Tech, Aces Up, and Poydras claim to have
been harmed because they did not receive any royalties or other profits from the DigiShuffle.  We
understand that after DigiDeal failed to sell any DigiShuffles, AGS then acquired Shuffle Tech's
technology and has developed and begun marketing a new shuffler using Shuffle Tech's technology.  I
attach a copy of the complaint for your reference.

AGS's documents relating to its transaction with Shuffle Tech, and its shuffler that uses Shuffle Tech
technology, are therefore directly relevant to this litigation on both causation and damages issues.
Among other things, if AGS has stepped into the shoes of DigiDeal, then Shuffle Tech has not been
damaged by DigiDeal's failure.

Scientific Games attempted to serve narrowly tailored discovery requests, seeking only 7 categories of
documents.  However, Scientific Games is willing to confer with you about ways to narrow the requests to
minimize whatever burden AGS believes may exist.

In addition, there is a protective order in Case No. 1:15-cv-03702, attached here for your reference.
Please advise whether AGS will withdraw any of its objections and produce documents pursuant to the
protective order.  Given the centrality of this issue, we will be pursuing this through a meet-and-confer
and, if necessary, a ruling by the court, but we must have the documents we have requested.

Timothy O'Reilly
December 19, 2016
Page 2

In addition to the attached, the plaintiffs in this case have identified a number of current and former AGS employees as fact witnesses in this case:  Nile Konichek (former); Jeff Kowalchuk (former); David Lopez (current); Mike Skvorzov (current).  We will be subpoenaing these persons for documents and depositions shortly.  We wanted to let you know that, as a courtesy, and inquire whether you are interested in accepting service on any of their behalf, and whether you represent the former employees.  If so, please advise.

We are available to meet and confer at most times this week.  Please let us know when you are available.

Best personal regards.

Sincerely,
David Jimenez-Ekman

353 N. CLARK STREET CHICAGO, IL 60654-3456

# JENNER&BLOCK LLP

December 29, 2016

David Jimenez-Ekman
Tel +1 312 923 2683
Fax +1 312 840 7683
DJimenez-Ekman@jenner.com

Timothy O'Reilly
235 South Maryland Parkway
Las Vegas, NV 89101

Re:     Scientific Games's Subpoena to AGS in *Shuffle Tech et al. v. Scientific Games et al.*, Case No.
        1:15-cv-03702 (N.D. Ill.)

Dear Mr. O'Reilly,

I write to follow up on our meet and confer on December 26, 2016, regarding Scientific Games's
subpoena to AGS in the above-captioned suit (the "Illinois antitrust litigation").  As you requested, we
contacted Plaintiffs' counsel to inquire whether we could provide you with the portions of Plaintiffs'
interrogatory responses that regard AGS.  Plaintiffs' counsel agreed that we may do so, provided that we
disclose these interrogatory responses to you under the Protective Order as "Highly Confidential."  We
provided you with a copy of the Protective Order on December 19, 2016.  In that Protective Order, "Highly
Confidential" information is defined as: "information within the scope of Rule 26(c)(1)(G) that is current or
future business or technical trade secrets and plans more sensitive or strategic than Confidential
information, the disclosure of which is likely to significantly harm that person's competitive position, or the
disclosure of which would contravene an obligation of confidentiality to a third person or to a Court."
Protective Order ¶ 2.c.  Absent written permission from the producer of the information, "Highly
Confidential" information may only be disclosed to: (a) the outside counsel of record to a party to the
Illinois antitrust litigation; (b) a stenographer and videographer recording testimony concerning the
information; (c) under certain circumstances set out in the Protective Order, experts, constants, and their
staff employed for purposes of the Illinois antitrust litigation; and (d) the Court presiding over the Illinois
antitrust litigation.  Protective Order ¶ 4.c.

Accordingly, we ask that you not share the attached excerpt of Plaintiffs' interrogatory response with your
client. I also am re-attaching the Protective Order here for your reference.  We look forward to discussing
the subpoena with you further on January 4, 2017, at 1:30 PST.

Best personal regards.

Sincerely,

/s/ David Jimenez-Ekman

David Jimenez-Ekman

# O'REILLY LAW GROUP, LLC

A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

325 SOUTH MARYLAND PARKWAY
LAS VEGAS, NEVADA 89101-5300
TELEPHONE: (702) 382-2500    FACSIMILE: (702) 384-6266
www.oreillylawgroup.com

December 30, 2016

Caroline L. Meneau, Esq.      (VIA email to CMENEAU@JENNER.COM)

David Jimenez-Ekman, Esq.   (VIA email to DJimenez-Ekman@jenner.com)

Jenner & Block LLP

353 N. Clark Street

Chicago, Illinois 60654-3456

Re:   **AGS LLC's Supplemental Responses to Requests No. 2, 3, 4 & 7** of Defendants
Scientific Games Corp., et al.'s Subpoena to Produce Documents, Information, or Objects
or to Permit Inspection of Premises in a Civil Action; Case No. 1:15-cv-03702
Our File No.:   32431-00001

Dear Ms. Meneau and Mr. Jimenez-Ekman:

Consistent with our follow up telephone call regarding Third-Party Respondent AGS LLC's
Response to Defendants' Subpoena to Produce Documents, Information, or Objects or to Permit
Inspection of Premises in a Civil Action, please find AGS LLC's ("AGS") Supplemental
Responses to Requests for Production Nos. 2, 3, 4 and 7 as follows:

**REQUEST FOR PRODUCTION NO. 2:**

*All Documents referring to or reflecting any Communications between You and Derek
Webb or Hannah O'Donnell.*

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

In addition to the General Objections set forth in Third-Party Respondent AGS LLC's
Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 2

Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 2:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting documents "referring to or reflecting" any communications between AGS, Derek Webb or Hannah O'Donnell. Such documents and communications may, in fact, contain privileged communications and/or documents pursuant to the attorney work-product doctrine.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested.

AGS further objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS. All such documents and information will not be produced.

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 3

However, without waiving any of the general or specific objections set forth above, AGS has performed an electronic search of the email databases for americangamingsystems.com and playags.com. This search encompassed a time frame in excess of four years beginning October 12, 2012 and ending November 30, 2016, as follows: 1) emails with the word webb in the email address in the "to" or "from" fields; 2) emails with the word o'donnell in the email address in the "to" or "from" fields; and 3) emails with the word odonnell in the email address in the "to" or "from" fields. This search was performed without regard to whether letters in the search terms were capitalized or not. As a result of this search, responsive documents Bates stamped AGS200001 through AGS200015 were produced. As to the search including the word "webb", a substantial amount of emails were identified and not responsive due to the common nature of the name. Therefore, the production was limited to those which included the term "Derek."

**REQUEST FOR PRODUCTION NO. 3:**

> *All Documents referring or relating to Your acquisition of any assets of Plaintiffs or DigiDeal.*

> <u>**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**</u>

In addition to the General Objections set forth in Third-Party Respondent AGS LLC's Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 3:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS as the request is asking for documents that are more accessible, to the extent discoverable, to Plaintiffs who initiated this action or to DigiDeal.

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 4

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs who initiated this lawsuit.

AGS further objects to this document request as requesting "All documents referring to or relating to" AGS' acquisition of any assets of Plaintiffs or DigiDeal. Such documents and communications may, in fact, contain privileged communications and/or documents pursuant to the attorney work-product doctrine or other proprietary information, including propriety information of DigiDeal that cannot be disclosed.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested. AGS objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS or DigiDeal. All such documents and information will not be produced.

Without waiving any general or specific objection set forth above, AGS has performed an electronic search of the email databases for americangamingsystems.com and playags.com. This search encompassed a time frame in excess of four years beginning October 12, 2012 and ending November 30, 2016 and included emails with the word digideal in the email address in the "from" field. This search was performed without regard to whether letters in the search terms were capitalized or not. As a result of this search, see documents Bates stamped AGS300001

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 5

through AGS300014 attached hereto and marked Highly Confidential consistent with the Protective Order [Doc.66] and with the understanding counsel for Scientific Games has confirmed it will not take the position that any AGS production pursuant to this Protective Order will subject AGS to the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division, in regard to any disputes in regard to this Subpoena. No documents are being withheld as a result of this search except for certain documents reflecting DigiDeal, which AGS is awaiting confirmation from DigiDeal that is has no issue with AGS producing. These documents are marked as DIGIDEAL CONFIDENTIAL DOCUMENTS and Bates stamped AGS300015 through AGS300103.

