James J. Pisanelli, Esq., Bar No. 4027
jjp@pisanellibice.com
M. Magali Mercera, Esq., Bar No. 11742
mmm@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NV  89101
Telephone:   702.214.2100
Facsimile:    702.214.2101

Craig C. Martin (Admitted *Pro hac vice*)
David Jimenez-Ekman (Admitted *Pro hac vice*)
Timothy J. Barron (Admitted *Pro hac vice*)
Caroline L. Meneau (Admitted *Pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654-3456
Telephone:   312.222.9350
Facsimile:    312.527.0484

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SCIENTIFIC GAMES CORPORATION, BALLY TECHNOLOGIES, INC., AND BALLY GAMING, INC.,<br><br>Petitioners,<br><br>v.<br><br>AGS, LLC,<br><br>Respondent. | Action pending in the United States District Court for the Northern District of Illinois (Case No. 1:15-cv-3702)<br>Honorable Matthew F. Kennelly<br><br>**CASE NO.  2:17-CV-00343-JAD-NJK**<br><br>**PETITIONERS' RENEWED MOTION TO COMPEL AGS, LLC TO COMPLY WITH RULE 45 SUBPOENA ISSUED IN A RELATED PROCEEDING IN THE NORTHERN DISTRICT OF ILLINOIS** |

Petitioners Scientific Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc. (collectively, "Petitioners"), respectfully move this Court under Federal Rules of Civil Procedure 37 and 45 for the entry of an order compelling Respondent AGS, LLC ("AGS") to make a full and complete document production in response to Petitioners' Rule 45 subpoena, and order such other relief as the Court deems appropriate.  In support of this motion, Petitioners submit the following Memorandum of Points and Authorities and state:

1

1. Petitioners are defendants in a case pending in the United States District Court for the Northern District of Illinois, captioned *Shuffle Tech International, LLC, et al. v. Scientific Games Corp.*, et al., No. 15 CV 3702 (N.D. Ill. filed Apr. 28, 2015) (the "Illinois Action").

2. The Illinois plaintiffs allege that Petitioners engaged in anti-competitive practices that interfered with their ability to sell automatic card shufflers used in casinos. The lead plaintiff in the Illinois Action, Shuffle Tech International, LLC ("Shuffle Tech"), seeks more than $100 million in damages (prior to antitrust trebling) from Petitioners. Shuffle Tech alleges that these damages are the result of Petitioners' interference with Shuffle Tech's business relationship with DigiDeal Corporation ("DigiDeal"). Specifically, Shuffle Tech had a 2013 agreement with DigiDeal under which DigiDeal would manufacture and sell shufflers, using Shuffle Tech's intellectual property. In return, DigiDeal would pay royalties to Shuffle Tech. The Illinois plaintiffs contend that Petitioners allegedly interfered with this relationship by bringing sham patent litigation against DigiDeal in 2012, which allegedly resulted in DigiDeal being unable to make and sell shufflers, and pay any royalties to Shuffle Tech.

3. However, in September 2015, after Shuffle Tech's agreement with DigiDeal was terminated, Shuffle Tech entered into an agreement with Respondent AGS under which AGS would make and sell shufflers using Shuffle Tech's technology – as DigiDeal originally had agreed to do. In return, AGS made several up-front payments to Shuffle Tech, and agreed to pay Shuffle Tech royalties for each automatic card shuffler it sold and leased.

4. Because Shuffle Tech's damages in the Illinois Action are based on the profits it allegedly lost when DigiDeal was no longer able to make and sell shufflers, AGS's agreement with Shuffle Tech offsets Shuffle Tech's alleged damages dollar-for-dollar. Indeed, on April 17, 2017, Shuffle Tech made its opinion testimony disclosures under Federal Rule of Civil Procedure 26(a)(2), including a disclosure from Matthew Lynde regarding the damages Shuffle Tech claims. That disclosure expressly calculates a mitigation amount based on the amount Shuffle Tech will allegedly receive from AGS as royalties in the future under their contractual relationship. (A redacted excerpt of this disclosure is attached as Exhibit 1.) Consequently,

1  information related to Shuffle Tech's agreement and relationship with AGS is highly relevant to
2  Petitioners' defense in the Illinois Action.

3       5.     To obtain this critical discovery, Petitioners issued, from the Northern District of
4  Illinois, a narrowly tailored Rule 45 subpoena for documents to AGS, seeking seven categories of
5  documents.  In response to the subpoena, AGS repeatedly asserted the same vague objections;
6  ultimately refusing to produce documents responsive to most of Petitioners' requests.  Despite the
7  exchange of at least six letters and three telephonic meet and confers, Petitioners were unable to
8  resolve the discovery dispute with AGS without court intervention.  In response to the Court's
9  May 12, 2017 order, Petitioners further met and conferred with counsel for AGS on May 18, 2017
10 via telephone.  Counsel for AGS communicated during the call that AGS would not stipulate to
11 transferring the instant dispute to the Northern District of Illinois.