**REQUEST FOR PRODUCTION NO. 4:**

*All Documents referring or relating to the DigiShuffle.*

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the General Objections set forth in Third-Party Respondent AGS LLC's Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 4:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS as the request is asking for documents that are more accessible, to the extent discoverable, to Plaintiffs who initiated this action.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting "All documents referring to or relating to" the DigiShuffle. Such documents and communications may, in fact, contain

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 6

privileged communications and/or documents pursuant to the attorney work-product doctrine or other proprietary information, including that of DigiDeal, which cannot be disclosed.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested. AGS objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS. All such documents and information will not be produced.

Without waiving any general or specific objection set forth above, AGS has performed an electronic search of the email databases for americangamingsystems.com and playags.com. This search encompassed a time frame in excess of four years beginning October 12, 2012 and ending November 30, 2016 and included emails with the word DigiShuffle in all fields. This search was performed without regard to whether letters in the search terms were capitalized or not. As a result of this search, responsive documents Bates stamped AGS400001-AGS400106 are attached.[1] In addition, certain documents within this production have been marked Highly Confidential consistent with the same understanding set forth in response to request for production No. 3. Furthermore, certain documents within this production have been redacted as they include communication with counsel which are protected by the attorney-client privilege and/or work-product doctrine. Based upon the search, certain documents are currently being

_____

[1] Bates stamped documents AGS400011 and AGS400012 have the same attachments, and in an attempt to prevent duplication, were only produced one time.

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 7

withheld based upon the attorney-client privilege, correspondence on which Shuffletech was included and therefore more accessible to Plaintiffs, documents protected by the Common Interest Privilege and includes communication between AGS counsel and counsel for Shuffletech, and correspondence which is, among other things, a trade secret and/or confidential research and development pursuant to FRCP 45.

**REQUEST FOR PRODUCTION NO. 7:**

*All Documents referring or relating to the '982 Patent or the '935 Patent.*

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to the General Objections set forth in Third-Party Respondent AGS LLC's Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 7:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting "All Documents referring or relating to" the '982 Patent or the "935 Patent. Such documents and communications contain privileged communications and/or documents pursuant to the attorney work product doctrine.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested. AGS objects to this request on the ground

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 8

that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS.

Without waiving any general or specific objection set forth above, see Bates stamped documents AGS700001- AGS700042 attached hereto.

Very truly yours,

O'REILLY LAW GROUP, LLC

Timothy R. O'Reilly, Esq.

TOR:fr

Enclosures:

AGS300001 - AGS300014

AGS400001 - AGS400106

AGS700001- AGS700042

353 N. CLARK STREET CHICAGO, IL 60654-3456

J E N N E R & B L O C K LLP

January 24, 2017

David Jimenez-Ekman
Tel +1 312 923 2683
Fax +1 312 840 7683
DJimenez-Ekman@jenner.com

Timothy O'Reilly
John F. O'Reilly
325 S. Maryland Parkway
Las Vegas, NV 89101

Re:    Shuffle Tech v. Scientific Games, Case No. 1:15-cv-03702 (N.D. Ill.)

Dear Tim and John:

We write to provide an omnibus proposal for simplifying the outstanding discovery due from AGS and its employees in *Shuffle Tech v. Scientific Games*, Case No. 1:15-cv-03702 (N.D. Ill.) (the "Shuffle Tech antitrust matter.") As we have discussed, AGS and its employees have information that is relevant and discoverable in the Shuffle Tech litigation, particularly as it relates to the damages mitigation efforts of AGS's contractual counterparties, and we are prepared to file a motion to compel if necessary. However, in an attempt to narrow and simplify the outstanding discovery, we offer the following proposal:

- Scientific Games will withdraw its individual deposition subpoenas for David Lopez, Mike Skvorzov, and Matt Pijnappels if these witnesses make a written representation that they do not intend to testify at trial or by declaration or affidavit in the *Shuffle Tech* antitrust matter. Through Paul Weiss, the witnesses have already suggested they may be willing to make this commitment.

- Instead, AGS will provide one or more Rule 30(b)(6) witness to testify on the topics identified in the attached subpoena.

- Scientific Games will narrow its document subpoena to AGS to include only the following documents:

  o Documents sufficient to show the contractual relationship, if any, between AGS and DigiDeal, Shuffle Tech, Aces Up, and/or Poydras-Talrick Holdings;

  o Documents sufficient to show AGS's sales projections for any casino automatic card shufflers covered by AGS's agreement with Shuffle Tech and/or the sales of which will result in any compensation to Shuffle Tech;

  o Documents sufficient to show AGS's current and projected costs for manufacturing any casino automatic card shufflers covered by AGS's agreement with Shuffle Tech and/or the sales of which will result in any compensation to Shuffle Tech;

January 24, 2017
Page 2

    o   Documents sufficient to show when any casino automatic card shufflers covered by AGS's agreement with Shuffle Tech and/or the sales of which will result in any compensation to Shuffle Tech became or will be available for sale, and in what quantity;

    o   Documents sufficient to show all payments, royalties, or other financial transfers from AGS to DigiDeal, Shuffle Tech, Aces Up, and/or Poydras-Talrick Holdings;

    o   Documents sufficient to show all projections for future payments, royalties, or other financial transfers from AGS to DigiDeal, Shuffle Tech, Aces Up, and/or Poydras-Talrick Holdings.

- Any document produced by AGS may be designated as Highly Confidential (attorneys' eyes only) pursuant to the Protective Order in the Shuffle Tech antitrust matter, and we are willing to cooperate to provide any other needed assurances that the documents will be treated confidentially and will not be available to Scientific Games' internal personnel.

We hope that we can reach an agreement along these lines. For your information, on Friday, Judge Kennelly, the judge in the antitrust litigation in Chicago, extended deposition discovery through February 22, 2017. We still need to resolve the issues between our clients promptly, and we can be available for a conference at any mutually convenient time today, tomorrow or Wednesday. As we consider ourselves to be at issue already as a result of our last call, we will plan to file our motion to compel later this week aif we have not reached an agreement.

We look forward to hearing from you.

Best personal regards.

Sincerely,

David Jimenez-Ekman

# O'REILLY LAW GROUP, LLC

A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

325 SOUTH MARYLAND PARKWAY
LAS VEGAS, NEVADA 89101-5300
TELEPHONE: (702) 382-2500   FACSIMILE: (702) 384-6266
www.oreillylawgroup.com

January 26, 2017

Sent via Email to DJimenez-Ekman@jenner.com

David Jimenez-Ekman, Esq.
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois  60654-3456

Re:   AGS, LLC
      Shuffle Tech v. Scientific Games, Case No. 1:15-cv-03702

Dear David:

Please let this confirm receipt of your correspondence dated January 24, 2017 (the "Correspondence") in regard to the above-referenced litigation.  We reserve any and all rights to further respond, including setting forth additional formal objections, to the extent this is yet another separate and distinct subpoena to AGS seeking additional material.  We note that an AGS subpoena was issued and served apparently to AGS' Resident Agent the day before the Correspondence without any notice to us.  For the reasons discussed below, we request that the subpoenas issued this week, and previously to AGS, be withdrawn immediately.  We can be available for a meet and confer on Friday, January 27, 2017 at 11:00 a.m. PST if you believe it is necessary after review of this letter.

As an initial matter, we believe it is important to clear up the erroneous statement in the Correspondence that outstanding discovery is due from AGS and its employees.  Although it has been extremely burdensome as well as costly, AGS has complied with any and all of its duties and obligations in response to the third party subpoena previously served upon it by Scientific Games Corp. ("SGC").  As you know, SGC indicated weeks ago that, if it believed it was necessary to file a Motion to Compel as a result of AGS's responses, you were immediately going to file such a Motion in the United States District Court, District of Nevada.  Since a Motion was not filed, it was our understanding that SGC concluded it was satisfied with AGS' responses.

Now, apparently that is not the case from your most recent letter of January 24, 2017 where you have indicated that the subpoena of late November 2016 is not withdrawn but could be narrowed to a new subpoena that you attached as long as our client agrees to a long list of conditions.

# O'REILLY LAW GROUP, LLC
### A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

David Jimenez-Ekman, Esq.
January 26, 2017
Page 2

Unfortunately, in lieu of filing a Motion, SGC has apparently issued (as noted above) yet another third party subpoena with dates in the immediate future that have not been discussed with us or agreed upon by AGS. As a result, again, if you intend to attempt to move forward with these dates without the issues being resolved, then let us know upon receipt of this letter so we can file the necessary motion(s).

AGS will continue to comply with its obligations in response to third party subpoenas but does believe that SGC is now attempting to harass AGS as well as current and former employees. As SGC is well aware, a substantial amount of the information sought by SGC's subpoena is exactly the type of trade secret and commercially sensitive information FRCP 45 is intended to protect. Any AGS card shuffler product is still in the testing and development phase and is not for commercial distribution. AGS cannot and should not be required to provide such information to SGC who is a direct (if not only) competitor in the casino card shuffler industry in the U.S. to AGS. AGS is not obligated to educate and facilitate your client's monopolistic and (at least according to the Plaintiffs) anticompetitive behavior. Furthermore, SGC is well aware that it is not AGS' duty or obligation to mitigate Plaintiffs' damages in the Litigation.