12      6.     Petitioners, accordingly, submit this Renewed Motion to Compel the production of
13 documents that are central to their defenses in the Illinois Action. As discussed in more detail
14 below, AGS, as the party resisting discovery, has failed to carry its heavy burden of showing why
15 discovery should be denied.  As recognized by the Court in its May 12, 2017 order, "[a]t the heart
16 of Respondent's opposition to complying with the subpoena is its contention that much of the
17 information Petitioners seek constitutes trade secrets and other confidential commercial
18 information."  (ECF No. 43 at 2:13-15.)  Despite its opposition to the subpoena, AGS, among
19 other things, has established neither that the withheld documents constitute important proprietary
20 information nor that it has historically sought to maintain the confidentiality of that information.
21 *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006); *Takiguchi v. MRI Int'l, Inc.*,
22 No. 13 CV 1183, 2013 WL 6528507, at *11 (D. Nev. Dec. 11, 2013).  However, even if AGS
23 were able to make such a showing (it cannot), Petitioners would still be entitled to the documents
24 because they have a substantial need for the requested information.  *Gonzales*, 234 F.R.D. at 684;
25 *Takiguchi*, 2013 WL 6528507, at *11.

26 WHEREFORE, Petitioners respectfully request that the Court enter an order compelling
27 Respondent AGS, LLC to make a full and complete document production in response to
28 Petitioners' Rule 45 subpoena, and order such other relief as the Court deems appropriate.

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

The Court should overrule Respondent AGS's objections and order a complete production of responsive documents because the documents Petitioners seek are directly relevant to their claims and defenses, and AGS (which contracted with Illinois plaintiff Shuffle Tech with full awareness of the Illinois Action) fails to meet its burden of establishing that the withheld documents should be protected as trade secrets. Since the initial round of briefing this Court reviewed, Shuffle Tech (and the other Illinois plaintiffs) have made their Rule 26(a)(2) opinion damages disclosures. Those disclosures show that the amount that Shuffle Tech stands to earn under its agreement with Respondent AGS is an input, dollar-for-dollar, into Shuffle Tech's ultimate damages claim. Petitioners must have – and are entitled to have – discovery from AGS to test the assumptions of Shuffle Tech's damages expert, making the documents Petitioners seek unquestionably relevant. AGS has resisted production on boilerplate "undue burden" grounds, and on the generalized assertion that the requested documents contain trade secrets. But AGS – which bears the affirmative and heavy burden of resisting production – has made no particularized showing on either point, despite filing five prior briefs on this topic. The Court should overrule AGS's objections and order a full production.

### BACKGROUND

### I.     THE ILLINOIS ACTION.

Petitioners are defendants in the Illinois Action – a federal *Walker Process* antitrust action pending in federal court in the Northern District of Illinois involving automatic card shufflers for use in casinos. During the early stages of the Illinois Action, on November 10, 2015, the Illinois court considered and denied a motion by Petitioners (represented by former counsel) to sequence discovery, concluding that full fact discovery, including on damages, was appropriate. (Ex. 2, Illinois Action Docket No. 59.) Unified fact discovery (*i.e.*, on all issues of liability and damages) in the Illinois Action was subsequently open from December 2015 through February 22, 2017, and is now closed. Petitioners' document requests (and related Rule 30(b)(6) deposition subpoena) before this Court are the ***only*** remaining issues in fact discovery. Petitioners'

1 Rule 26(a)(2) opinion disclosures, which will rely in-part on the fruits of the discovery requested

2 in this motion, are presently due in the Illinois Action on June 27, 2017.

3    The documents Petitioners seek from AGS are centrally relevant to Petitioners' defense in

4 the Illinois Action that the lead plaintiff in the action, Shuffle Tech International, LLC ("Shuffle

5 Tech") will not suffer the loss of future royalty revenue that it claims, because AGS will provide

6 that revenue. Specifically, in 2013, Shuffle Tech entered into an agreement with third party

7 DigiDeal Corporation ("DigiDeal") under which DigiDeal would manufacture and sell a shuffler,

8 known as the DigiShuffle, using Shuffle Tech's intellectual property, and in return, DigiDeal

9 would pay royalties to Shuffle Tech.  (Ex. 3, Illinois Action Am. Compl. ¶ 22.)  Shuffle Tech

10 contends in the Illinois complaint that Petitioners interfered with that business relationship by

11 pursuing sham patent litigation against DigiDeal in 2012, which allegedly left DigiDeal unable to

12 make and sell shufflers, or pay royalties to Shuffle Tech.  (*Id.* at ¶¶ 22, 25.)  Shuffle Tech and the

13 other Illinois plaintiffs seek damages of over $100 million from Petitioners based on the theory

14 that it lost a revenue stream running into the future.  (*Id.* at ¶¶ 22, 115.)