As indicated below, AGS understands you have the September 2015 Intellectual Property Purchase Agreement between AGS and Shuffle Tech. You also have the July 29, 2015 Letter of Intent to Proceed with Definitive Agreement. To the extent you do not, see attached Highly Confidential AGS300104-AGS300119. We have also enclosed copies of the payments pursuant to the agreement. On that point, have you had any discussions with the Plaintiff, or has any decision been made by the Court as to how to address the damage phase of the trial particularly regarding what funds, if any, may or may not be received in the future pursuant to the Intellectual Property Purchase Agreement? As indicated, any card shuffler by AGS is still in the testing and continued development process.

Furthermore, AGS is not aware of any AGS employee not complying with their duties in response to yet another third party subpoena. If SGC has such a claim, please let us know the details of the claim or claims. We remind you that AGS is our only client in this matter at this time.

As it relates to your new document request to AGS, it appears you have now conceded, as we suggested some time ago, that certain documents can and should be obtained from Plaintiff. However, your requests are still extremely vague, broad and seek information that include, among other things, AGS' confidential trade secrets, confidential research, development and commercial information. AGS objects to the documents requested sufficient to show sales projections, projected costs, when automatic card shufflers will be available for sale and in what quantity, and projected future payments. Any financial projections are irrelevant and speculative as it relates to the subject litigation. This is an analysis more appropriate for an expert (or your client that has the monopoly in the shuffler market). Furthermore, AGS objects that the harm,

# O'REILLY LAW GROUP, LLC
### A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

David Jimenez-Ekman, Esq.
January 26, 2017
Page 3

prejudice and burden far outweighs SGC's need and relevance for the documents identified in the subpoena and the deposition of AGS' 30(b) witness. Having said that, in an attempt to work amicably, we want to provide the following to you to clear up certain requests:

1.  As to the contractual relationship between AGS and DigiDeal, a formal contractual relationship does not exist. As to payments to DigiDeal, AGS has already provided payments made to DigiDeal in response to the previous subpoena. This information was provided out of good faith efforts to comply with the requests despite the fact that the payments do not deal with card shufflers. See Highly Confidential AGS300001-AGS3000014;

2.  As to the contractual relationship between AGS and Shuffle Tech, as indicated above, you have already confirmed receipt of the September 2015 Intellectual Property Purchase Agreement and the July 29, 2015 Letter of Intent to Proceed with Definitive Agreement. If not accurate, see attached. AGS does not have another contract with Shuffle Tech. AGS does not have any other dealings with any of the other Plaintiffs in regard to card shufflers other than what has been provided;

3.  As to the contractual relationship between AGS and Aces Up, any contractual relationship does not deal with card shufflers and, therefore, is not discoverable in this matter; and

4.  As to Poydras-Talrick Holdings, no contractual relationship or payments with AGS occur related to any card shuffler (other than those certain payments made to them as indicated in the September 2015 Intellectual Property Purchase Agreement).

It is clear by review of the Correspondence that you have no need or desire to depose AGS' current or former employees including David Lopez, Mike Skvorzov, Matt Pijnappels, Jeff Kowalchuk or Nile Konicek as it relates to anything associated with AGS. SGC appears to be attempting to use these individuals as a negotiation tool in attempts to get confidential and propriety information in regard to AGS. Much of this information, if disclosed by these individuals, could put them in violation of certain confidentiality agreements.

Consequently, please confirm you will no longer seek documents or depositions from them until, at the very least; the issues between AGS and SGC with regard to the third party subpoena practice in the litigation are agreed upon or determined by the Court. Furthermore, please confirm you will withdraw the Subpoenas most recently issued to AGS as well as the subpoena of late November, 2016 or stay any demand for production or appearance until the unresolved issues can be settled by the Court.

# O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

David Jimenez-Ekman, Esq.
January 26, 2017
Page 4


To be clear, it is our understanding that at present, there are TWO document subpoenas pending which were served directly on AGS.  The first was in late November 2016 and the second served on January 23, 2017.  To be clear, we request that ALL subpoenas be withdrawn immediately and without condition.

We look forward to hearing from you.


Very truly yours,

O'REILLY LAW GROUP, LLC

Timothy R. O'Reilly, Esq.


TOR:fr

Enclosures:  AGS300104-AGS300119

## INTELLECTUAL PROPERTY PURCHASE AGREEMENT

THIS INTELLECTUAL PROPERTY PURCHASE AGREEMENT ("Agreement") is entered into on this ___ day of September, 2015 (the "Effective Date"), by and between Shuffle Tech International, LLC, an Illinois limited liability company ("Seller"), on one hand, and AGS, LLC, a Delaware limited liability company ("Buyer"), on the other hand, and Poydras-Talrick Holdings LLC, a Delaware limited liability company and Licensee of Seller whose prior License rights to the Patents terminate upon execution of this Agreement ("Terminated Licensee")

WHEREAS, Seller represents and warrants it is the sole and exclusive owner of all rights and title in the portfolio of patents and all rights and interests to automatic card shuffling machines intended for use in casinos identified on Schedule A, subject to exclusive, royalty-free license-back for Shuffle Tech's continued use of the patents for shuffling machines intended for use by private consumers ("the Patents"); and

WHEREAS, Buyer wishes to purchase and Seller wishes to sell to Buyer all right, title and interest in and to the Patents (as defined in paragraph 1); and

WHEREAS, Buyer and Seller intend to cooperate in the engineering development, start of manufacturing, and commercialization of at least the first single-deck flush mounted shuffler to be developed by AGS,

NOW, THEREFORE, for the good and valuable consideration, the sufficiency of which is hereby acknowledged, Seller and Buyer hereby agree as follows.

1.    Transfer of Patents. Seller hereby sells, assigns, and transfers to Buyer: the entire right, title and interest in and to the patents and patent applications identified on Schedule A, including without limitation, any continuations, divisions, continuations-in-part, reissues, reexaminations, extensions, foreign equivalents thereof, and the subject matter of all patent claims which may be obtained therefrom, except for any claims for past damages for infringement and any past, present or future proceeds or damages flowing from or attributable to any breach or interference with the Master Patent and Technology License and Sub-License Agreement between Seller and Poydras-Talrick Holdings LLC and Digideal Corporation dated September 13, 2012 and any amendments thereto including the First Amendment dated July 22, 2013, and the separate "Washington Agreement" dated February 4, 2014, including, but not limited to, any damages that may be obtained by litigation against Scientific Games Corporation a/k/a Bally Technologies, Inc. a/k/a SHFL Entertainment Inc., a/k/a Shuffle Master ("the SHFL Litigation") or any settlement of such litigation, and also subject to an exclusive royalty-free license back of the patents for use by Shuffle Tech and its successors/assigns to continue to manufacture and sell consumer grade automatic card shuffling machines (i.e. shuffling machines selling to private consumers for, e.g. $100-$800 and not suitable for use by casino customers of AGS) (collectively, the "Patents"). Buyer shall be entirely responsible for payment of all maintenance fees and costs for prosecution of all patents and pending patent applications.

2.    Development of AGS Shuffler. Seller will apply up to $750,000 of the proceeds from this sale to fund development by Product Development Technologies, Inc. ("PDT") of a single-

*Page 1 of 10*

HIGHLY CONFIDENTIAL    AGS300104

deck flush mounted automatic shuffler from PDT's proposed development phases 0-5, through completion of three final "looks like" prototypes ready for testing in casinos and/or submission to regulatory agencies and for transfer to the manufacturer-supplier for production; Buyer is responsible for all further costs for development and manufacturing. Buyer is responsible for all development costs for subsequent card shuffler models.

3.   <u>Recordations</u>. Upon delivery of the final payment due from Buyer to Seller, Seller authorizes the Commissioner of Patents (and any relevant foreign equivalent) to record Buyer as the owner of the Patents.

4   <u>Purchase Price/Payment</u>.

    (a)   The Purchase Price for this asset acquisition will be:

            **First Payment.** A total of Three Million Two Hundred and Fifty Thousand (U.S.) Dollars ($3,250,000) in cash , payable within three (3) business days of the full execution of this Agreement via bank wire to Seller and Terminated Licensee according to the instructions of paragraph 4(b) below:

            **Second Payment (Earnout).**

            The Buyer shall pay Seller five times (5x) EBITDA for the twelve (12) month period commencing nineteen (19) months after the Effective Date of the Agreement and ending thirty (30) months after the Effective Date of the Agreement.   For the purpose of this Agreement, EBITDA is defined as the Earnings from the sale/lease and service/support of automatic card shufflers before Interest, Taxes, Depreciation, and Amortization expenses, as derived from GAAP based amounts. By way of example, if the EBITDA for the twelve (12) month period described above is determined to be $4,000,000, then Buyer would pay Sellers five (5) times $4,000,000 or $20,000,000.  This payment shall be delivered to Seller within 45 days from the last day of the twelve (12) month period described above.