15    During the course of the Illinois Action's fact discovery, Petitioners discovered that

16 Shuffle Tech entered into a new agreement with Respondent AGS in September 2015 under

17 which (among other things) AGS essentially fulfills DigiDeal's prior role of making and selling

18 shufflers using Shuffle Tech's technology, and in return, AGS pays Shuffle Tech a royalty on

19 those shuffler sales.  (Ex. 4, Compiled Letter Exhibit at AGS300104-19.)  Accordingly, if AGS is

20 successful under its agreement with Shuffle Tech, its royalty and other payments will offset,

21 dollar-for-dollar, the future damages Shuffle Tech claims it suffered in the Illinois Action.

22 Indeed, on April 17, 2017, Shuffle Tech made its opinion testimony disclosures under Federal

23 Rule of Civil Procedure 26(a)(2), including a disclosure from Matthew Lynde regarding the

24 damages Shuffle Tech claims to have suffered.  That disclosure expressly calculates a mitigation

25 amount based on the amount Shuffle Tech will allegedly receive from AGS as royalties in the

26 future under their contractual relationship.  (A redacted excerpt of this disclosure is attached as

27 Exhibit 1.)  Consequently, information in the possession of AGS is directly relevant to an issue

28 injected into the Illinois proceedings by Shuffle Tech, AGS's contractual partner.

PISANELLI BICE PLLC
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

## II. THE SUBPOENA AND AGS'S INADEQUATE RESPONSE.

On November 29, 2016, Petitioners issued a narrowly tailored Rule 45 subpoena for documents to AGS, setting a return date of December 15, 2016. (Ex. 5, Nov. 29, 2016 Document Subpoena.) AGS's counsel accepted service of the subpoena on December 2, 2016. (Ex. 6, Dec. 2, 2016 Email Exchange.) Attachment A to the subpoena specified that Petitioners sought documents in AGS's possession on seven topics, all of which are highly relevant to Petitioners' defenses in the Illinois Action:

1. All Documents referring to or reflecting any Communications between You [AGS] and Plaintiffs.

2. All Documents referring to or reflecting any Communications between You and Derek Webb or Hannah O'Donnell [who are funding the Illinois Action litigation].

3. All Documents referring or relating to Your acquisition of any assets of Plaintiffs or DigiDeal.

4. All Documents referring or relating to the DigiShuffle.

5. All Documents referring or relating to any shuffler that incorporates or uses technology developed by Shuffle Tech.

6. All Documents referring or relating to Your marketing, display or sale of any DigiShuffle or any other shuffler that incorporates or uses technology developed by Shuffle Tech.

7. All Documents referring or relating to the '982 or '935 Patent [the key patents at issue in the Illinois Action].

(Ex. 5, Nov. 29, 2016 Document Subpoena, Attachment A at 3-4.)

AGS's December 13, 2016 response to the subpoena raised the same generic objections to each request (*See generally* Ex. 7, Dec. 13, 2016 AGS Resp.), and on December 15, 2016 (the subpoena's return date), AGS produced only 15 pages of documents purporting to be responsive to Document Request No. 2[1] (Ex. 8, Dec. 15, 2016 AGS Production). Petitioners and counsel for AGS afterwards exchanged six letters, collected in Exhibit 4, and conferred telephonically three times between December 26, 2016 and January 27, 2017. As a result of some of the parties' early

---

[1] AGS's December 15, 2016 production consisted of two emails, neither of which were in any way related to the Illinois Action. (Ex. 8, Dec. 15, 2016 AGS Production at 2-5 (job application by a Derek Webb, but not the Derek Webb funding the Illinois Action), 6-16 (mass email from an AGS employee announcing his new contact information).)

1 conferences, on December 30, 2016, AGS supplemented its objections to Document Request Nos. 2, 3, 4, and 7, including a supplemental 162-page production purporting to be documents responsive to Document Request Nos. 3, 4, and 7.  (Ex. 9, Dec. 30, 2016 Ltr. from Tim O'Reilly to Caroline Meneau and David Jimenez-Ekman.)  However, AGS continues to refuse production of documents centrally necessary to Petitioners' damages defense, asserting that it is withholding these documents on the basis of the attorney-client privilege and work product doctrine, as well as on the ground that they are purportedly trade secrets.  AGS fails, however, to identify or explain how such documents qualify as containing trade secrets.  (*Id.* at 2-8; *see also* Ex. 7, Dec. 13, 2016 AGS Resp. at 5-13.)  Following a final meet and confer on January, 27, 2017, the parties agreed that they were at an impasse and that Petitioners should file a motion with the Court seeking resolution of the discovery dispute.