            **Third Payment (Royalty).** A royalty payment of <u>Twenty Percent (20%) of annual EBITDA</u> (as defined in paragraph 4(a)(2) above) associated with the purchased assets of Shuffle Tech for a period of thirty (30) months following the execution date of this Agreement. This payment will be calculated and paid prior to the Second Payment calculation (and thus, potentially, impacting EBITDA for the Second Payment).   Any royalty payments due from Buyer are to be paid thirty (30) days after the close of the prior month in which Buyer receives payment for a unit from the end-user.   All royalty payments shall be made in U.S. dollars. Buyer shall be responsible for any taxes, fees, licensing requirements, licensing expenses, or any other costs and expenses associated with the card shufflers and Seller shall be responsible for taxes related to its income from the royalty payments.



**HIGHLY CONFIDENTIAL   AGS300105**

(b)   Payment by AGS shall be made as follows:

(1)   First Payment(s) totaling $3,250,000 shall be made as a total of $2,446,105 directly to Seller and a total of $803,895 to Terminated Licensee, and Seller acknowledges and agrees that the Seller is solely responsible for allocating the Payment among itself and any third parties, including funding of Phases 0-5 for engineering and design development of the single-deck flush mounted automatic card shuffler by PDT, Inc. described in paragraph 2 herein, and that Buyer shall have no liability to Seller or any third party with respect to such allocation.

For Payments to Seller by Wire Transfer or ACH:

**Account**
Bank Name:          JPMorganChase
Bank Address:       1551 N. Kingsbury Street, Chicago, IL 60642
ABA Routing#:       071000013
Account Title:      Shuffle Tech International LLC
Account Number:     717069116

For Payments to Terminated Licensee:

Brookhill Corp. Managing Partner
f/b/o Poydras-Talrick Holdings LLC
% Knowles Cornwell
9456 Thornberry
Dallas, TX 75220

If payment is made to Terminated Licensee by Wire Transfer or ACH:

Account
Bank Name:          Comerica Bank
Bank Address:       Dallas, TX
ABA Routing#:       111000753
Account Title:      Brookhill Corporation f/b/o Poydras-Talrick
                    Holdings LLC
Account Number:     1881314379

(2)   Second Payment (Earnout) and Third Payments (Royalties) payable to Seller shall be made 51.5% to Seller and 48.5% to Terminated Licensee.

Buyer shall maintain complete and accurate records relating to the rights and obligations under this Agreement and any amounts payable to Seller in relation to this Agreement, which records shall contain sufficient information to permit Seller to confirm the accuracy of any reports delivered to Seller and compliance in other respects with this

Page 3 of 10

HIGHLY CONFIDENTIAL     AGS300106

Agreement. Buyer shall retain such records for at least five (5) years following the end of the calendar year to which they pertain, during which time Buyer, or Buyer's appointed agents, shall have the right, at Buyer's expense, to inspect such records during normal business hours to verify any reports and payments made or compliance in other respects under this Agreement.

5.   Release by Seller. Seller, for itself and its successors, assigns and heirs, hereby fully release and forever discharge each of Buyer, and its directors, officers, employees, shareholders, attorneys, agents, representatives, predecessors, successors, and assigns from any and all Claims that such Seller has or ever had on or prior to the Effective Date. Claims that arise after the Effective Date with respect to acts or omissions occurring after the Effective Date are not waived. The word "Claims" (when used in this Agreement with an initial capital letter) shall mean any and all claims, demands, damages, debts, liabilities, accounts, actions and causes of action, of any kind and nature, whether known or unknown, suspected or unsuspected, contingent or not contingent, throughout the world; provided, nothing in this paragraph 5 constitutes a release or waiver by Seller relating to any actual or potential breach of this Agreement, or any representation or warranty contained in this Agreement, by Buyer.

6.   Release by Buyer. Buyer, for itself and its successors, assigns and heirs, hereby fully releases and forever discharges Seller and Terminated Licensee, and its and their directors, officers, employees, shareholders, attorneys, agents, representatives, predecessors, successors, and assigns from any and all Claims that Buyer has or ever had on or prior to the Effective Date; provided, nothing in this paragraph 6 constitutes a release or waiver by Buyer relating to any actual or potential breach of this Agreement, or any representation or warranty contained in this Agreement, by Seller or Terminated Licensee. Claims that arise after the Effective Date with respect to acts or omissions occurring after the Effective Date are not waived. Seller and Terminated Licensee shall not be liable for any costs associated with third-party patent infringement claims asserted by any third-party against Buyer after the Effective Date of this Agreement.

7.   Representations and Warranties of Seller. Seller represents and warrants to Buyer that:

(a)   Seller has the full right and authority to enter into and perform under this Agreement, and no consent of any third party is required to enter into or perform under this Agreement;

(b)   Seller has not entered into nor will enter into any agreement or other instrument, whether written or oral, in conflict with this Agreement;

(c)   Seller solely and exclusively, owns the entire right, title and interest in and to the Patents, free and clear of any liens and encumbrances, and Seller has not transferred any rights in or to the Patents, except the aforementioned Master Patent and Technology License and Sublicense Agreement, and the "Washington Agreement" and amendments thereof, which are now terminated, and the security interest granted to Kerr IP Group LLC, which terminates upon payment of their outstanding invoices from the First Payment;

(d)   the listed items in Schedule A constitute, as of the Effective Date, all of the issued,

HIGHLY CONFIDENTIAL   AGS300107

pending and other applications or rights of any of Seller: (i) relating to the families of the Patents and/or the priority dates of such Patents; and (ii) necessary to practice the Patents or any game described in the Patents;

(e) to the best of Seller's knowledge, the Patents are valid and enforceable;

(f) the inventor(s) identified in each Patent are the sole and legal inventor, under United States law, for such Patent;

(g) there is no litigation or claim against Seller, pending or threatened, or, to the best of Seller's knowledge, any basis therefor by any third party relating in any manner to the Patents, except with respect to pending claims between Seller and its Terminated Licensee Poydras-Talrick Holdings LLC, on the one hand, and former Sub-Licensee Digideal Corporation, whose license rights under the Sub-License Agreement and the separate Washington Agreement were previously terminated, on the other hand, and against whom Seller and Terminated Licensee have jointly asserted claims for unjust enrichment and other damages, and with whom Seller and Terminated Licensee are presently engaged in litigation;

(h) to the best of Seller's knowledge, there are no outstanding license, distribution or other agreements, whether written or oral, relating in any manner to the Patents; and

(i) Terminated Licensee Poydras-Talrick Holdings LLC consents to this Intellectual Property Purchase Agreement, terminates its license rights under all prior agreements, has amended its Master Agreement with Shuffle Tech to reflect the sale of the Patents from Seller to Buyer, and is being compensated for its prior license rights from the proceeds of the sales of the Patents pursuant to its Agreement with Seller and from the proceeds, if any, of the SHFL Litigation.

8.  **Representations and Warranties of Buyer.**  Buyer represents and warrants to Seller that:

(a) Buyer has the full right and authority to enter into and perform under this Agreement, and no consent of any third party is required to enter into or perform under this Agreement;

(b) Buyer has not entered into nor will enter into any agreement or other instrument, whether written or oral, in conflict with this Agreement; and

(c) Buyer shall make good faith commercial effort and deploy sufficient capital as required to expeditiously develop, manufacture, market, and maintain sufficient inventories of finished card shufflers as required to maximize its EBITDA from the sales/leases and service/support of automatic card shufflers using the Patents during at least the first 30 months following the close of this Agreement, to the extent of market demand for its automatic card shufflers.

(d) The execution and performance of this Agreement does not violate any law, order, regulation, judgment applicable to Buyer and there is not judicial or administrative actions, proceedings or investigation pending or threatened that will effect this agreement or AGS's ability to perform under this agreement.

9.  **License to Buyer.**  To the extent Seller owns or controls, now or in the future, any patent,

HIGHLY CONFIDENTIAL   AGS300108

trademark, service mark or other intellectual property (except for any Patents) necessary for Buyer to practice the Patents, then Seller hereby grants Buyer a nonexclusive, perpetual, irrevocable, fully-paid, royalty-free, worldwide license to practice such Patents.