### III.   PRIOR PROCEEDINGS IN THIS COURT.

Petitioners filed their Motion to Compel in this Court on February 1, 2017.  (ECF No. 1.)  AGS then filed: (1) a combined response in opposition and countermotion to quash and for protective orders (ECF No. 7); (2) a countermotion to quash (ECF No. 10); and (3) a countermotion for protective orders (ECF No. 14).  After these were all fully briefed, on May 12, 2017, the Court issued an order: (1) denying Petitioners' Motion to Compel without prejudice; (2) requiring the parties to confer on a possible transfer to the court hearing the Illinois Action; and (3) requiring that the parties file either a stipulation to transfer or renewed motions by May 25, 2017 (the "Order").  (ECF No. 43.)  In compliance with the Order, counsel for Petitioners met and conferred with counsel for AGS on May 18, 2017 via telephone, during which counsel for AGS communicated that AGS would not stipulate to transferring the dispute to the Northern District of Illinois.

### LEGAL STANDARD

Rule 26 provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Because a Rule 45 subpoena "is subject to the relevance requirements set forth in Rule 26(b), . . . the subpoena may command the production of documents which are 'not privileged' and are 'relevant to any party's

7

claims or defenses' or 'reasonably calculated to lead to the discovery of admissible evidence.'" *Vondersaar v. Starbucks Corp.*, No. 13 CV 80061, 2013 WL 1915746, at *1 (N.D. Ca. May 8, 2013) (quoting Fed. R. Civ. P. 26). "In the Ninth Circuit, broad discovery is favored because 'wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Id.* at *4 (quoting *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995)). In general, "courts take a broad view of what is held discoverable . . . . The scope of discovery is broad and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Perez v. Blue Mntn. Farms*, No. 13 CV 5081, 2015 WL 11112413, at *2 (E.D. Wash. Sept. 28, 2015) (citations omitted). "Under the Rule's liberal discovery principles, the party resisting discovery carries a heavy burden of showing why discovery should be denied." *Takiguchi*, *v. MRI Int'l, Inc.*, No. 13 CV 1183, 2013 WL 6528507, at *10 (D. Nev. Dec. 11, 2013) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). These liberal discovery principles apply with equal force to Rule 45 subpoenas. *See Vondersaar*, 2013 WL 1915746, at *1.

## ARGUMENT

### I. THE COURT SHOULD OVERRULE AGS'S OBJECTIONS AND ORDER A COMPLETE PRODUCTION.

AGS has refused to comply with its obligations under the federal rules, instead relying on meritless objections and an insufficient production. AGS has asserted the same broad objections to each of Petitioners' document requests but has not substantiated any of them. Petitioners are not on a fishing expedition or seeking broad discovery from an unrelated non-party. Instead, AGS contracted with Shuffle Tech with full knowledge of the pendency of the Illinois Action and that by contracting with Shuffle Tech it would subject itself to discovery related to the action.[2] Petitioners seek discovery necessary to address a central issue that AGS's contractual partner Shuffle Tech injected into the Illinois Action, its damages mitigation efforts. The Court should

---

[2] Discovery in the Illinois Action has revealed that when AGS entered into its agreement with Shuffle Tech it was not only aware of the Illinois Action, but was also allegedly incentivized to contract with Shuffle Tech because of the litigation. AGS's agreement with Shuffle Tech, in fact, explicitly references the pending Illinois Action (Ex. 4, Compiled Letter Exhibit at AGS300104, AGS300109). As such, AGS entered into the Shuffle Tech agreement with full knowledge of the Illinois Action and the way its relationship with Shuffle Tech was relevant to the action.

overrule the objections and order a complete production of responsive, non-privileged documents, and a comprehensive log of all documents withheld on the basis of privilege.

### A. The Requested Information is Relevant, And Is Not Overly Broad Or Unduly Burdensome.

Petitioners' document requests are narrowly tailored to secure information directly relevant to Petitioners' defense in the Illinois Action that Shuffle Tech has not sustained the damages it alleges. At least some of the royalties that DigiDeal would have paid Shuffle Tech will be replaced by amounts AGS will pay Shuffle Tech. Shuffle Tech's expert, Mr. Lynde, has disclosed a damages calculation that expressly includes a mitigation amount based on the royalties that Respondent AGS will pay Shuffle Tech into the future. (Ex. 1, Excerpt of Matthew R. Lynde Expert Report at 65-67.) The discovery Petitioners request is absolutely necessary to test Mr. Lynde's calculation, which results in a damages amount of more than $100 million. This discovery is well within the "broad view of what is held discoverable" in the Ninth Circuit. *Perez*, 2015 WL 11112413, at *2.