10. Non-Compete. Seller, for itself, its principals, shareholders, executives, employees, agents, successors, servants, and assigns agrees that following the Effective Date, Seller, will not compete with Buyer anywhere in the world for the invention, development, ownership, operation, distribution, purchase or license of any automatic card shuffling machines or table game products or gaming-related intellectual property, except with respect to consumer grade automatic card shuffling machines (i.e. shuffling machines selling to private consumers for, e.g. $100-$800 and not suitable for use by casino customers of Buyer) for the life of the Patents.

11. Cooperation and Further Assurances. Seller shall take all further action and provide Buyer, its successors, assigns and legal representatives, all cooperation and assistance at Buyer's request and expense relating to: (i) the preparation, prosecution, enforcement or defense of any Patents in connection with any action or proceeding that may arise in connection with any of Patents (including, without limitation, any litigation, administrative hearing, interference, opposition, reexamination, reissue, infringement or other proceeding); (ii) the procurement of any additional patent protection that Buyer may deem appropriate which may be secured under the laws now or hereafter in effect in the United States or any other country; (iii) in the implementation or perfection of this Agreement or the rights transferred hereunder; and (iv) Buyer's obligations under gaming law or regulations. Seller's cooperation shall include, without limitation, the execution and delivery of any and all affidavits, declarations, oaths, exhibits, assignments, powers of attorney or other documentation as may be reasonably requested by Buyer, and the provision of testimony as to any facts relating to the Patents, or this Agreement. Seller agrees to sign, concurrently with the execution hereof, all required recordal documents. In the event of any inconsistency, ambiguity, or conflict between this Agreement and any of the recordal documents, this Agreement shall govern. Seller hereby appoints Buyer as each of their attorney-in-fact to execute any documents in order to implement the intent of this Agreement, including any documents with any patent office in order to confirm and/or implement the transfer of the Patents to Buyer, as contemplated in paragraph 1 hereof. Buyer shall take all further action and provide Seller, its successors and assigns and legal representatives, all cooperation and assistance at Seller's request and expense relating to any action or proceeding that may arise in connection with the aforementioned Master Patent Technology License and Sub-License Agreement and any amendments thereto as well as any litigation against Scientific Games Corporation or its subsidiaries or affiliates. Buyer's cooperation shall include, without limitation, the execution and delivery of all affidavits, declarations, oaths, exhibits, assignments, powers of attorney or other documentation as may be reasonably requested by Seller in connection with such litigation, and the provision of testimony as to any facts relating to the Patents, or this Agreement in connection with that litigation.

12. Arbitration. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Las Vegas, Nevada, or another location agreed to by the



HIGHLY CONFIDENTIAL   AGS300109

parties. The arbitration shall be administered by ADR Services, Inc. ("ADR Services"). The arbitration shall be held before a sole arbitrator and shall be binding with no right of appeal. The arbitration shall be conducted pursuant to the ADR Services, Inc. Standard Arbitration Rules. The arbitration shall be commenced by filing a demand for arbitration with the administrator of ADR Services and serving the demand on the opposing party. The responding party may file a response and/or a counter-claim within fifteen (15) calendar days. If no response is filed, all the allegations of the demand shall be deemed denied. The parties shall select an arbitrator by mutual agreement through ADR Services within thirty (30) calendar days of the date the demand for arbitration is filed. If the parties are unable to agree on the selection of an arbitrator within such time, the administrator of ADR Services, Inc. shall select an independent arbitrator. The costs of the arbitration, including the arbitrator's fees, shall be borne equally by the parties to the arbitration, unless the arbitrator orders otherwise.

13.   Counterparts: Electronic Signatures. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same agreement. Each party may rely on electronic signature pages as if such signatures were originals.

14.   Binding Nature. This Agreement shall be binding on each of Seller's and Buyer's heirs, successors, and assigns.

15   No Agency, Partnership or Employer Relations. In no event shall any party to this Agreement be deemed the agent, employer, employee, partner or joint venturer of any other party to this Agreement.   No party shall have any right to bind any other party, nor shall any party represent to any third party anything to the contrary.

16.   Entire Agreement. This Agreement, including its schedules, contains the complete and entire expression of the agreement between the parties hereto and supersedes all prior and contemporaneous discussions, statements, and writings, and agreements, in each case whether oral or written. Each of Seller and Buyer hereby agree and acknowledge there are no agreements or understandings of any nature, oral or written, regarding this Agreement apart from those contained in this Agreement, and Seller agrees and acknowledges that no promises or agreements not contained in this Agreement have been made or offered by Buyer.

17.   Opportunity to Review and Consult with Counsel. Buyer and Seller acknowledge and agree that it has had the full opportunity to read and review this Agreement prior to entering into it, and to consult with an attorney (which each party may or may not actually have done, in its sole discretion).

18.   Confidentiality. Each of Seller, Buyer, and Terminated Licensee shall make commercially reasonable best efforts to keep this Agreement strictly confidential and shall not disclose this Agreement or any of its terms or conditions except: (a) as required by law, statute, rule, or regulation; (b) as expressly authorized in writing by the other parties hereto that are not seeking to disclose; (c) as may be reasonably necessary to perform, exercise or enforce its rights and obligations hereunder; or (d) as may be reasonably necessary to its financial and legal advisors.



HIGHLY CONFIDENTIAL     AGS300110

*[SIGNATURE PAGE TO FOLLOW]*

Page 8 of 10

HIGHLY CONFIDENTIAL    AGS300111

**IN TESTIMONY WHEREOF,** Seller and Buyer have caused this Agreement to be signed and executed by the undersigned officers thereunto duly authorized this 10⁴ day of September, 2015.

**SELLER:**
Shuffle Tech International, LLC,
an Illinois limited liability company

By: Rick Schultz
Its:  Manager/CEO

**BUYER:**
AGS, LLC,
a Delaware limited liability company

By: David Lopez
Its:  CEO

**TERMINATED LICENSEE:**
Poydras-Talrick Holdings LLC,
a Delaware limited liability company

By: Knowles Cornwell, President of
Brookhill Corporation
Its: Manager

Page 9 of 10

**HIGHLY CONFIDENTIAL    AGS300112**

**IN TESTIMONY WHEREOF,** Seller and Buyer have caused this Agreement to be signed and executed by the undersigned officers thereunto duly authorized this 10th day of September, 2015.

**SELLER:**
Shuffle Tech International, LLC,
an Illinois limited liability company

_____
By:  Rick Schultz
Its:  Manager/CEO

**TERMINATED LICENSEE:**
Poydras-Talrick Holdings LLC,
a Delaware limited liability company

_____
By: Knowles Cornwell, President of
Brookhill Corporation
Its: Manager

**BUYER:**
AGS, LLC,
a Delaware limited liability company

_____
By:  Kino Akiona
Its:  CFO

Page 9 of 10

HIGHLY CONFIDENTIAL    AGS300113

## SCHEDULE A

"Card Washer" Patent Family (Ejects Cards Into Air Within Shuffle Compartment)

| Title | Country | Type | Appl. Date/Number | | Issue Date | Number |
|-------|---------|------|-------------------|---|------------|--------|
| Card Shuffling Device/Method | USA | Utility | 5/15/08 | 12/121,484 | 12/21/10 | 7,854,430 |
| Card Shuffling Device/Method | USA | Utility | 7/1/10 | 12/828,954 | 2/7/12 | 8,109,514 |
| Card Shuffling Device/Method | USA | Utility | 12/22/10 | 12/976,181 | 12/10/13 | 8,602,416 |
| Card Shuffling Device/Method | Canada | Utility | 5/23/08 | 2687525 | | N/A |
| Card Shuffling Device/Method | EPC | Utility | 5/23/08 | 8756168.4 | | N/A |
| Card Shuffling Device/Method | Austral. | Utility | 10/29/13 | 2013232785 | | N/A |

"ST-1000" Patent Family (Emulates Hand Shuffling)

| Title | Country | Type | Appl. Date/Number | | Issue Date | Number |
|-------|---------|------|-------------------|---|------------|--------|
| Apparatus/Method For Shuffling | USA | Utility | 2/15/07 | 11/706,707 | 3/8/11 | 7,900,923 |
| Automatic Card Shuffler | USA | Design | 1/17/08 | 29/294,561 | 10/14/08 | D578,577 |
| Apparatus/Method For Shuffling | USA | Utility | 5/6/08 | 12/151,358 | 7/5/11 | 7,971,881 |
| Flush Mounting For Card Shuffler | USA | Utility | 6/16/09 | 12/485,599 | 6/9/13 | 8,480,088 |
| Automatic Card Shuffler | EU | Design | 7/2/08 | 963699 | 7/2/08 | 963699-0001 |

HIGHLY CONFIDENTIAL    AGS300114



**SHUFFLE TECH™**

July 29, 2015

Mr. David Lopez, CEO
AGS. LLC
5475 South Decatur Blvd., Suite 100
Las Vegas, NV 89118

RE:    Letter of Intent To Proceed With Definitive Agreement

Dear David,

It was a pleasure to speak with your team and to confirm AGS's intent to proceed with the card shuffler agreement. For purposes of this Letter of Intent, I have attached a DRAFT copy of the proposed "Intellectual Property Purchase Agreement" dated July 21, 2015 ("DRAFT Definitive Agreement"), substantially as we agreed in February 2015 with further modifications as discussed and agreed on July 15, plus inclusion of some technical omissions from the February draft that were identified by our attorney.