AGS argued in the prior round of briefing that the discovery Petitioners seek is improper because it relates to whether Shuffle Tech suffered antitrust *injury* for purposes of standing. But that is not so. Petitioners seek this discovery because any royalties Shuffle Tech may receive from AGS are highly relevant for purposes of measuring the *amount* of antitrust *damages* Shuffle Tech may recover if liability is established.[3] *See Bhan v. NME Hospitals, Inc.*, 669 F. Supp. 998, 1014 n.11 (E.D. Cal. 1987) (holding that the plaintiff's increased profits following the alleged anti-trust violation "does not challenge the existence of injury," but "the extent of damage."); *see also Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 436 (5th Cir. 1985) ("Of course, an antitrust plaintiff, like other injured parties, must mitigate damages."). Mr. Lynde's disclosure expressly calculates a mitigation amount based on the amount Shuffle Tech will allegedly receive from AGS in the future under the parties' contract. (Ex. 1, Excerpt of Matthew R. Lynde Expert

---

[3] AGS's reliance on *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466 (7th Cir. 1982) and *Shuffle Tech Int'l, LLC v. Scientific Games Corp.*, No. 15 CV 3702, 2015 WL 5934834, at *12 (N.D. Ill. Oct. 12, 2015) is misplaced because neither case addresses the calculation of antitrust *damages* at the liability stage, but instead concern the requirements for establishing antitrust *injury* for purposes of standing at the pleading stage.

1 Report at 65-67.)   To adequately test the accuracy of Shuffle Tech's mitigation amount,
2 Petitioners must have access to documents related to this issue in AGS's possession.

3       In addition to bearing directly on the issue of mitigation, the information sought by
4 Document Request Nos. 1 and 3 and 4-6 is also relevant to the quantification of the Illinois
5 plaintiffs' damages.  For example, the prices AGS charges for its product incorporating Shuffle
6 Tech's technology, and the profits obtained thereby, are relevant to determining the price that
7 could have been charged for the DigiShuffle device (and therefore Shuffle Tech's damages claim
8 based on that price).  Moreover, Document Request No. 2, seeking communications between
9 AGS and the individuals funding the Illinois Action, are relevant to Shuffle Tech's claim in the
10 Illinois Action that it sustained damages as a result of funding a portion of DigiDeal's attorneys
11 fees in the patent infringement case Petitioners brought against DigiDeal.  Still further, the pricing
12 of AGS's shufflers, their sales volume, and AGS's relationships with customers or potential
13 customers – information sought by Document Request Nos. 4-6 – are also relevant to determining
14 the relevant market, Petitioners' alleged market power, price elasticity and competition; all of
15 which are central issues to the Illinois plaintiffs' antitrust claims.  The information Petitioners
16 seek is centrally relevant to claims and defenses in the Illinois Action.

17       AGS's other boilerplate objections similarly lack merit.  AGS's only explanation as to
18 why the document requests are overly broad and unduly burdensome is that they use the terms
19 "all" and "any."  This fails to meet the high burden of resisting production.  *See LG Display Co.,*
20 *Ltd. v. Chi Mei Optroelectronics Corp.*, No. 08 CV 2408, 2009 WL 223585, at *2 (S.D. Cal. Jan.
21 28, 2009) (rejecting boilerplate claim that compliance with the subpoena was unduly burdensome
22 because it would take considerable time and expense to conduct a reasonable search).  This is
23 especially true in light of the fact that AGS is not a typical, unconnected third party to the Illinois
24 Action, but a contractual partner who entered into an agreement with Shuffle Tech with full
25 knowledge of the Illinois Action.  (Ex. 4, Compiled Letter Exhibit at AGS300104, AGS300109.)
26 Likewise, AGS's assertion that it need not comply with Petitioners' subpoenas because the
27 documents are available through other sources has been repeatedly rejected by other district
28 courts that commonly allow for document discovery from third parties, even if those same

10

1   documents may be available from the parties. *See Sol v. Whitting*, No. 10 CV 1061, 2014 WL
2   12519787, at *3 (D. Ariz. Sept. 9, 2014) (granting motion to compel third party to produce
3   documents in response to subpoena, even though the other parties had already produced
4   "hundreds of pages of emails" with the third party); *LG Display*, 2009 WL 223585 at *3 (holding
5   that the identical argument was unavailing "in light of Plaintiff's desire to test the accuracy and
6   completeness of the defendants' discovery responses and their denials that additional information
7   exists"). For instance, without AGS's documents related to the sale of shufflers incorporating
8   Shuffle Tech's technology, Petitioners will not be able to test or challenge the accuracy of the
9   Illinois plaintiffs' mitigation amount recently disclosed as a part of the plaintiffs' opinion
10  testimony disclosures. (*See* Ex. 1, Excerpt of Matthew R. Lynde Expert Report at 65-67.)

    **B.    AGS Has Not Met its Burden for Withholding Documents Based on Trade Secret Privilege Under the Governing Federal Common Law *Gonzales* Standard.**

13  As the Court pointed out in its May 12, 2017 order, "[a]t the heart of [AGS's] opposition
14  to complying with the subpoena is its contention that much of the information Petitioners seek
15  constitutes trade secret and other confidential commercial information." (ECF No. 43 at 2:13-15.)
16  In resisting production on trade secrets and confidentiality grounds, AGS bears the burden of
17  showing, with specificity, that it is entitled to withhold otherwise relevant documents. *Gonzales*
18  *v. Google*, 234 F.R.D. 674, 684 (N.D. Cal. 2006); *Takiguchi*, 2013 WL 6528507, at *10. In the
19  briefs it filed in the prior round of briefing, AGS failed to even attempt to make the required
20  showing, let alone satisfy its heavy burden. Petitioners respectfully believe that the Court should
21  grant their motion based on AGS's prior default – a default that Petitioners pointed out in their
22  prior reply brief (ECF No. 15 at 6:7-8:3) – but even given this new opportunity, AGS cannot meet
23  its burden on the facts here.