As discussed, AGS has agreed to pay $65,000 to Shuffle Tech to secure Shuffle Tech's commitment to the essential business terms of DRAFT Definitive Agreement for 45 days, through August 31, 2015, while AGS completes its due diligence process. During this time, Shuffle Tech will not solicit or accept any offers to engage in discussions with any other person or entity concerning the purchase of the Shuffle Tech patents, and will negotiate any further proposed modifications to the DRAFT Definitive Agreement in good faith. If Shuffle Tech receives any offers to engage in discussions from any other person or entity concerning the purchase of the Shuffle Tech patents and technology that are the subject of the Definitive Agreement during the 45 day period, then Shuffle Tech shall notify AGS within 24-hours of such contact and shall direct all such inquiries to AGS. This LOI does not obligate either party to enter into an IP Purchase Agreement, and until an IP Purchase Agreement is executed by both parties, neither party shall have any obligation to the other beyond the obligations expressed in this letter and any non-disclosure agreements executed between the parties. Provided that a final definitive IP purchase agreement is executed by August 31, 2015, $50,000 of the $65,000 payment will apply to the First Payment, and $15,000 will apply as AGS's agreed 50% share of the $30,000 cost of the non-infringement opinion for the proposed single-deck shuffler prepared by Kerr IP Group. If an IP purchase agreement is not executed by that date, Shuffle Tech shall have no further obligation to AGS or to refund the $65,000 payment. This LOI shall be governed in all respects by the internal laws of the State of Nevada, and no action or proceeding relating to this LOI may be brought or otherwise commenced in any court outside the State of Nevada

Please sign below to confirm your agreement to the terms of this Letter of Intent, and we look forward to beginning work together.

Sincerely,

Richard J. Schultz,
Manager/CEO

Agreed and confirmed: _____    Dated: 7/30/15
                       ~~David Lopez, CEO~~
                       Kimo Akiona, CFO

Shuffle Tech International LLC - 1440 N. Kingsbury, Suite 218 - Chicago, IL 60642



09/17/2015 02:35 PM ET
CUSTOMER ID: █████████
OPERATOR ID: MBRENNAN

**Wire Transfer Detail Report**
As of 09/17/2015

**Commercial Electronic Office®**

**Treasury Information Reporting**

Wire Service Reference Number:
0917I1B7032R000880
Wells Message Number:
150916057973
PC Reference/Confirmation Number:
000000979
Value Date:
09/17/2015
Wire Type:
495
Wire Amount:
803,895.00
Transaction Reference Number:
150916057973
USD Equivalent Amount:
803,895.00
Originator ID:
N/A
Originator Name and Address:
AGS LLC
5475 S. Decatur Blve, Ste 100,
Las Vegas, NV 89119- US
Instructing Bank Code/ID:
N/A
Instructing Bank Name and Address:
N/A
Sending Party ID:
███████████

Sending Party Name and Address:
AGS LLC
**OPERATING ACCOUNT**
**6680 AMELIA EARHART CT**
**LAS VEGAS NV 89119-3536**
Bank to Bank Info:
N/A
Beneficiary Bank Code/ID:
N/A
Beneficiary Bank Name and Address:
N/A
Originator to Beneficiary Info:
IP Purchase Agreement Shuffle Tech
executed 9/10/15

Instructed Currency/Amount:
USD/803,895.00
Exchange Rate:
1.000000
Fed/CHIPS/SWIFT Reference Number:
0917I1B7032R000880
Completed Timestamp:
09/16/2015 10:47 AM CT
Sender Reference Number:

Originating Bank Code/ID:
N/A
Originating Bank Name and Address:
N/A
Receiving Party ID:
██████████

Receiving Party Name and Address:
COMERICA BANK
DALLAS, TX
Intermediary Bank Code/ID:
N/A
Intermediary Bank Name and Address:
N/A
Beneficiary Code/ID:
N/A
Beneficiary Reference ID:
█████████

Beneficiary Name and Address:
**Brookhill Corp f/b/o Poydras-Talric**

Text:
111000753 COMERICA BANK DALLAS, TX IN15091416355389 ORG=AGS LLC 5475 S. Decatur Blve, Ste 100,Las Vegas, NV 89119-US
RFB=000000979 OBI=IP Purchase Agreement Shuffle Tech executed 9/10/15/FTR/ BNF=1881314379 Brookhill Corp f/b/o Poydras-Talric
COMPLETED TIMESTAMP 09/16/2015 10:47 AM CT

**HIGHLY CONFIDENTIAL     AGS300116**

7/31/2015               Initiate Freeform Wire - Confirmation




Contact Us   Help                                    Close

Welcome Rebecca Johnson

Wire Transfer Home
Reports
Batch Reports
File Upload

**Initiate Templated Wires**
Single Wire
Single Wire Express

**Initiate Freeform Wire**
Domestic
International
Book Transfer
Federal Tax Payment

**Pending Wires**
Awaiting Approval
Awaiting Repair
Uploaded Wires
Unsuccessful
Future Dated

**Wire Templates**
Awaiting Approval
Awaiting Repair
Copy / Modify Templates
Create Template

**Initiate Freeform Wire - Confirmation**

●  **Your sequence number is 000000948.**

You may want to print this page for your records.

Today's Date:07/31/2015
Today's Time:01:11 PM ET
Debit Account ██████ [OPERATING]
Transfer Type: Domestic
Status: ENTRD
Beneficiary: ████████ [SHUFFLE TECH INTERNATIONAL LLC]
Value Date: 07/31/2015
Execution Date: 07/31/2015
Wire Amount: 50,000.00 USD

**Save Freeform Information as New Template (optional)**
To save you time in the future you may save the previously entered data as a template. You will
be prompted to enter a name and description for the new template on a subsequent screen.

[ Save As Template ]   [ Print Page ]

[ Print Page ]

| Privacy, Security & Legal |
© Copyright 2002-2015 Wells Fargo. All rights reserved.

HIGHLY CONFIDENTIAL    AGS300117



09/17/2015 02:35 PM ET
CUSTOMER ID: ▇▇▇▇▇▇
OPERATOR ID: MBRENNAN
Commercial Electronic Office®

Wire Transfer Detail Report
As of 09/17/2015

Treasury Information Reporting

Currency: USD
Bank: 121000248
Account: ▇▇▇▇▇▇(NV)

WELLS FARGO BANK, N.A.
OPERATING

| Debit Wire Amount | Process Date Time | To: | Corresponding Bank: | Status: |
|---|---|---|---|---|
| 2,396,105.00 | 09/17/2015 07:26 AM CT | FEDWIRE<br>N/A<br>Shuffle Tech International LLC<br>717099116 | N/A | COMPLETE |

Wire Service Reference Number:
0917I1B7033R000806
Wells Message Number:
150916057655
PC Reference/Confirmation Number:
000000978
Value Date:
09/17/2015
Wire Type:
495
Wire Amount:
2,396,105.00
Transaction Reference Number:
150916057655
USD Equivalent Amount:
2,396,105.00
Originator ID:
N/A
Originator Name and Address:
AGS LLC
5475 S. Decatur Blvd, Ste 100,
Las Vegas, NV 89118- US
Instructing Bank Code/ID:
N/A
Instructing Bank Name and Address:
N/A
Sending Party ID:
▇▇▇▇▇▇
Sending Party Name and Address:
AGS LLC
OPERATING ACCOUNT
6680 AMELIA EARHART CT
LAS VEGAS NV 89119-3536
Bank to Bank Info:
N/A
Beneficiary Bank Code/ID:
N/A
Beneficiary Bank Name and Address:
N/A
Originator to Beneficiary Info:
IP Purchase Agreement Shuffle Tech
executed 9/10/15
Text:

Instructed Currency/Amount:
USD/2,396,105.00
Exchange Rate:
1.000000
Fed/CHIPS/SWIFT Reference Number:
0917I1B7033R000806
Completed Timestamp:
09/16/2015 10:46 AM CT
Sender Reference Number:
▇▇▇▇▇▇
Originating Bank Code/ID:
N/A
Originating Bank Name and Address:
N/A
Receiving Party ID:
071000013
Receiving Party Name and Address:
JPMORGAN CHASE BANK, NA
CHICAGO, IL
Intermediary Bank Code/ID:
N/A
Intermediary Bank Name and Address:
N/A
Beneficiary Code/ID:
N/A
Beneficiary Reference ID:
▇▇▇▇▇▇
Beneficiary Name and Address:
Shuffle Tech International LLC