    **1.    Federal Common Law Controls AGS's Trade Secret Objections.**

25  Contrary to what AGS has previously argued, Nevada law has no place in this Court's
26  analysis. Federal common law is controlling. *See* Fed. R. Evid. 501 ("The common law – as
27  interpreted by United States courts in the light of reason and experience – governs a claim of

privilege . . . .").[4]  Federal common law mandates that a party withholding documents based on a trade secrets claim ***establish that the documents are important proprietary information***.  *See, e.g.*, *Gonzales*, 234 F.R.D. at 684; *see also Takiguchi*, 2013 WL 6528507, at *11.  In addition, the withholding party must ***make a strong showing that it has historically sought to maintain the confidentiality of the information***.  *Gonzales*, 234 F.R.D. at 684; *Takiguchi*, 2013 WL 6528507, at *11; *see also Pasadena Oil*, 320 Fed. Appx. at 677 (explaining that the party withholding otherwise discoverable information has the burden of establishing that it is privileged from discovery).  Only once this initial burden is met does the burden then shift to the requesting party to show a "'substantial need for the testimony or material that cannot be otherwise met without undue hardship.'"  *Takiguchi*, 2013 WL 6528507, at *11 (quoting *Gonzales*, 234 F.R.D. at 684).

    **2. AGS Has Established Neither that the Withheld Documents are Important Proprietary Information Nor that AGS has Historically Sought to Maintain the Confidentiality of the Withheld Documents.**

  AGS has failed to carry its burden of establishing that the documents it has withheld based on an alleged trade secret privilege constitute important proprietary information.  *See Gonzales*, 234 F.R.D. at 684; *Takiguchi*, 2013 WL 6528507, at *11.  Indeed, the Court's May 12, 2017, order found that AGS has "not provided sufficiently detailed explanations as to which specific materials constitute trade secrets or other confidential commercial information, and why."  (ECF No. 43 at 2:19-21.)  The Court is correct.  With the exception of arguing that sales projection data generally constitutes trade secret information,[5] AGS has not explained how any of the other

---

[4] "Under federal law, there is no absolute privilege for trade secrets; instead, courts weigh the claim to privacy against the need for disclosure in each case, and district courts can enter protective orders allowing discovery but limiting the use of the discovered documents." *Pasadena Oil & Gas Wyo. LLC v. Mont.Oil Props. Inc.*, 320 F. App'x. 675, 677 (9th Cir. 2009) (citing *Fed. Open Mkt. Comm. Of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979)); *Takiguchi*, 2013 WL 6528507, at *11 ("There is no absolute privilege for trade secrets and similar confidential information." (internal quotations omitted)); *see also* Advisory Committee Note on Fed. R. Civ. P. 26(c) ("The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure. Frequently, they have been afforded a limited protection."); *AFMS LLC v. United Parcel Serv. Co.*, No. 12 CV 1503, 2012 WL 3112000, at *3 (S. D. Ca. July 30, 2012) (explaining that Fed. R. Civ. P. 26 and 45 govern discovery from nonparties by subpoena).

[5] AGS, however, does not even acknowledge that the requested sales plans and projections exist. (*see* ECF No. 10 at 2:13-14.) ("Since AGS's shuffler is still in development and testing, any such data, ***to the extent it exists***, would be speculative and not of any probative value." (emphasis added)).  AGS cannot categorically object to Petitioners' document requests simply because there is a possibility that some responsive documents or information may contain trade secrets.

withheld documents (whatever they may be; AGS has not provided the required log) qualify as "important proprietary information." *Gonzales*, 234 F.R.D. at 684. Nor has AGS made "a strong showing that it has historically sought to maintain the confidentiality" of any withheld materials. *Id.* Because AGS has already filed 5 briefs on the topic, that should end the inquiry and require production of the documents.

For example, despite refusing to produce any information responsive to Document Request No. 1, AGS has not explained how any specific documents referring to or reflecting its communications with Shuffle Tech constitute important proprietary information that it has historically sought to keep confidential. Likewise, AGS has not explained how all documents referring or relating to its marketing, display, or sale of a shuffler incorporating Shuffle Tech's technology – information sought by Document Request No. 6, which AGS has also categorically refused to produce any documents in response to – constitute important proprietary information that it has historically sought to keep confidential.