071000013 JPMORGAN CHASE BANK, NA CHICAGO, IL IN150916435493 ORG=AGS LLC 5475 S. Decatur Blvd, Ste 100, Las Vegas, NV
89118- US RFB=000000978 OBI=IP Purchase Agreement Shuffle Tech executed 9/10/15 /FTR/ BNF=717099116 Shuffle Tech International LLC
COMPLETED TIMESTAMP 09/16/2015 10:46 AM CT

**HIGHLY CONFIDENTIAL    AGS300118**



09/17/2015 02:35 PM ET
CUSTOMER ID: ███████
OPERATOR ID: MBRENNAN

Wire Transfer Detail Report
As of 09/17/2015

Commercial Electronic Office®                                    Treasury Information Reporting

Currency: USD
Bank: ███████
Account: ███████



WELLS FARGO BANK, N.A.
OPERATING

| Debit Wire Amount | Process Date Time | To: | Corresponding Bank: | Status |
|---|---|---|---|---|
| 803,895.00 | 09/17/2015 07:26 AM CT | FEDWIRE N/A Brookhill Corp f/b/o Poydras-Talric ███████ | N/A | COMPLETE |

Page: 1
Note: Intraday information subject to change

HIGHLY CONFIDENTIAL    AGS300119

353 N. CLARK STREET CHICAGO, IL 60654-3456                    J E N N E R & B L O C K LLP

January 26, 2017                                David Jimenez-Ekman
                                                Tel +1 312 923 2683
Timothy O'Reilly, Esq.                          Fax +1 312 840 7683
John F. O'Reilly, Esq.                          DJimenez-Ekman@jenner.com
325 S. Maryland Parkway
Las Vegas, NV 89101


Re:    Shuffle Tech v. Scientific Games, Case No. 1:15-cv-03702 (N.D. Ill.)

Dear Tim and John:

I write in response to your letter of January 26, 2017. We disagree with your letter and reserve
our rights on all issues, but before we file our motion to compel, we wanted to make or reiterate
the following specific points:

First, Defendants will not withdraw their subpoenas to AGS, either the document subpoena dated
November 29, 2016, or the Rule 30(b)(6) deposition subpoena, which was properly served and
about which we informed you in our January 24 letter. To be clear, we have not served a second
document subpoena, but have served a Rule 30(b)(6) subpoena for a deposition of a corporate
representative. The deposition subpoena is narrowly directly at core issues in the *Shuffle Tech*
litigation created by your client's agreement with Shuffle Tech.

Second, we disagree that we ever indicated we were withdrawing any subpoena as to AGS or
any of its employees. After we met and conferred with you regarding document production,
your client initiated further contact with us through Paul Weiss LLP. We have been discussing a
potential resolution of the outstanding discovery from AGS and its employees with Paul Weiss.
As a professional courtesy, and to avoid unnecessary motion practice, we did not file a motion to
compel while those talks were in progress. In the meantime, as I advised you, the court granted a
short discovery extension. The talks with Paul Weiss culminated in the proposal that we made to
you on January 24, which we understand you are rejecting.

Third, the proposal in my letter is not a second document subpoena to AGS, but a very
substantial narrowing of the existing document subpoena in an attempt to reach a resolution of
our dispute and avoid unnecessary motion practice. If we cannot do so, we will pursue the
documents responsive to our original subpoena in a motion to compel.

Fourth, as we have repeatedly informed you, any information produced by AGS in this matter
may be designated as Highly Confidential (attorneys' eyes only) and we are willing to confer
about additional protections that you believe are necessary, but the fact that the information may

CHICAGO  LONDON  LOS ANGELES  NEW YORK  WASHINGTON, DC          WWW.JENNER.COM

Tim O'Reilly
Page 2

be competitively sensitive does not excuse production here.  As we have told you, your client is not an unconnected third party with some responsive information, but entered into a contract with Shuffle Tech in full view of its pending litigation, and it was foreseeable that we would need discovery on the issues we have raised when your client elected to do so.

Fifth, there has been no phasing of discovery in the *Shuffle Tech* matter, and discovery into damages is appropriate, indeed, necessary, at this time.  Plaintiffs admit that their contractual relationship with AGS is relevant to mitigation of damages.  AGS has no basis for claiming that discovery into AGS's shuffler sales projections, for which it will owe royalties to Shuffle Tech, is not relevant.

Sixth, we do not agree that the other individual depositions are unnecessary.  Defendants proposed, as a courtesy, to withdraw our deposition subpoenas to three current AGS employees (Lopez, Skvorzov, and Pijnappels) to the extent the parties were able to reach an appropriate agreement, including a written representation by those witnesses that they do not intend to testify at trial or by declaration in the Shuffle Tech matter.  As you know, Plaintiffs in this case have specifically indicated that they consider Mr. Lopzez, Skvorzov, and Pijnappels to be potential trial witnesses for Plaintiffs.  Based on that representation, we are entitled to depose them, and we will do so unless they provide the requested representations.  We did not mention Mr. Kowalchuk or Mr. Konicek in our proposal, as they are former AGS employees whom you do not represent, and we are separately communicating with Mr. Gish about our subpoena to Mr. Kowalchuk.

I urge you to reconsider your position and could talk tomorrow at the time you mention if you have any further compromise to propose.  Otherwise, we will file our motion to compel the document production tomorrow.

Best personal regards.

Sincerely,

*David Jiménez-Ekman /CLM*

David Jimenez-Ekman

# **<u>EXHIBIT 10</u>**

Dec. 30, 2016 Ltr. From Tim O'Reilly
to
Caroline Meneau and David Jimenez-Ekman

# O'REILLY LAW GROUP, LLC

A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

325 SOUTH MARYLAND PARKWAY
LAS VEGAS, NEVADA 89101-5300
TELEPHONE: (702) 382-2500   FACSIMILE: (702) 384-6266
www.oreillylawgroup.com

December 30, 2016

Caroline L. Meneau, Esq.     (VIA email to CMENEAU@JENNER.COM)

David Jimenez-Ekman, Esq.  (VIA email to DJimenez-Ekman@jenner.com)

Jenner & Block LLP

353 N. Clark Street

Chicago, Illinois 60654-3456

Re:   **AGS LLC's Supplemental Responses to Requests No. 2, 3, 4 & 7** of Defendants
      Scientific Games Corp., et al.'s Subpoena to Produce Documents, Information, or Objects
      or to Permit Inspection of Premises in a Civil Action; Case No. 1:15-cv-03702
      Our File No.:   32431-00001

Dear Ms. Meneau and Mr. Jimenez-Ekman:

Consistent with our follow up telephone call regarding Third-Party Respondent AGS LLC's
Response to Defendants' Subpoena to Produce Documents, Information, or Objects or to Permit
Inspection of Premises in a Civil Action, please find AGS LLC's ("AGS") Supplemental
Responses to Requests for Production Nos. 2, 3, 4 and 7 as follows:

**REQUEST FOR PRODUCTION NO. 2:**

   *All Documents referring to or reflecting any Communications between You and Derek
Webb or Hannah O'Donnell.*

   <u>**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**</u>

   In addition to the General Objections set forth in Third-Party Respondent AGS LLC's
Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit

# O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 2

Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 2:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting documents "referring to or reflecting" any communications between AGS, Derek Webb or Hannah O'Donnell. Such documents and communications may, in fact, contain privileged communications and/or documents pursuant to the attorney work-product doctrine.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested.

AGS further objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS. All such documents and information will not be produced.

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 3

However, without waiving any of the general or specific objections set forth above, AGS has performed an electronic search of the email databases for americangamingsystems.com and playags.com. This search encompassed a time frame in excess of four years beginning October 12, 2012 and ending November 30, 2016, as follows: 1) emails with the word webb in the email address in the "to" or "from" fields; 2) emails with the word o'donnell in the email address in the "to" or "from" fields; and 3) emails with the word odonnell in the email address in the "to" or "from" fields. This search was performed without regard to whether letters in the search terms were capitalized or not. As a result of this search, responsive documents Bates stamped AGS200001 through AGS200015 were produced. As to the search including the word "webb", a substantial amount of emails were identified and not responsive due to the common nature of the name. Therefore, the production was limited to those which included the term "Derek."

**REQUEST FOR PRODUCTION NO. 3:**

*All Documents referring or relating to Your acquisition of any assets of Plaintiffs or DigiDeal.*

<u>**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**</u>

In addition to the General Objections set forth in Third-Party Respondent AGS LLC's Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 3:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS as the request is asking for documents that are more accessible, to the extent discoverable, to Plaintiffs who initiated this action or to DigiDeal.