Instead, AGS has only broadly asserted that because Petitioners produce and sell automatic card shufflers to casinos, and AGS is in the process of potentially doing the same, it should be "agreed" by all parties that the Petitioners' requests seek confidential trade secret information. (ECF No. 10 at 17:5-19.) This vague assertion, however, is not sufficient to satisfy the standard set forth in *Gonzales* or comply with Fed. R. Civ. P. 45(e)(2)(A)'s requirement that a party withholding otherwise discoverable information based on privilege must "describe the nature of the withheld documents, communications, or tangible things, in a manner that . . . will enable the parties to assess the claim." *See also Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 238 (2013) ("The party resisting discovery must first establish that the information sought is a trade secret or other confidential information under the Rule and demonstrate that its disclosure might be harmful.").

      **3.    Even if AGS Could Meet its Burden, Petitioners Have a Substantial Need for Information That Cannot Be Otherwise Met Without Undue Hardship.**

Even if AGS met its burden of establishing that the withheld materials constitute trade secret or other confidential commercial information (it has not), Petitioners would still be entitled

13

1  to the requested information under Rule 45(d)(3)(C) because Petitioners have a substantial need
2  for it.  *See Gonzales*, 234 F.R.D. at 684.  For all of the reasons explained above, the information is
3  centrally relevant to Shuffle Tech's damages claim and mitigation, as well as the proper market
4  definition, all key issues in the Illinois Action.  AGS alone holds this information, and thus
5  Petitioners cannot obtain it from any other source.  *See AFMS*, 2012 WL 3112000 at *6 (holding
6  that the defendant was entitled to the non-parties' trade secret and other confidential information
7  because it was relevant to the defendant's defenses and could not otherwise be obtained, if at all,
8  without undue burden).

### C. The Illinois Action Protective Order Provides Sufficient Protection for AGS's Sensitive Information.

11  AGS's privilege and privacy objections, likewise, have no merit.  As a threshold matter,
12  Petitioners are not seeking AGS's attorney-client privileged information; if AGS truly has
13  responsive documents subject to a valid claim of attorney-client privilege, it can comply with
14  Rule 45(e)(2)(A) and provide a privilege log to permit Petitioners and the Court to evaluate those
15  claims.  It has not done so, and cannot refuse to produce documents based on its bare assertion
16  that some documents may be privileged.  *See, e.g., Leasure v. Willmark Cmtys., Inc*., No. 11 CV
17  443, 2012 WL 4361555, at *5 (S.D. Cal. Sept. 21, 2012).  Similarly, any privacy concerns AGS
18  has can be easily addressed by redacting personal identifying information for individuals not
19  involved in the Illinois Action.

20  Moreover, Petitioners have assured AGS that under the Illinois Action's Protective Order,
21  any documents AGS marks as "Highly Confidential" will be treated as "Attorneys' Eyes Only,"
22  and Petitioners themselves will have no access.  (*See* Ex. 10, Protective Order at 4, ¶ 4(c).)
23  Pursuant to the Protective Order, the documents would remain with Petitioners' outside counsel.
24  Courts in this circuit have repeatedly held that "[a] protective order allowing 'confidential' or
25  'highly confidential' designations is sufficient to protect a nonparty's trade secrets." *AFMS*, 2012
26  WL 3112000 at *7 (ordering production of materials by nonparty in antitrust matter); *McKesson*
27  *Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 603 (N.D. Cal. 2009); *see*
28  *also Compaq. Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 339 (N.D. Cal. 1995)

(ordering third party to produce confidential information to *competitor* because protective order barred competitor's "employees and agents, including in-house counsel . . . from assessing these documents").

In fact, the Ninth Circuit has explicitly acknowledged that protective orders "allowing discovery but limiting the use of the discovered documents" can be entered to protect sensitive information. *See Pasadena Oil*, 320 F. App'x. at 677 (holding that the plaintiff was entitled to the defendants' confidential information where it was relevant to the plaintiff's breach of contract claim, and the district court could "craft a protective order limiting the use of [the] information or placing it under seal"). As explained by the Federal Circuit in *Hitkansut*, "[i]n practice, 'orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel, or to the parties.'" 111 Fed. Cl. at 238 (quoting *Fed. Open Mkt. Comm.*, 443 U.S. at 362 n.24)). Moreover, Petitioners have offered to discuss additional protective measures that could address AGS's concerns, but AGS has failed to accept Petitioners' offer.

## II.  A TRANSFER TO THE ILLINOIS COURT IS LIKELY UNAVAILABLE AND WILL NOT AVOID THE NEED FOR A RULING ON PETITIONERS' MOTION.

The Court's May 12, 2017 order suggested that this dispute might be better resolved by a transfer to U.S. District Judge Matthew Kennelly, the judge hearing the Illinois Action, and ordered the parties to confer about that possibility. Because AGS must perform in this district,[6] Rule 45(f) only permits a transfer if: (1) the party subject to the subpoena (here, Respondent AGS) consents to the transfer; or (2) the court finds exceptional circumstances. The parties conferred repeatedly before Petitioners' Motion to Compel was filed, but did so again on May 18, 2017 after receiving the Court's Order, and counsel for AGS indicated that AGS *opposed* any transfer to Illinois. Petitioners are not aware of any "exceptional circumstances" that might otherwise justify transfer. *See* Fed. R. Civ. P. 45(f), Advisory Committee Notes, 2013 Amendments ("The prime concern should be avoiding burdens on local nonparties subject to

---

[6] Fed. R. Civ. P. 45(d)(2)(B)(i) mandates that where a person commanded to produce documents has objected, the serving party must "move the court for the district where compliance is required for an order compelling production." The subpoena at issue here directed compliance in Las Vegas, Nevada.