# O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 4

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs who initiated this lawsuit.

AGS further objects to this document request as requesting "All documents referring to or relating to" AGS' acquisition of any assets of Plaintiffs or DigiDeal. Such documents and communications may, in fact, contain privileged communications and/or documents pursuant to the attorney work-product doctrine or other proprietary information, including propriety information of DigiDeal that cannot be disclosed.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested. AGS objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS or DigiDeal. All such documents and information will not be produced.

Without waiving any general or specific objection set forth above, AGS has performed an electronic search of the email databases for americangamingsystems.com and playags.com. This search encompassed a time frame in excess of four years beginning October 12, 2012 and ending November 30, 2016 and included emails with the word digideal in the email address in the "from" field. This search was performed without regard to whether letters in the search terms were capitalized or not. As a result of this search, see documents Bates stamped AGS300001

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 5

through AGS300014 attached hereto and marked Highly Confidential consistent with the Protective Order [Doc.66] and with the understanding counsel for Scientific Games has confirmed it will not take the position that any AGS production pursuant to this Protective Order will subject AGS to the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division, in regard to any disputes in regard to this Subpoena. No documents are being withheld as a result of this search except for certain documents reflecting DigiDeal, which AGS is awaiting confirmation from DigiDeal that is has no issue with AGS producing. These documents are marked as DIGIDEAL CONFIDENTIAL DOCUMENTS and Bates stamped AGS300015 through AGS300103.

**REQUEST FOR PRODUCTION NO. 4:**

*All Documents referring or relating to the DigiShuffle.*

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to the General Objections set forth in Third-Party Respondent AGS LLC's Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 4:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity. Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS as the request is asking for documents that are more accessible, to the extent discoverable, to Plaintiffs who initiated this action.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting "All documents referring to or relating to" the DigiShuffle. Such documents and communications may, in fact, contain

# O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 6

privileged communications and/or documents pursuant to the attorney work-product doctrine or other proprietary information, including that of DigiDeal, which cannot be disclosed.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested. AGS objects to this request on the ground that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS. All such documents and information will not be produced.

Without waiving any general or specific objection set forth above, AGS has performed an electronic search of the email databases for americangamingsystems.com and playags.com. This search encompassed a time frame in excess of four years beginning October 12, 2012 and ending November 30, 2016 and included emails with the word DigiShuffle in all fields. This search was performed without regard to whether letters in the search terms were capitalized or not. As a result of this search, responsive documents Bates stamped AGS400001-AGS400106 are attached.[1] In addition, certain documents within this production have been marked Highly Confidential consistent with the same understanding set forth in response to request for production No. 3. Furthermore, certain documents within this production have been redacted as they include communication with counsel which are protected by the attorney-client privilege and/or work-product doctrine. Based upon the search, certain documents are currently being

---

[1] Bates stamped documents AGS400011 and AGS400012 have the same attachments, and in an attempt to prevent duplication, were only produced one time.

O'REILLY LAW GROUP, LLC
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 7

withheld based upon the attorney-client privilege, correspondence on which Shuffletech was included and therefore more accessible to Plaintiffs, documents protected by the Common Interest Privilege and includes communication between AGS counsel and counsel for Shuffletech, and correspondence which is, among other things, a trade secret and/or confidential research and development pursuant to FRCP 45.

**REQUEST FOR PRODUCTION NO. 7:**

*All Documents referring or relating to the '982 Patent or the '935 Patent.*

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to the General Objections set forth in Third-Party Respondent AGS LLC's Response to Defendants' Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises In a Civil Action, AGS sets forth the following specific objections in response to Request for Production No. 7:

AGS objects to this document request as overly broad, unduly burdensome, vague and ambiguous to the extent that the request asks for communications and documents not limited by time or specificity.  Responding to such request as written would be oppressive, unduly burdensome and unnecessarily expensive to AGS.

AGS further objects to this document request as unduly burdensome to the extent it seeks information that is readily or more accessible to Defendants from public files, Defendants' own files, or the files of a related party to this matter, including Plaintiffs.

AGS further objects to this document request as requesting "All Documents referring or relating to" the '982 Patent or the "935 Patent.  Such documents and communications contain privileged communications and/or documents pursuant to the attorney work product doctrine.

AGS further objects to this document request as overly broad, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome and oppressive insofar as it seeks production of documents in electronic format from AGS databases without specifying what data is requested.  AGS objects to this request on the ground

**O'REILLY LAW GROUP, LLC**
A NEVADA LIMITED LIABILITY COMPANY INCLUDING CORPORATIONS

Caroline L. Meneau, Esq.
David Jimenez-Ekman, Esq.
December 30, 2016
Page 8

that it seeks information, communications and documents that may be protected from disclosure by privacy laws and unrelated to this action. AGS objects to this request to the extent it assumes that the databases in question are capable of capturing data as it existed on any specific date.

AGS further objects to this document request as seeking AGS communications, documents and information that were produced to the Defendants by other entities.

AGS further objects to this document request as seeking to obtain communications containing proprietary information, trade secrets or other confidential research, development or commercial information of AGS.

Without waiving any general or specific objection set forth above, see Bates stamped documents AGS700001- AGS700042 attached hereto.

Very truly yours,

O'REILLY LAW GROUP, LLC

Timothy R. O'Reilly, Esq.

TOR:fr

Enclosures:
AGS300001 - AGS300014
AGS400001 - AGS400106
AGS700001- AGS700042

**EMail**

| | |
|---|---|
| **From:** | Janice Pancoast <jpancoast@digideal.com> |
| **Sent:** | Thursday, October 22, 2015 11:02 AM |
| **To:** | John Hemberger; rladuca@theinbet.com |
| **Cc:** | Peter Anderson |
| **Subject:** | RE: In Bet update |

Thanks, John!

I have been in contact with Jason at AGS and we have arranged for sending of reports and payment.

I just wanted one last confirmation from Ron that we are to pay you.

Best Regards,

**Janice Pancoast | Controller**
DigiDeal Corporation
5207 E. Third Ave.
Spokane Valley, WA 99212
(509) 747-8887
Direct (509) 343-3259
Fax (509) 747-5125

**NOTICE OF CONFIDENTIAL/PRIVILEGED COMMUNICATION:**
This email and any files transmitted with it contain confidential and privileged information. It is intended solely for the individual or entity to whom it is addressed. If you have received this email in error, do not read it. Please reply to the sender that you have received the message in error, then delete it. Thank you.

**From:** John Hemberger [mailto:j.hemberger@playags.com]
**Sent:** Thursday, October 22, 2015 10:48 AM
**To:** Janice Pancoast; rladuca@theinbet.com
**Cc:** Peter Anderson
**Subject:** RE: In Bet update

Hi Janice,

Yes you can send it to us directly. I'm copying in Pete Anderson who can handle coordinating the agreement transition from our side. Sorry for the delay.

Pete – swing by and I can update you on this.

Thanks,

John

**From:** Janice Pancoast [mailto:jpancoast@digideal.com]
**Sent:** Thursday, October 22, 2015 10:34 AM
**To:** rladuca@theinbet.com

1

**HIGHLY CONFIDENTIAL    AGS300001**

**Cc:** John Hemberger <j.hemberger@playags.com>
**Subject:** RE: In Bet update

Hi Ron,

Just want to confirm with you that the royalty payment for quarter ending 9/30/15 for $23.94 should be made to AGS.

Is that correct?

Thank you,

**Janice Pancoast | Controller**
DigiDeal Corporation
5207 E. Third Ave.
Spokane Valley, WA 99212
(509) 747-8887
Direct (509) 343-3259
Fax (509) 747-5125

**NOTICE OF CONFIDENTIAL/PRIVILEGED COMMUNICATION:**
This email and any files transmitted with it contain confidential and privileged information. It is intended solely for the individual or entity to whom it is addressed. If you have received this email in error, do not read it. Please reply to the sender that you have received the message in error, then delete it. Thank you.

**From:** rladuca@theinbet.com [mailto:rladuca@theinbet.com]
**Sent:** Thursday, August 06, 2015 3:04 PM
**To:** Janice Pancoast
**Cc:** John Hemberger
**Subject:** In Bet update

Hi Janice,

I cc'd John Hemberger on this email. He is the VP of table games for AGS (American Gaming Systems). AGS has acquired the game In Bet and I would like to introduce John to you. He will be contacting you to make this transition easy for Digideal and AGS. I am working with AGS to continue to sell In Bet. If you have any questions please feel free to contact me.

Thanks,
Ron

**Ronald LaDuca**
President

IN BET GAMING

2

**HIGHLY CONFIDENTIAL    AGS300002**