15

1 subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve
2 subpoena-related motions.").

3 Moreover, at this stage, a transfer to Illinois will not obviate the need for ruling on
4 Petitioners' motion.  This is a relatively straightforward discovery dispute:  AGS has documents
5 that are directly relevant to, among other things, mitigation of the damages claimed by the
6 plaintiffs in the Illinois Action, and is resisting production of those documents on trade secret
7 grounds.  Given the posture of the Illinois Action, there is no procedural workaround that could
8 obviate the need to decide this Renewed Motion to Compel.  Judge Kennelly long ago considered
9 and rejected a motion by Petitioners (represented by former counsel) to sequence discovery,
10 concluding that full fact discovery on all issues, including damages, was appropriate.  (Ex. 2,
11 Illinois Action Docket No. 59.)  More than a year later, all fact discovery in the Illinois Action is
12 closed and this dispute (and related discovery) is the only remaining fact discovery issue
13 unresolved.  Additionally, resolution of the Renewed Motion to Compel will not depend on any
14 fact-finding by the Illinois court.  AGS challenges neither the existence of the former business
15 relationship between Shuffle Tech and DigiDeal nor the current agreement between Shuffle Tech
16 and itself.  Instead, AGS has offered only a legal argument (rooted in a flawed articulation of
17 antitrust law (*see supra* § I.A at 9:18-10:8)) in support of its contention that the requested
18 materials are not relevant.  As a result, there is nothing unique about the Illinois Action that would
19 suggest the Illinois court is better suited than this Court to address the instant discovery dispute.

20 Finally, Petitioners note that this dispute now presents the prospect of delaying
21 proceedings in the Illinois Action.  In particular, Petitioners' own Rule 26(a)(2) opinion
22 disclosures are due on June 27, 2017.  The fruits of the discovery requested in the originally filed
23 Motion to Compel and this Renewed Motion to Compel have the potential to substantially affect
24 the mitigation analysis of Petitioners' own damages consultant.  Consequently, if this dispute is
25 not resolved and discovery (including the requested Rule 30(b)(6) deposition) is not complete
26 before that time, Judge Kennelly has indicated that an extension of the existing deadline may be
27 necessary.

28

16

**CONCLUSION**

WHEREFORE, Petitioners respectfully request that the Court compel AGS, LLC to fully comply with Petitioners' subpoena, and order any other relief that the Court deems appropriate and necessary.

DATED this 25th day of May 2017.

PISANELLI BICE PLLC

By:  /s/ M. Magali Mercera
James J. Pisanelli, Esq., Bar No. 4027
M. Magali Mercera, Esq., Bar No. 11742
400 South 7th Street, Suite 300
Las Vegas, NV 89101

Craig C. Martin (Admitted *Pro hac vice*)
David Jimenez-Ekman (Admitted *Pro hac vice*)
Timothy J. Barron (Admitted *Pro hac vice*)
Caroline L. Meneau (Admitted *Pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654-3456

*Attorneys for Petitioners*

17

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of PISANELLI BICE PLLC and that, on the 25th day of May 2017, I caused to be served the above and foregoing **PETITIONERS' RENEWED MOTION TO COMPEL AGS, LLC TO COMPLY WITH RULE 45 SUBPOENA ISSUED IN A RELATED PROCEEDING IN THE NORTHERN DISTRICT OF ILLINOIS** via United States Mail and e-mail to the following:

Timothy O'Reilly
John O'Reilly
O'Reilly Law Group, LLC
325 S. Maryland Parkway
Las Vegas, Nevada 89101
Telephone: (702) 382-2500
Facsimile: (702) 384-6266
tor@oreillylawgroup.com
jor@oreillylawgroup.com

*Attorneys for AGS, LLC*

Robert A. Rowan
Joseph S. Presta
NIXON &VANDERHYE P.C.
901 North Glebe Rd.
Arlington, Virginia 22203
rar@nixonvan.com
jsp@nixonvan.com

Jonathan Hill
David L. Ter Molen
FREEBORN &PETERS LLP
311 South Wacker Drive, #3000
Chicago, IL 60606
jhill@freeborn.com
dtermolen@freeborn.com

*Attorneys for Plaintiffs Shuffle Tech International, LLC, Aces Up Gaming, Inc., and Poydras-Talrick Holdings LLC*

/s/ Cinda Towne
An employee of PISANELLI BICE PLLC